Eric A. Herzog (Bar No. 229066)
eric.herzog@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
Telephone: (213) 892-9200
Facsimile: (213) 892-9494

Attorneys for Defendant
NATIONAL BOARD OF MEDICAL EXAMINERS

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YOANA AYANOVA KIPRILOV,<br><br>      Plaintiff,<br><br>      v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS, EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES,<br><br>      Defendant. | Case No.: 5:16-cv-00952 JGB (SPx)<br><br>**DEFENDANT NATIONAL BOARD OF MEDICAL EXAMINERS' NOTICE OF MOTION AND MOTION TO DISMISS;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: July 11, 2016<br>Hearing Time: 9:00 a.m.<br>Courtroom No.: 1<br><br>Judge Jesus G. Bernal |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN THAT, on July 11, 2016, at 9:00 a.m., or as soon thereafter as it may be heard, before the Honorable Jesus G. Bernal, in Courtroom 1 of the United States District Courthouse for the Central District of California, Eastern Division, 3470 Twelfth Street, Riverside, California, 92501-3801, defendant National Board of Medical Examiners ("NBME") will and hereby does move the Court to dismiss the plaintiff's Complaint (Docket # 1) pursuant to Fed. R. of Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

This motion is made following a telephone conference between one of NBME's attorneys and Dr. Kiprilov (appearing *pro se*) pursuant to L.R. 7-3, which took place on May 30, 2016. The parties were not able to reach any resolution that would make the filing of this motion unnecessary.

NBME's Motion to Dismiss is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers filed in this action, and such further argument as may be offered in any reply memorandum or at the time of the hearing of this Motion. A proposed Order accompanies this Notice of Motion.

Dated:  June 7, 2016

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**


By:   /s/ Eric A. Herzog
       Eric A. Herzog

Attorneys for Defendant
NATIONAL BOARD OF MEDICAL
EXAMINERS

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ............................................................................... 1

II.    STATEMENT OF FACTS ................................................................. 2

    A.    The USMLE ............................................................................ 2

    B.    The Step 2 Clinical Skills Examination ................................. 3

        1.    Description of the Step 2 CS Exam ............................ 3

        2.    Purpose of the Step 2 CS Exam .................................. 3

        3.    Subcomponents and Scoring of the Step 2 CS Exam ................. 4

    C.    The Plaintiff, Dr. Yoana Kiprilov ......................................... 5

    D.    Dr. Kiprilov's Complaint ...................................................... 6

III.   LEGAL STANDARD FOR DECIDING A RULE 12(B)(6) MOTION ........ 7

IV.   THE COMPLAINT FAILS TO STATE A CLAIM ....................................... 8

V.    CONCLUSION ........................................................................ 10

DOCUMENT PREPARED
ON RECYCLED PAPER

82454956.1

NOTICE OF MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF DISMISSAL

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antonelli v. New Jersey*,
  419 F.3d 267 (3d Cir. 2005) ................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ................................................. 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................ 7, 9

*Black v. CorVel Enterprise Co.*,
  No. EDCV-14-2588-JGB, 2016 U.S. Dist. LEXIS 59390 (C.D. Cal.
  April 27, 2016) ..................................................................................... 8

*Haddock v. Board of Dental Examiners*,
  777 F.2d 462 (9th Cir. 1985) ............................................................... 9

*Munsif v. Am. Bd. of Internal Med.*,
  2012 WL 3962671 (E.D. Pa. 2012) ...................................................... 9

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) .............................................................. 7

*Woodard v. Va. Bd. of Bar Examiners*,
  598 F.2d 1345 (4th Cir. 1979) (per curiam) ........................................ 9

**Rules and Statutes**

29 C.F.R. § 1607 .......................................................................................... 7, 8

29 C.F.R. § 1607.2(D) ..................................................................................... 8

Fed. R. Civ. P. 8(a)(2) ..................................................................................... 1

Fed. R. Civ. P. 12(b)(6) ........................................................................... 2, 7, 10

42 U.S.C. § 2000e-2 ........................................................................................ 8

42 U.S.C. § 2000e-2 (l) .................................................................... 6, 7, 8, 9, 10

1

**Other Authorities**

2

Accreditation Council for Graduate Medical Education, *ACGME*
*Common Program Requirements*, Requirement
IV.A.5(d)("Interpersonal and Communication Skills") (2015) ..........................4

Liaison Comm. on Medical Education, *Standards for Accreditation of*
*Medical Education Programs Leading to the MD Degree,* Standard
7.8 ("Communication Skills") (March 2016) ......................................................4

W. Levinson *et al.*, *Developing Physician Communication Skills for*
*Patient-Centered Care*, 29 Health Affairs 1310 (July 2010)...............................3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

NOTICE OF MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF DISMISSAL

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3    Defendant National Board of Medical Examiners ("NBME")[1] is a non-profit

4    organization based in Pennsylvania.  In conjunction with the Federation of State

5    Medical Boards, NBME sponsors the United States Medical Licensing Examination

6    ("USMLE").  Jurisdictions across the country rely upon the USMLE as part of their

7    licensure process for ensuring the qualifications of prospective physicians.

8    The USMLE has multiple components, or "Steps," that are taken at different

9    times in an individual's medical education and training.  One component is the Step

10   2 Clinical Skills ("CS") examination.  The Step 2 CS exam uses simulated doctor-

11   patient encounters, in a standardized environment, to evaluate a prospective

12   physician's fact-gathering, communication and interpersonal skills.

13   Plaintiff Yoana Kiprilov ("Dr. Kiprilov") has taken the Step 2 CS exam twice

14   but has not yet achieved a passing result.  Proceeding *pro se,* she has filed a 38-

15   page complaint in which she asks the Court to recognize her "overall exam

16   performance" on Step 2 CS as a "pass result."  Complaint at 3.  She also requests

17   damages for the time she "wasted on this flawed exam."  *Id.* at 38.

18   Despite its length, Dr. Kiprilov's Complaint does not include "a short and

19   plain statement" of any claim that would entitle her to relief.  *See* Fed. R. Civ. P.

20

21   _____

22   [1]  The caption of Dr. Kiprilov's Complaint identifies the "Defendant" as "National
     Board of Medical Examiners, Educational Commission for Foreign Medical

23   Graduates," and she uses the acronym NBME/ECFMG throughout her Complaint
     to refer to "the National Board of Medical Examiners."  *See* Complaint at p. 2.  This

24   appears to reflect a misunderstanding regarding the Educational Commission for
     Foreign Medical Graduates (ECFMG) and its relationship to the NBME.  The

25   ECFMG is not a subdivision of the NBME.  It is a separate and distinct legal entity,
     located in separate offices and operated by separate employees.  The ECFMG is not

26   a sponsor of the USMLE program.  It is unclear whether Dr. Kiprilov intended to

27   include the ECFMG as an additional defendant, or simply made a mistake in
     identifying the NBME.

28

DOCUMENT PREPARED
ON RECYCLED PAPER

82454956.1

- 1 -

8(a)(2). The Complaint should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II. STATEMENT OF FACTS

### A. The USMLE

The USMLE is an integral part of each state's effort to ensure that only competent and qualified individuals are licensed to practice medicine. The Step exams that make up the USMLE are designed to assess whether an individual has the minimal knowledge and skills deemed necessary for safe and effective patient care. The USMLE is administered each year to tens of thousands of examinees, and it is relied upon by medical licensing authorities in every state to help assess the qualifications of candidates for medical licenses. Maintaining the integrity of the testing process is thus an essential part of protecting the public safety and welfare.

Step 1 of the USMLE assesses whether the candidate understands and can apply important concepts of the sciences that are basic to the practice of medicine, with special emphasis on principles and mechanisms underlying health, disease, and modes of therapy.[2] Step 2 "assesses the ability of examinees to apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision," with an "emphasis on health promotion and disease prevention," and with attention to the "basic patient-centered skills that provide the foundation for the safe and competent practice of medicine.[3] Step 3 assesses whether the applicant can apply medical knowledge and understanding of biomedical and clinical science essential for the unsupervised practice of medicine.[4]

---

[2] *See* http://www.usmle.org/step-1/.

[3] *See* http://www.usmle.org/step-2-cs/.

[4] *See* http://www.usmle.org/step-3/.

DOCUMENT PREPARED
ON RECYCLED PAPER

82454956.1

- 2 -

Step 2 has a Clinical Knowledge ("CK") component (a multiple-choice examination) and a Clinical Skills ("CS") component (a simulation of doctor-patient encounters).  Dr. Kiprilov's Complaint relates to the Step 2 CS exam.

**B.    The Step 2 Clinical Skills Examination**

**1.    Description of the Step 2 CS Exam**

Step 2 CS uses standardized patients – individuals trained to portray a patient scenario – to test medical students and graduates on their ability to gather information from patients, perform physical examinations, and communicate their findings to patients and colleagues.  *See generally* Complaint at Ex. D, pp. 44-46 (pages from the USMLE website describing the Step 2 CS exam).

The exam includes twelve patient encounters, each of which lasts 15 minutes under standard testing time.  The testing area consists of a series of examination rooms equipped with examination tables, commonly used diagnostic instruments, gloves, sinks and paper towels.  When examinees enter the examination room, they encounter a standardized patient who enacts a clinical problem.  Outside each examination room is a cubicle equipped with a computer, where the examinee composes a patient note after conducting the examination and diagnostic interview.

**2.    Purpose of the Step 2 CS Exam**

Research has shown that improving the communication and interpersonal skills of doctors leads to more accurate diagnoses, better patient compliance with physician advice, more referrals for needed treatments, better patient outcomes, lower staff turnover, and fewer malpractice lawsuits.[5]   Consistent with this research, communication skills are a required part of the curriculum in every U.S.

---

[5]  *See, e.g.*, W. Levinson *et al.*, *Developing Physician Communication Skills for Patient-Centered Care*, 29 Health Affairs 1310 (July 2010).

DOCUMENT PREPARED
ON RECYCLED PAPER

medical school,[6] and a core competency that must be included in the curriculum of all accredited residency programs.[7]

Step 2 CS assesses whether physicians seeking an initial license to practice medicine in the United States, regardless of their country of origin, can communicate effectively with patients.

### 3.    Subcomponents and Scoring of the Step 2 CS Exam

Step 2 CS is a pass/fail examination on which examinees are scored on three separate subcomponents:  Communication and Interpersonal Skills (CIS), Spoken English Proficiency (SEP), and Integrated Clinical Encounter (ICE). *See* http://www.usmle.org/step-2-cs/#scoring.  "Each of the three subcomponents must be passed in a single administration in order to achieve a passing performance on Step 2 CS." *Id.*

"The **CIS subcomponent** includes assessment of the patient-centered communication skills of fostering the relationship, gathering information, providing information, helping the patient make decisions, and supporting emotions.  CIS performance is assessed by the standardized patients, who record these skills using a checklist based on observable behaviors." *Id.*

"The **SEP subcomponent** includes assessment of clarity of spoken English communication within the context of the doctor-patient encounter (for example, pronunciation, word choice, and minimizing the need to repeat questions or statements).  SEP performance is assessed by the standardized patients using a

---

[6]   *See* Liaison Comm. on Medical Education, *Standards for Accreditation of Medical Education Programs Leading to the MD Degree,* Standard 7.8 ("Communication Skills") (March 2016).

[7]   *See* Accreditation Council for Graduate Medical Education, *ACGME Common Program Requirements*, Requirement IV.A.5(d)("Interpersonal and Communication Skills") ("Residents must demonstrate interpersonal and communication skills that result in the effective exchange of information and collaboration with patients, their families, and health professionals") (2015).

global rating scale, where the rating is based upon the frequency of pronunciation or word choice errors that affect comprehension and the amount of listener effort required to understand the examinee's questions and responses." *Id.*

"The **ICE subcomponent** includes assessments of both data gathering and data interpretation skills.  Scoring for this subcomponent consists of a checklist completed by the standardized patients for the physical examination portion of the encounter, and global ratings provided by trained physician raters.  The patient note raters provide ratings on the documented summary of the findings of the patient encounter (history and physical examination), diagnostic impressions, justification of the potential diagnoses, and initial patient diagnostic studies." *Id.*

## C.   <u>The Plaintiff, Dr. Yoana Kiprilov</u>

Dr. Kiprilov is a graduate of an international medical school who resides in Ontario, California.[8]  Complaint at 1-2.  To continue her graduate medical training as a resident and ultimately become a licensed physician in the United States, Dr. Kiprilov must obtain passing scores on the USMLE Step examinations.  *Id.* at ¶ 1. She has achieved passing scores on Step 1 and Step 2 CK.  *Id.*  She has not passed Step 2 CS.  *Id.* at ¶¶ 2, 3.

As noted above, an examinee must achieve a passing result on all three subcomponents of Step 2 CS during the same test administration in order to pass the exam.  On the two occasions that she has taken Step 2 CS, Dr. Kiprilov achieved passing scores on two of the three subcomponents and thus did not obtain an overall passing result.  *Id.* at ¶ 3.  In May 2015, she passed the Communication and Interpersonal Skills (CIS) and Spoken English Proficiency (SEP) subcomponents, but failed the Integrated Clinical Encounter (ICE) subcomponent. *Id.*  In September 2015, she passed the ICE and SEP subcomponents but failed the CIS subcomponent.  *Id.*

---

[8]  The facts regarding Dr. Kiprilov come from her Compliant and are taken as true for purposes of NBME's motion to dismiss.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    This lawsuit resulted from Dr. Kiprilov's failure to achieve a passing score
2    on the Step 2 CS exam.  Her Complaint includes lengthy criticism of the validity,
3    utility and cost of the exam, *e.g.*, *id.* at ¶¶ 3.3, 3.4, 7.3, 8, 9, 10, and 11, but her core
4    objection is to the NBME requirement that all three subcomponents of Step 2 CS
5    must be passed in the same test administration.  She believes she should be allowed
6    to combine her passing scores from her two test administrations, so as to be given a
7    passing Step 2 CS result.  *Id.* at ¶ 4 ("My 'overall' performance on the exam
8    (USMLE Step 2 CS) could be reasonably, logically and safely considered as a pass
9    result.").  That outcome, however, would be contrary to the USMLE program's
10   standard scoring rules for the Step 2 CS exam, which apply to all examinees.

11   **D.    Dr. Kiprilov's Complaint**

12   Dr. Kiprilov filed this lawsuit because NBME refused to change its standard
13   scoring policy for her.  Her Complaint requests that "[t]he Court determines from
14   an objective view point whether I was unfairly put in a situation, where I had to
15   take the parts that I had previously passed and be evaluated by different people,"
16   and that the Court "prevents the same situation from happening again by ruling that
17   a third attempt is not necessary in my case."  *Id.* at 37, ¶¶ 1, 4.  She also requests
18   that the "Court determines whether there is a discriminatory practice with the
19   difference in the decrease of the passing rate (18% vs. 3%), which affected my
20   scores, and affects my career."  *Id.* at ¶ 5.  And she requests compensatory damages
21   "in the minimum amount of $158,000, for the damages to my career, the time of my
22   life wasted on this flawed exam instead of building my career and making money as
23   resident and as physician."  *Id.* at 38, ¶ 7.

24   The Complaint sets forth 17 "Claims," consisting primarily of disjointed
25   factual allegations.  *See* Complaint at pp. 23 – 37.  The only legal bases for relief
26   stated in the Complaint are as follows:

27
28   The NBME/ECFMG policy is in disregard of Title VII of the Civil
     Rights Act of 1964, 42 U.S.C. § 2000e-2, (l), and

In disregard of the regulations set forth by the Equal Employment Opportunity Commission, which administers and enforces civil rights laws against workplace discrimination.

Complaint ¶¶ 7.4 and 7.5; *see also id*. at p. 1 ("Federal question jurisdiction arises pursuant to 42 U.S.C. § 2000e-2 (l) and 29 CFR § 1607."); *and* pp. 31-32 ("The abovementioned artificially created difference in the passing score is in a violation of title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, (l), and are subject to the federal regulations set forth and enforced by the U.S. Equal Employment Opportunity Commission (EEOC)….").

As discussed below, Dr. Kiprilov's reliance on this legal authority is misplaced. Step 2 CS is a licensing exam, and the referenced legal authority does not provide a basis for an examinee to challenge the content or scoring rules for such examinations. She has therefore failed to state a claim for relief, and her Complaint should be dismissed.

## III.   LEGAL STANDARD FOR DECIDING A RULE 12(B)(6) MOTION

Under Rule 12(b)(6), a court must dismiss a complaint that fails to state a claim upon which relief may be granted. To survive dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697, 129 S. Ct. 1937 (2009). A court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party, but "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

"Although the scope of review on a Rule 12(b)(6) motion to dismiss is limited to the contents of the complaint, the Court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference

in the complaint, or matters of judicial notice." *Black v. CorVel Enterprise Co.*, No. EDCV-14-2588-JGB, 2016 U.S. Dist. LEXIS 59390, *28 (C.D. Cal. April 27, 2016) (citation omitted).  "Under the incorporation by reference doctrine, the Court may consider documents not attached to the pleading if:  (1) those documents are referenced extensively in the complaint or form the basis of the plaintiff's claim; and (2) if no party questions their authenticity." *Id*. (citation omitted).

## IV.  <u>THE COMPLAINT FAILS TO STATE A CLAIM</u>

Dr. Kiprilov relies upon 42 U.S.C. § 2000e-2(l) and 29 CFR § 1607 as the legal bases for her claims.  *See* Complaint ¶¶ 7.4 and 7.5.  Section 2000-e(l) is part of Title VII of the Civil Rights Act.  Title VII bars discriminatory "employment practices" by an "employer," "employment agency," or "labor organization."  42 U.S.C. § 2000e-2.  The specific Title VII provision relied upon by Dr. Kiprilov prohibits the "discriminatory use of test scores" by employers:

> It shall be an unlawful employment practice for a respondent, in connection with the selection or referral of applicants or candidates for employment or promotion, to adjust the scores of, use different cutoff scores for, or otherwise alter the results of, employment related tests on the basis of race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(l).

The regulatory citation referenced by Dr. Kiprilov – 29 C.F.R. § 1607 – is to the *Uniform Guidelines On Employee Selection Procedures*.  These *Guidelines* are relevant only where a party is subject to Title VII or "other equal employment opportunity requirements of Federal law."  29 C.F.R. § 1607.2(D).  They are not legally binding, they do not create an independent private of action,[9] and they are applicable only if a plaintiff has stated a cause of action under Title VII or some other federal law relating to a defendant's employment practices.

---

[9]   *See, e.g., Antonelli v. New Jersey*, 419 F.3d 267, 273 (3d Cir. 2005) ("[T]he *Uniform Guidelines*…are mere guidelines and do not establish a cause of action.").

1       Dr. Kiprilov's claims do not relate to employment practices. NBME is not

2   her employer, nor has she applied to work at NBME and been required to take Step

3   2 CS as a condition of being hired. Instead, this dispute involves Dr. Kiprilov's

4   failure to achieve a passing score on a licensing exam. Jurisdictions use the

5   USMLE exams, including Step 2 CS, as part of their licensing process for ensuring

6   that physicians possess the knowledge and skills necessary to provide safe and

7   effective healthcare.

8       Title VII and the *Uniform Guidelines* do not apply in this context. *See, e.g.*,

9   *Haddock v. Board of Dental Examiners*, 777 F.2d 462, 463-64 (9th Cir. 1985)

10   (affirming dismissal of Title VII claim asserted by a plaintiff who alleged that

11   defendant "intentionally lowered his dental examination scores" based on his race);

12   *Woodard v. Va. Bd. of Bar Examiners*, 598 F.2d 1345, 1346 (4th Cir. 1979) (per

13   curiam) ("The district court found and we agree that Title VII, by its own terms,

14   does not apply to the bar examination.") (affirming dismissal of Title VII claim

15   brought by an individual who "failed to achieve a passing score on the

16   examination"); *Munsif v. Am. Bd. of Internal Med.*, 2012 WL 3962671, *14 (E.D.

17   Pa. 2012) (holding that a foreign medical school graduate could not assert a Title

18   VII claim against the ABIM based on its allegedly discriminatory actions in

19   administering a certification examination to plaintiff, because plaintiff "never had

20   an employment relationship with ABIM"). And because Title VII does not apply in

21   this context, Dr. Kiprilov's Complaint must be dismissed. *Id.*

22       Dismissal would also be warranted even if Dr. Kiprilov's claims fell within

23   the scope of Title VII (and they do not). Dr. Kiprilov she has not pled any facts

24   that, if taken as true, would state a plausible case of discrimination. *See Twombly*,

25   550 U.S. at 570. To plead a discrimination claim, a plaintiff must allege either

26   disparate treatment or disparate impact on the basis of plaintiff's status in a

27   protected class. Here, Dr. Kiprilov does not allege any disparate treatment by

28   NBME, nor does she allege any disparate impact on a class that is protected under

Title VII.   Indeed, she does not even identify the protected class in which she purportedly falls and as to which NBME has purportedly discriminated against her (*e.g.*, sex, race, or national origin).   She states only that she is an international medical school graduate, and that there are different pass rates on the Step 2 CS exam for graduates of international medical schools and graduates of U.S. medical schools.   *See* Complaint p. 1 and ¶ 16.   That is not sufficient to state a plausible discrimination claim.   The location of one's medical school is not a protected classification.   Students from around the world attend international medical schools, including many students from the United States.

## V.    CONCLUSION

Dr. Kiprilov's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.   And because any effort to re-plead her claims would be futile, she should not be granted leave to amend.

Dated:  June 7, 2016                                    Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By:   /s/ Eric A. Herzog
         Eric A. Herzog

Attorneys for Defendant
NATIONAL BOARD OF MEDICAL
EXAMINERS