FILED

Lodged (proposed)

2016 JUL 25 PM 3:01

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY _____

1  YOANA AYANOVA Kiprilov _____ (Full Name)

2  1053 E. 6th Str. Ap. 26 _____ (Email Address)

3  Ontario, CA 91764 _____ (Address Line 1)

4  _____ (Address Line 2)

5  707-570-5155 _____ (Phone Number)

6  Plaintiff _____ in Pro Per
   (indicate Plaintiff or Defendant)

7

8

9              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**

10

11  Yoana Kiprilov          Case No.: 5:16-cv-00952 JGB (SPx)

12          ,

13     Plaintiff,          Plaintiff 's
                           (indicate Plaintiff or Defendant)

14     vs.

15  National Board of Medical   **NOTICE OF MOTION AND**
                                **MOTION FOR SUMMARY**
16  Examiners, Educational Commission  **JUDGMENT PURSUANT TO**
                                **FED. R. CIV. P. 56**
17  for Foreign Medical Graduates  and Memorandum of Points and Authorities.

18     Defendant(s).        **Hearing Date:** August 22, 16

19                          **Hearing Time:** 9:00 am

20                          **Judge:** Hon. Jesus G. Bernal
                                       (Judge's name)
21                          **Place:** 1
                                       (courtroom number)

22  **TO THE HONORABLE COURT AND TO ALL PARTIES:**

23

24     PLEASE TAKE NOTICE that on July 25, 2016 at _____
                                    (date)              (time)
25  or as soon thereafter as this matter may be heard in the above-entitled Court

26
27  located at Riverside - Federal Court
                (address of the Court in which the motion is being made)
28  YOANA AYANOVA Kiprilov , the Plaintiff
              (your name)              (indicate Plaintiff or Defendant)

1
Notice of Motion and Motion for Summary Judgment

1    in this case will move this Court for summary judgment, pursuant to Federal Rule

2    of Civil Procedure 56.  This motion is based on this notice, the memorandum of

3    points and authorities filed herein, the declaration(s) filed by _Plaintiff_,

4    (indicate Plaintiff or Defendant)

5    the exhibits filed herein, the statement of uncontroverted facts and conclusions of

6    law, the pleadings previously filed in this action, and any oral argument permitted

7    at the hearing on this motion.

8         This motion is made following the conference of counsel pursuant to Local

9    Rule 7-3 which took place on _July 17 and 18, 2016_

10   (date)

11   DATED: _July 25, 2016_

12

13                        By: _____

14                             (sign)

15                             _Yoana A. Kiprilov_

16                             (print name)

17                             _Plaintiff_ in Pro Per

18                             (indicate Plaintiff or Defendant)

## **STANDARD OF REVIEW**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of establishing there is no genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  To defeat the motion for summary judgment, the responding party must present admissible evidence sufficient to establish any of the elements that are essential to the moving party's case and for which that party will bear the burden of proof at trial.  *See id.*; *Taylor v. List,* 880 F. 2d 1040, 1045 (9th Cir. 1989).  The Court may grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show the movant is entitled to summary judgment and if the responding party fails to properly address the moving party's assertion of fact as required by Rule 56(c).  *See* Fed. R. Civ. P. 56(e).

The responding party cannot point to mere allegations or denials contained in the pleadings.  It is not enough for the non-moving party to produce a mere "scintilla" of evidence.  *Celotex Corp.*, at 252.  Instead, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual issue for trial.  *See KRL v. Moore,* 384 F. 3d 1105, 1110 (9th Cir. 2004).

1   Yoana Ayanova Kiprilov,
    1053 E. 6th Street, Ap.26
2   Ontario, CA 91764
    email:yoana_ayanova@yahoo.com
3   phone:707-570-5155
    PRO PER

4

5                IN THE UNITED STATES DISTRICT COURT

6          FOR THE CENTRAL DISTRICT OF CALIFORNIA

7   YOANA AYANOVA KIPRILOV,              )  Case No.: 5:16-cv-00952
                                         )  Assigned to Hon. Jesus G. Bernal
8                   Plaintiff,           )
                                         )
9              v.                        )  PLAINTIFF'S
                                         )  MOTION FOR A PARTIAL SUMMARY
10  NATIONAL BOARD OF MEDICAL EXAMINERS, )  JUDGEMENT.
                                         )  MEMORANDUM OF POINTS AND
11  EDUCATIONAL COMMISSION FOR FOREIGN   )  AUTHORITIES THEREOF
                                         )  PURSUANT TO F.R.C.P.56
12  MEDICAL GRADUATES,                   )
                                         )
13                  Defendant,              Hearing Date: August 22, 2016
                                            Hearing Time: 9:00 am
14                                          Courtroom No: 1

15  _____

16  TO THE HONORABLE JUDGE OF SAID COURT:

17      The Plaintiff Yoana A. Kiprilov, as good faith effort to save judicial resources as well

18  as the resources of the litigants, moves the Court for a **partial summary judgment** on

19  Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 56 (b) and (c). In support of

20  this motion, the Plaintiff respectfully refers the Court to the attached memorandum.

21      Plaintiff respectfully requests to be permitted to present the Proposed Order later, if

22  the Motion is granted, since she would not dare and is not capable of drafting a legally

23  sufficient Order without the help of a legal counsel. If this Motion is granted, she will

24  respectfully request the opposing counsel to help her creating a legally sufficient Order

25  in this case.

26      This is a lawsuit for misrepresentation (intentional or negligent), false descriptions,

27  and breach of contract, unfair/deceptive practice and discriminatory results.

28

The main issue here is whether the Defendants (NBME/ECFMG) misrepresented the characteristics of the three parts (ICE, CIS, SEP) of the USMLE Step 2 CS -Exam, by describing the parts publicly and officially as both - "subcomponent(s)" and "component(s)", when in reality, based on Defendants' conduct, they do not consider that the parts have the characteristics of "components". Based on this issue, is the second dispute between the parties about whether the Defendants breached their agreement/contract with the Plaintiff, by not considering the three parts of the 2CS-exam as "components" (as per the official description), and thus, by not applying the NBME/ECFMG's official policy rule "Retakes" and "time- limit" (which are applicable to "components"). As a results, without applying the "Retakes" and "time-limit" rules, Plaintiff's pass results on each of the three "components" are not considered as an "overall" pass result on Step 2 CS, Plaintiff has not received her ECFMG-certificate by the Defendants, and she is not allowed to be employed and to work as a physician in this country.

By **deciding just these two issues (whether there is a misrepresentation and a breach of contract) through a partial summary judgement**, the Court could also help the parties to objectively and prudently resolve the issue of whether the Plaintiff has to take the exam again and achieve a second/third "pass" result in all these three parts that she already passed.

As an additional helpful information, Plaintiff would like to note that evidence shows that this particular exam had and still has problems with reliability, subjectivity and other factors - "contrast" and "sequence" effects, that affect the score but are not related to the skills tested, and shows discriminatory results. Currently, there is an ongoing petition (signed by 16,000+ med. students) created by four Harvard medical graduates who claim that the same exam "lacks efficacy" and is of poor value". The majority of the NBME/ECFMG physicians and medical examiners have never taken and will never take this exam to protect their patients, but are still successful practicing physicians. The

very final, licensing, medical exam is allowed to be taken in parts by the State Medical Board.

Some courts have found early Motion for summary judgement appropriate:

"This matter is a straight forward coverage dispute rooted in the language of the policy agreement, and for the reasons which will be elaborated below, the Court will GRANT Defendant's Motion for Summary Judgment . . . .", See, e.g., *First United Mortg. Co., Inc. v. Chaucer Holdings PLC*, Civil No. 2:08-2754, 2010 WL 3283525, *1 (D.N.J. Aug. 17, 2010).

And, "there is no reason to assume that a district judge will stubbornly refuse to rule on a motion for summary judgment at an early stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery." (*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1188 (11th Cir. 2005).

If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *Goodman v. Resolution Trust Corp., 7 F.3d 1123, 1126 (4th Cir. 1993)*. "Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis." (*Id.*).

NBME and ECFMG are considered together, since ECFMG has areas of expertise in "Assessing clinical skills", and "ECFMG partners with the National Board of Medical Examiners (NBME) in administering the Step 2 Clinical Skills (CS) component of USMLE" (see http://www.ecfmg.org/about/index.html ).

## BACKGROUND AND SUMMARY OF THE ARGUMENT:

### 1.BACKGROUND:

This is a Motion for a partial summary judgement on the issue for misrepresentation, false descriptions, and breach of contract. This is an unprecedented case, since there is

1  no other case in which an examinee has passed all the parts of an exam in a 4 month-
2  period, and still has to achieve a second/third "pass" in the same three parts, where the
3  only purpose of the exam is to test skills in each of these three "separate" and "different"
4  parts of the exam (USMLE Step 2 CS).

5      This case arises out of a dispute regarding the description of the Step 2 CS-exam.

6      More specifically here- **two words/terms: 'components' v. 'subcomponents' are**
7  **the very "core" of the dispute**.

8      Defendants NBME/ECFMG use these two descriptive words interchangeably when
9  referring to ICE, CIS, and SEP parts of The USMLE Step 2 CS on their official USMLE-
10  website, and in their multiple publications in reputable medical journals (in the period
11  2009-2015), e.g. "ICE and CIS components of the Step 2 CS" (There is no official or
12  unofficial statement by Defendants' that there is a difference (<u>if any</u>) between these two
13  descriptive words – "subcomponent" and "component". (see Pl.'s DECLARATION-
14  EXHIBIT "A").

15      <u>**Defendants do not contest that the parts ICE, CIS and SEP are "Components"**</u>-
16  before this Court, and did not contest the same fact before another federal Court in
17  Pennsylvania in 2010.

18      Since once a "**Component**" is passed, it is not allowed to be retaken, regardless of
19  whether the other two components of the 2 CS-exam are passed or not, according to
20  the official NBME/ECFMG policy <u>rule "Retakes.</u> This way, an examinee has to be tested
21  and evaluated only on the components he has not passed (characteristic of component)

22      On the other hand, based on Defendant's conduct regarding "subcomponents", if a
23  "**Subcomponent**" is passed, <u>it has to be retaken if </u>one of the other two subcomponents
24  of the exam is not passed. This means that examinee has to take the whole exam again
25  and be tested again on the three subcomponents, including the ones he has already
26  passed (characteristic of "subcomponent").

27
28

Although officially describing the parts as both - "components" and "subcomponents", in reality, due to unknown reasons, Defendants do not consider the parts-ICE, CIS and SEP as "components".

The official "Retakes" and "time-limit" (the pass result is valid for couple of years) policy rules apply only to "components", and NBME/ECFMG due to unexplainable reasons, have not applied these rules in the Plaintiff's case. Thus, despite her pass results in each of three parts of the exam, Plaintiff's "overall" result on Step2 CS is not considered as a pass result by the Defendants, and they have not issued the ECFMG-certificate. NBME/ECFMG is the only authority which can issue this certificate. Only ECFMG-certificate allows international medical graduates to be employed as physicians. Plaintiff is denied employment as a physician in this country. Since time is an issue, and residency program directors consider the time spent to pass USMLE exams, as well as the attempts, and time since graduation, Defendants' conduct has caused career damages and decreased Plaintiff's chances to almost zero according to NBME' statistics) to ever get into a residency and ever work as a physician.  These are not only "out-of-pocket" damages, but also "benefit-of-the-bargain damages" and long-term career damages.

In this case also, **the description of the three parts of the Step 2 CS-exam as components, means that they do have characteristics which in reality these parts do not have.**  In other words, buying the product after reading the official website-statement posted by the seller that the product has a green and red part, and after the purchase – it turns out that the product has only green part.

Defendants do not contest that all three parts of 2 CS-exam are passed, and they do not claim that the Plaintiff does not have the necessary knowledge and skills. Defendants claim the "overall" passing score has not been achieved, because of the "single administration" requirement. However, it appears that "achieving passing outcome" is not the same as passed all parts of the exam, in this case, even though the purpose of this exam is to test knowledge and skills on these "separate" components.

Also, Defendants have not been able to explain how a second/third pass results in the same parts will be different than the Plaintiff's current pass results (a question, asked multiple times by the Plaintiff in the correspondence between the parties EXHIBIT "F", Pl.'s Declaration).

After taking the exam for a first time and passing two of the components, Plaintiff received (her first ECFMG-report from NBME/ECFMG, which stated that "it is necessary to pass all three subcomponents in order to obtain an overall passing outcome on Step 2 CS." No "single administration is stated on the same report. The second time- four months later, being evaluated by different patients, the Plaintiff passed the component (rated by physicians) that she failed earlier, and failed the part that she passed earlier (the communication with patients-part). These two totally opposite results suggest a subjectivity and reliability (consistency) problem, rather than a lack of knowledge, and NBME/ECFMG admit that the exam was "dropped in the 1960s because of questions at the time about its reliability". (See EXHIBIT G and I).

Based on: the description of the CIS, ICE and SEP parts of the 2 CS exam, as "components" and "subcomponents" at the same time, the Plaintiff's exam report without the "single administration" requirement, the 'Retake' rule and the "time-limit" rules that were not applied in this case, and the fact the Plaintiff has passed all three parts of the 2 CS-exam, **Plaintiff contends that Defendants have misrepresented the characteristics of the exam and then, using the misrepresentation, breached their agreement regarding the exam by not issuing the ECFMG-certificate.**

## 2. SUMMARY OF THE ARGUMENTS SO FAR:

Plaintiff, a pro se, without being financially able to afford an attorney, filed her original complaint describing the issue, as well as her concerns regarding the discriminatory results that this exam creates. Defendant filed motion to dismiss based on Rule 12 (6) (b). Plaintiff filed her first amended complaint, which included her claims for negligent or intentional misrepresentation, false descriptions of the three parts of the exam, unfair

and deceptive practice, as well as breach of contract due to Defendants' refusal to follow their own policy rules regarding the exam results and scoring. Plaintiff also presented evidence – NBME's publications with "ICE- /CIS-/SEP- components of Step 2 CS" description, NBME annual reports, her two exam reports without the "single administration" requirement, and "End Step 2 CS"- ongoing petition.

Plaintiff claimed that NBME/ECFMG violated the Federal Law just by reading the plain text and definitions in 15 U.S.C. Sections 1125, 15 U.S.C Section 45, 42 U.S.C. Section 2000e (l), and California civil codes 1572,1573,1708,1709,1710, 1770, as well as California Business and Profession Code 17200, 17500, 17531, breach of contract-1549,1621), and unfair and deceptive acts and practices- Business and Professions Code 17200, 17205,17206, and discriminatory practice under Title 7. Plaintiff was not aware that the Federal laws selectively cover some organizations and cases, but not all, by just reading the plain text in the statues. Plaintiff probably erroneously concluded that the law applies to every company and organization, and the practices described – misleading, false descriptions of products, discriminatory uses of test scores, is unlawful and prohibited in general.

Plaintiff also requested an injunctive relief-specific performance by the Defendants to be compelled, and the Court to award damages.

Defendant filed Motion to dismiss again, based on Rule 12 (6) (b), Rule 8, and Rule 9 (b). It is possible that the Plaintiff, in attempt to give provide important information to the Court, and being an MD, not J.D, did not construct artfully the pleading. Plaintiff would like to point out that using a standard similar to the previous Conley standard ("no set of facts"), the Supreme Court's per curiam decision just two weeks later (after defining the Twombly pleading standard), reversed the granting of a motion to dismiss for failure to state a claim in a pro se plaintiff case *(Erickson v. Pardus)*:

"A document filed pro se is "to be liberally construed," Estelle, 429 U. S., at 106, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. (internal quotation marks omitted

**In their Motion to dismiss, Defendants only claim that Plaintiff "has not achieved a passing result", i.e. contest her "overall" passing result on Step 2 CS,** but admit that she managed to pass each of the three subcomponents of the Step 2 CS exam". (Defendant's Motion to dismiss, page 19, line 4). The description of the parts as "Components", and the existence of the two policy rules, are not contested as well by the Defendant in any of the two Motions to dismiss that the Defendants filed. (Defendant's Motion to dismiss, page 19, line 4).

Here, as a good faith effort to save judicial resources as well as the resources of the litigants, Plaintiff request for a partial summary judgement on the case based on judicial estoppel grounds. More specifically, a summary judgment regarding the negligent/ false misrepresentation, false descriptions and breach of contract, as defined in the California Civil codes :1572,1573,1708,1709,1710; 1549, 1621, **3300, 3333, 3384, 3386, 3367, 3368.**

## <u>SUMMARY JUDGEMENT</u> <u>ARGUMENTS:</u>

Plaintiff claims she is entitled to a partial summary judgement based the following facts, and on judicial estoppel grounds:

*I*: Negligent and/or Intentional Misrepresentation, false descriptions of characteristics of the three parts of 2 CS.

A. <u>Burden of Proof and elements:</u>

Plaintiff contends that NBME/ECFMG have misrepresented information regarding the three parts of the exam. Specifically the "component" and "subcomponent" description of the CIS, ICE and SEP parts of Step 2 CS, since these two words, although used officially as synonyms and interchangeably by the Defendants, in fact are considered by them to describe different characteristics of the parts of 2 CS-exam.

Fraud" and "deceit" are defined in Civil Code sections 1572, 1709, and 1710. Courts appear to refer to the terms interchangeably, though technically "fraud" applies to only contract actions. Civil Code section 1709 defines "deceit" generally: "One who willfully

1   deceives another with intent to induce him to alter his position to his injury or risk, is

2   liable for any damage which he thereby suffers."

3      Civil Code section 1710 specifies four kinds of deceit within the meaning of section

4   1709:  A deceit, within the meaning of [section 1709], is either:

5   1). The suggestion, as a fact, of that which is not true, by one who does not believe it to

6   be true [intentional misrepresentation of fact]; 2). The assertion, as a fact, of that which

7   is not true, by one who has no reasonable ground for believing it to be true [negligent

8   misrepresentation of fact]; 3) The suppression of a fact, by one who is bound to disclose

9   it, or who gives information of other facts which are likely to mislead for want of

10  communication of that fact [concealment or suppression of fact];

11  or, Civil Code section 1572, dealing specifically with fraud in the making of contracts,

12  restates these definitions in slightly differing language, with the addition of a fifth kind of

13  deceit, described generally as "[a]ny other act fitted to deceive".

14     "Negligent misrepresentation is a form of deceit, the elements of which consist of (1)

15  a misrepresentation of a past or existing material fact, (2) without reasonable grounds

16  for believing it to be true, (3) with intent to induce another's reliance on the fact

17  misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to

18  whom the misrepresentation was directed, and (5) damages." (*See Fox v. Pollack*

19  *(1986*) 181 Cal.App.3d 954, 962 [226 Cal.Rptr. 532], internal citation omitted.)

20     The tort of deceit or fraud requires: "'(a) misrepresentation (false representation,

21  concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

22  defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (See

23  *Engalla v. Permanente Medical Group, Inc*. (1997) 15 Cal.4th 951, 974 [64 Cal.Rptr.2d

24  843, 938 P.2d 903], internal quotation marks omitted; see also *Molko v. Holy Spirit*

25  *Ass'n* (1988) 46 Cal.3d 1092, 1108 [252 Cal.Rptr. 122, 762 P.2d 46].).

26     Sometimes this tort is stated with four elements instead of five: "(1) a knowingly false

27  representation by the defendant; (2) an intent to deceive or induce reliance; (3)

28

justifiable reliance by the plaintiff; and (4) resulting damages." (See *Service by Medallion, Inc. v. Clorox Co.* (1996) 44 Cal.App.4th 1807, 1816 [52 Cal.Rptr.2d 650].)

**Element 1: "misrepresentation":**

All the above facts and claims are to be considered and incorporated here.

<u>(a) Plaintiff</u> here contends that she has been deceived and misled by the NBME/ECFMG regarding the official "component"/ "subcomponent" description of the three parts of 2 CS-exam, especially if in reality Defendants consider the parts of 2 CS as "subcomponents" only. Since these two words describe different characteristics of the three parts of the 2 CS-exam, and the "Retakes" rule (which applies only to "components") is not in reality applied by NBME/ECFMG for "subcomponents". Thus, the three parts are officially presented as having characteristics that they do not have. NBME does not contest that the parts are "components", NBME does not contest that the parts are "subcomponents" either. The Evidence is available online. (Pl. 'Declaration EXHIBIT A)

"A misrepresentation is judged to be `material' if `a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question' (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 976-977 [ 64 Cal.Rptr.2d 843, 938 P.2d 903]. Here, the difference between "components"- "subcomponents" is the most important fact obviously, since based on this very issue, the exam is either passed or not. The purpose of the exam is to test examinee's skills and that he passes all the three "components" as a proof of having these skills.

Plaintiff contends that Defendants cannot demonstrate a triable issue of fact that ICE, CIS and SEP are not "components".

<u>(b) The Defendant NBME</u> does not contest that the parts are "components". "A misrepresentation may be verbal, written or implied by conduct." (See *Thrifty-Tel, Inc. v. Bezenek* (1996) 46 Cal.App.4th 1559, 1567.)  Here, it is written through the official

1   USMLE-website, NBME's annual reports, and through the NBME/ECFMG's conduct

2   (scoring the exam, applying rules).

3     California Evid. Code, Sections 622 and 623:

4   Section 622. "The facts recited in a written instrument are conclusively

5   presumed to be true as between the parties thereto, or their successors in interest;…"

6   ""The written paper or instrument need not represent an agreement". (See *Generes v.*

7   *Justice Court* (1980) 106 Cal. App. 3d 678, 684 [165 Cal. Rptr. 222].)

8   Meaning that, the official NBME/ECFMG' publications/statements about the ICE, CIS

9   and SEP parts are accepted as true and cannot be contradicted.

10   Section 623. "Whenever a party has, by his own statement or conduct,

11   intentionally and deliberately led another to believe a particular

12   thing true and to act upon such belief, he is not, in any litigation

13   arising out of such statement or conduct, permitted to contradict it."

14   Thus, NBME/ECFMG would not be able to contradict their own written statements.

15   Civil Code section1654: In cases of uncertainty not removed by the preceding rules,

16   the language of a contract should be interpreted most strongly

17   against the party who caused the uncertainty to exist.

18     Under Erie doctrine (*Erie R.R. v. Tompkins* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.

19   1188 (1938), some federal courts have applied state evidentiary rules when they are

20   deemed substantive, "…a substantive rule is concerned with the channeling of behavior

21   outside the courtroom…the behavior in question is regulated by state law rather than by

22   federal law, state law should govern  even if the case happens to be in federal court."

23   (*Barron V. FORD MOTOR CO. OF CANADA LTD*, 965 F.2d 195 (7th Cir. 1992).

24     These statements/behavior in question were made outside the court room, in 2015,

25   and thus, should be under the governing state law at the time when they were made,

26   despite the fact that now they have reached this Court.

27     (c) Plaintiff also respectfully requests that the Court apply the **judicial estoppel**

28   **doctrine**.

1  Defendant used the words "components' and "subcomponents" interchangeably (as

2  synonyms) in *Hartman v. NBME Civil Action No. 09-5028*, and the Pennsylvania

3  Federal Court accepted, relied and used these words interchangeably (with the same

4  meaning) throughout the proceedings. The Court noted that the USMLE Composite

5  Committee discussed the ICE, CIE and SEP parts as "components".

6  That is why, Plaintiff contends that the estoppel, if applied, would prevent the

7  Defendant to further claim before this Court that the parts are not "components" (do not

8  have the characteristics of components), since it would constitute a misrepresentation

9  before this Court.

10  The purpose of the doctrine of **judicial estoppel**, which the Court can also apply "sua

11  sponte" (*Russell v. Rolfs, 893* F.2d 1033, 1037 (9th Cir. 1990)), is to "protect the

12  integrity of the judicial process," *Jackson v. County of Los Angeles*; to "protect against a

13  litigant playing fast and loose with the courts", and to avoid "the perception that either

14  the first or the second court was misled," (*New Hampshire v. Maine*

15  *532 U.S. 742 (2001)* cited *Edwards, 690 F. 2d, at 599.*

16  An important consideration is whether the party seeking to assert an inconsistent

17  position would derive an unfair advantage or impose an unfair detriment on the

18  opposing party if not estopped. (*New Hampshire v. Maine* 532 U.S. 742 (2001), cited

19  *Davis, 156 U. S., at 689*; *Philadelphia, W, & B. R. Co. v. Howard, 13 How. 307, 335-337*

20  *(1852)*; *Scarano, 203 F. 2d, at 513* (judicial estoppel forbids use of "intentional self-

21  contradiction ... as a means of obtaining unfair advantage"); see also *18 Wright § 4477,*

22  *p. 782.* In this case, Defendant will gain unfair advantage if NBME/ECFMG take a

23  position that the three parts of 2 CS are only "subcomponents", since this concerns the

24  main argument and the core of the case.

25  In 1998, with the publication of Jackson v. County of Los Angeles by the Second

26  District Court of Appeal, which held that the doctrine of judicial estoppel "should apply"

27  whenever: (1) the same party has taken two positions; (2) the positions were taken in

28  judicial or quasi-judicial administrative proceedings; (3) the party was successful in

asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (unlikely, due to NBME/ECFMG own publications

Plaintiff claims that all of them apply regarding the NBME previously taken position before the Federal Court in Pennsylvania. "Totally inconsistent" definition finds an "application to situations in which a party has argued that a certain fact or rule of law is true, and then switched course and in a separate litigation, "reverse[d]" its position. *Furia v. Helm*, 111 Cal. App. 4th 945, 958-59 (2003). Here, the Defendant should not be allowed from this moment on, to take a position that the three parts of 2CS-exam are not "components". But "Component" can be allowed as a synonym of "subcomponent" here, based on previous lawsuit against NBME, and having the same characteristics (since there is no defined difference by NBME in the Pennsylvania court).

Plaintiff believes that the estoppel would be applicable here. Defendants have never contested/appealed the position of the Pennsylvania federal Court that the parts are not "components".

Either way, the fact that the three parts of the 2 CS-exam are "components" is not contested by the two parties in the lawsuit, and based on the above estoppel grounds, could not be contested by the Defendant.

**2. Element "without reasonable grounds for believing it to be true" (negligent factor) and "knowledge of falsity" (fraudulent factor)**

All the alleged facts and claims above are to be considered and incorporated here.

(a) The publications/statements about CIS/ICE/SEP -subcomponents, constitute the evidence of the contrary/opposite to the ones with "components". And vice versa – presence of publications/evidence that the parts are "components" should have prevented NBME/ECFMG to claim that the parts are "subcomponents" or "components" respectively (in 2015). So, despite the evidence of the opposite, NBME does not differentiate and continue to use the two words interchangeably to describe the three

parts of 2 CS, despite that the parts are considered as "subcomponents" only.  In his regard, another Court holds that:

"In such situations the defendant believes the representations to be true but is without reasonable grounds for such belief. His liability is based on negligent misrepresentation which has been made a form of actionable deceit. (*Yellow Creek Logging Corp. v. Dare* Civ. No. 20818. First Dist., Div. One. May 13, 1963, Gagne v. Bertran, supra.).

   "'To be actionable deceit, the representation need not be made with knowledge of actual falsity, but need only be an "assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" …' " The elements of negligent misrepresentation also include justifiable reliance on the representation, and resulting damage." (*B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 834 [64 Cal.Rptr.2d 335], internal citations omitted.). Here, Plaintiff contends that, regardless of their knowledge Defendant did not have "reasonable grounds" for such ambiguous statements (especially if the parts were considered as "subcomponents" only).

   <u>Even if</u>, Defendants argue that there were/are "reasonable grounds" to state "ICE-/CIS/SEP-components of Step 2 CS", this would mean that the Plaintiff also has "reasonable grounds" and reasonable beliefs, and reasonable/justifiable "reliance" that the parts are "components", just like the NBME/ECFMG themselves, and NBME/ECFMG should recognize her 'overall" pass result on Step 2 CS.

   "First, evidence of misrepresentation is plain. "[F]alse representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of misrepresentations knowingly and intentionally uttered." (*Engalla, supra, 15 Cal.4th at p. 974, quoting Yellow Creek Logging Corp. v. Dare* (1963) 216 Cal.App.2d 50, 55 [30 Cal.Rptr. 629].)

   **(b) NBME will not be able to prove that there was no "knowledge of falsity" (fraud).**

All the alleged facts and claims above are to be considered and incorporated here.

The preponderance of evidence shows that there are <u>multiple, not one, publications</u> <u>(between 2009-2015)</u>, using the word "components" for the description of CIS, ICE and SEP parts of 2 CS. At the same time, NBME/ECFMG consider the parts to have the characteristics of "subcomponents" only.

<u>Even if</u> Defendants claim the opposite, NBME/ECFGM will have to contradict their own statements and knowledge/expertise about their own product, and claim that they have no knowledge about their own product (and whether it is a "component" or 'subcomponent", and what characteristics it had and has in reality). They will question their own credibility as professional organizations.

Regarding the "knowledge of falsity" of the misrepresentation, another Court also considered whether "that they were matters represented to be within the knowledge of the defendant" (*Yellow Creek Logging Corp. v. Dare, Civ. No. 20818. First Dist., Div. One. May 13, 1963.].*

Here, the criteria are satisfied- NBME claims in their publications that the authors have "considerable knowledge and experience to the tasks of review" and "four of our team members...are NBME employees and are routinely involved in the process involving Step 2 CS exam (test development, SP [standardized patients] training, ...quality assurance activities".(Pl.'s Declaration, Exhibit B) in the publication: "Enhancement of the assessment of physician–patient communication skills in the United States Medical Licensing Examination. Academic Medicine. 2013"

The publications between 2009-2015 are made by NBME himself, and provided by NBME/ECFMG themselves to the general public via Internet (official USMLE-website) as an evidence that the STEP 2 CS- exam is "sound" and to support the existence of this exam (NBME/ECFMG's own product). Not by another company/third parties.

Based on these facts, Plaintiff contends that NBME had and have the knowledge of untruth in his own publications, based on the fact that all the information regarding this exam comes from NBME/ECFMG (the descriptive misrepresentation of their own product-step 2 CS). Or, if Defendants claim and try to prove that they did not know

about the falsity/misleading information in their own descriptions and characteristics of their own product CS-exam in the publications (and play dumb), NBME/ECFMG will have to contradict and contest their own official statements, expert opinion, and question their own credibility and expertise as a professional organization. If they contest their own credibility and expertise, then Plaintiff's opinion regarding the 2 CS-exam should become the basis of decision whether the parts of 2 CE-exam are "component" or not.

"As the court said in Wishnick v. Frye (1952) 111 Cal. App. 2d 926, 930 [245 P.2d 352]: "In order to satisfy the requirement of scienter, it may be established either that defendant had actual knowledge of the untruth of his statements, **or** that he lacked an honest belief in their truth, **or** that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant." (*Yellow Creek Logging Corp. v. Dare,Civ.* No. 20818. First Dist., Div. One. May 13, 1963.).

Plaintiff contends that each of these criteria are satisfied, and the "scienter" is proven and is evident from the facts.

NBME/ECFMG do not contest the content of their own or NBME's publications and their knowledge of the information provided in their own publications, regarding their own product (2 CS-exam), and could not contradict it.  It will not be credible, even if they do so.

**Element 3 and 4. "Intend to defraud, i.e. induce reliance", "intent to induce reliance", "justifiable reliance."**

All the above alleged facts and claims are to be considered and incorporated here.

(a) "A fraudulent state of mind includes not only knowledge of falsity of the misrepresentation but also an " 'intent to ... induce reliance' " on it. (Lazar v. Superior Court, supra, 12 Cal.4th at p. 638.)" (*Engalla v. Permanente Medical Group, Inc.* (1997) - 15 Cal. 4th 951, 64 Cal. Rptr. 2d 843, 938 P.2d 903).

Here, the type of the NBME/ECFMG's written statements (with the fraudulent information in them) is such, that it is meant to spread the information publicly and to

convey knowledge about Defendants, product. Namely, these are official publications in official medical journals, posted on the official USMLE- website, in the NBME's official annual reports, and also some are offered as a proof that the exam is "sound".

Such statements can plausibly be viewed as reflecting NBME/ECFMG's intent to induce the knowledge, and also purchasing and taking the exam with the knowledge, that the parts are "components" (have the characteristics of "components"). Publication is the act of offering something for the general public to inspect or scrutinize. It is meant to convey knowledge or give notice to the public. Even though it was not the only factor, these statements were a "substantial" factor to make Plaintiff to take the exam for a second time, believing that these three parts are components of 2 CS. Knowing the truth now, Plaintiff is concerned about to engaging in the same contract with this misleading information, and illogical/pointless evaluation in parts she has already passed.

NBME do not contest that these publications are meant to induce reliance. Even if, NBME/ECFGM contest it, the very fact of posting so many publications publicly and on Defendants' official website is the proof of the opposite.

(b) Defendants do not contest that Plaintiff demonstrated "unjustifiable reliance" by reading and relying on the publications. Defendants obviously intent to inform the people interested in this exam (mostly medical students and graduates) about Step 2 CS's specific characteristics and to prove that the Step 2 CS exam is "sound". Plaintiff does not claim to have a "considerable knowledge and experience" in Step 2 CS, and relies on the information provided online by NBME/ECFMG.

"The defendant's intent to induce the plaintiff to alter his position can be inferred from the fact that defendant knew the plaintiff would act in reliance upon the representation. (*Gagne v. Bertran* (1954) 43 Cal. 2d 481, 488 [275 P.2d 15].)

""Under certain circumstances, expressions of professional opinion are treated as representations of fact…Moreover, when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject

1  matter and a plaintiff is so situated that it may reasonably rely on such supposed
2  knowledge, information, or expertise, the defendant's representation may be treated as
3  one of material fact." (See *Bily, supra,* 3 Cal.4th at p. 408, internal citations omitted.)
4      Here, NBME's staff members and authors claim to have such "considerable knowledge
5  and expertise" in Step 2 CS (See Pl.'s Declaration, Exhibit C), namely: "Four of our
6  team members…are NBME employees … we bring considerable knowledge and
7  experience to the tasks for review.". In truth, NBME staff members indeed have a
8  superior knowledge regarding 2 CS-exam, which of Plaintiff does not claim to have. This
9  is undisputed by NBME.
10      "Whether reliance is justified is a question of fact for the determination of the trial
11  court; the issue is whether the person who claims reliance was justified in believing the
12  representation in the light of his own knowledge and experience." (*Gray v. Don Miller &*
13  *Associates, Inc.* (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253], internal
14  citations omitted.).
15  "[A] party plaintiff's misguided belief or guileless action in relying on a statement on
16  which no reasonable person would rely is not justifiable reliance. . . . 'If the conduct of
17  the plaintiff in the light of his own intelligence and information was manifestly
18  unreasonable, . . . he will be denied a recovery.'" (*Kruse v. Bank of America* (1988) 202
19  Cal.App.3d 38, 54, citation omitted.)
20      In Plaintiff's own understanding, the parts can be considered as 'components' in
21  relation to Step 2CS, in the same way that 2 CS- and 2 CK- are components of the
22  whole STEP 2 -component (of USMLE). (See Plaintiff's Am. Complaint). Moreover, as
23  <u>other medical graduates/physicians discuss and refer to the same parts (ICE, CIS, and</u>
24  <u>SEP) as "components" on USMLE-forums</u>, YouTube -videos and so forth. These people
25  have at least similar knowledge/education, understanding of the exam and very likely
26  similar intelligence as the Plaintiff.   (See Pl.'s EXHIBIT C).
27      Defendant do not contest "justifiable reliance" here.
28

**Element 5: "damages"**: All the above facts and claims are to be incorporated and considered here.

It is not contested by the Defendant that Plaintiff did not receive the ECFMG-certification form NBME/ECFMG, and she is not allowed to be employed as a physician in this country due to NBME/ECFMG's refusal to recognize her pass results. Which has resulted in loss of money and time Plaintiff could have make as a physician, knowledge and experience she could have gained as a physician, in addition to the decrease in her chances to become ever employed as a physician (as per the statistics offered by NBME). And as Mr. Benjamin Franklin once said: "time is money". Moreover, **residency program directors consider the time spent for taking the exams and the attempts.** And $1,500 is a lot of money to pay and some people will need time in order to be able to afford it. Defendant NBME does not contest and not contest these damages are suffered by the Plaintiff and are caused by NBME/EFMG and their conduct in regard the Plaintiff's 2 CS-exam results.

RESTATEMENT (SECOND) OF TORTS §552b (1977). Under the economic loss rule, a plaintiff may not bring a claim for negligent misrepresentation unless he can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim.

"A 'complete causal relationship' between the fraud or deceit and the plaintiff's damages is required. ... Causation requires proof that the defendant's conduct was a "'substantial factor'" in bringing about the harm to the plaintiff." *Williams v. Wraxall* (1995) 33 Cal.App.4th 120, 132.

**II**. **BREACH OF CONTRACT**: All the facts above are to be considered and incorporated here.

A. Elements: "(1) the existence of a contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damages to plaintiff therefrom. (*Acoustics, Inc. v. Trepte Construction Co.* (1971) 14 Cal.App.3d 887, 913 [92 Cal.Rptr. 723].) Additionally, if the defendant's duty to perform under the contract is conditioned

on the happening of some event, the plaintiff must prove that the event transpired. (*Consolidated World Investments, Inc. v. Lido Preferred Ltd.* (1992) 9 Cal.App.4th 373, 380 [11 Cal.Rptr.2d 524].)

**Element 1: Implied Contract**:

 Civil Code section 1549 provides: "A contract is an agreement to do or not to do a certain thing." Civil Code sections 1619–1621 together provide as follows: "A contract is either express or implied. An express contract is one, the terms of which are stated in words. An implied contract is one, the existence and terms of which are manifested by conduct."

"Express and implied-in-fact contracts have the same legal effect, but differ in how they are proved at trial: "'Contracts may be express or implied....But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject- matter and of the surrounding circumstances, then the contract is an implied one.' " (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 678, fn. 16 [134 Cal.Rptr. 815, 557 P.2d 106], internal citation omitted.).  "[A]n agreement 'implied in fact' [is] founded upon a meeting of minds, which, although not embodied in an express contract, is inferred . . . from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."*Baltimore & O.R. Co. v. U.S.*, 261 U.S. 592, 597 (1996)

Plaintiff contends that, as shown by the parties' conduct and the written statements regarding the exam and examinees' duties on the official USMLE-website, this type of reciprocal activity and conduct done according to most of the announced terms, shows the "meeting of minds" and reasonably imply that the Plaintiff and Defendants agreed to certain terms (i.e. existence of an implied agreement/contract). Defendant cannot proof the opposite, since the report results of Plaintiff show that the parties here have performed part of the agreement, but Defendants failed/refused to perform the rest of the agreement – the "Retakes" and "time-limit" rules.

Here, the terms of the contract/agreement between Plaintiff and NBME/ECFMG are specifically stated on the USMLE-website and ECFMG-websites. They include: the

price of the exam, the time period, the way the exam is administered (12 actors -15 min to spend with them, then 10 min-patient note, and so forth), the scoring (vaguely described, the specific way of evaluation is not clear), the Rules that apply to that exam (Retakes, time-limit), and the issuance of ECFMG-certification after passing the exam. Facts, form which the promise is implied, are the following – Plaintiff paid to NBME ($3,000) to take the exam twice and took the exam. Defendant NBME/ECFMG took the money from the Plaintiff, specified a time period within which she had to take the exam, administered the exam to the Plaintiff, scored her performance, provided the Plaintiff with the result reports specifically addressing her performance and what is further needed to pass the exam (see the Pl.'s Declaration, Exhibit G) "It is necessary to pass all three subcomponents in order to obtain an overall passing outcome on the Step 2 CS", is stated on Plaintiff's two reports, without the "single administration" requirement.

Defendant NBME does not contest the existence of all these facts regarding the implied contract. The agreement to or not to do certain things is not an issue.

### Element 2: Plaintiff's performance:

(a) Defendants have not contest that the parts of 2 CS are "components", and NBME Defendant does not contest that fact in their two Motions to dismiss.

(b) Defendant NBME does not contest that Plaintiff has passed all the three components" in 2015.

(c) Defendants do not contest that the Plaintiff lacks knowledge and skills in these three "components" based on her pass results on each of them, and Defendant NBME does not contest that she lacks knowledge and skills in the three "components"/parts of 2 CS.

NBME/ECFMG claims that the parts of Step 2 CS are "components" and "subcomponents" at the same time, in multiple publications between 2009-2015 on their official USMLE-related website. Examinees are tested in these three "separate" "subcomponents". Plaintiff has passed all the three separate

1   components/subcomponents, and fulfilled the NBME/ECFMG's criteria. The purpose of
2   the exam is to test skills in all these three parts.
3   Civil code, Section 1654.  In cases of uncertainty not removed by the preceding rules,
4   the language of a contract should be interpreted most strongly
5   against the party who caused the uncertainty to exist.
6       Moreover, in her last result report (and in the 2009 NBME Annual Report for
7   example) it is stated that "it is necessary to pass all three subcomponents" without the
8   "singe administration" requirement, taking into consideration that the Plaintiff is not a
9   first-time test-taker regarding this exam, and has passed all the "components" of 2 CS.
10      Defendant do not contest that the each of the parts is "component". If the judicial
11  estoppel is applied, they should not be allowed to further claim the opposite. Even if
12  they argue, since it is their own official statements, they will have to contradict their own
13  statements. Thus, Defendants have no proof that the parts are not "components", but
14  "subcomponents" only. Plaintiff requests that facts and claims in I. A.1 (b) be alleged
15  and incorporated here.
16      Plaintiff refuses to take exam for a third time due to the above stated grounds (she
17  has passed all the three components of 2 CS), due to financial reasons, and since there
18  is no proof of reliability (but there is a proof of the opposite so far). Also there is no proof
19  that the exam is not subjective, no proof that the "contrast", "sequence effects", (Pl.
20  Declaration, Exhibit I), discriminatory effects will not affect her score. Moreover, the
21  scoring criteria are not clear, e.g. how are "support emotions" skills tested. Plaintiff is
22  also not aware what exactly she did wrong on the exam, and how a future pass
23  (second/third) on the same parts will be different than the current ones (she has
24  achieved). Would they be reported as "more pass", "greater pass", and so on.
25  **Element 3:  Breach of contract**.
26      Defendants claim the three parts of Step 2 CS-exam are "components" and NBME
27  Defendant does not contest that. Plaintiff contends that Defendants breached the
28  contract by: not applying their own policy rules ("Retakes" and "time-limit"); also they

breached the contract by not recognizing her "overall" passing score on Step 2 CS based on these rules and her pass results on CIS, ICE, SEP-component; and finally, Defendants breached the contract since they have not issued the ECFMG-certificate to the Plaintiff. Defendants do not contest that they have not applied their own policy rules "Retakes" and "time-limit", and that they have not issued the contract, and that they do not recognize her pass results on each "component" of 2 CS.

"Whether a partial breach of a contract is material depends on 'the importance or seriousness thereof and the probability of the injured party getting substantial performance.' 'A material breach of one aspect of a contract generally constitutes a material breach of the whole contract.' " (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277–278 [120 Cal.Rptr.3d 893], internal citations omitted.)

Here, the breach of material, since the main purpose for the Plaintiff to enter this contract was to obtain an ECFMG-certification, as required by the residency programs. Nothing else. "The wrongful, i.e., the unjustified or unexcused, failure to perform a contract is a breach". 1 Witkin, Summary of California Law, Contracts, § 847 at 935 (10th ed. 2005 and 2014 Supp.), citing Restatement of Contracts 2d, §235(2); 23 Williston on Contracts § 63.1 (4th ed. 1993 and 2014 Supp.), §63:1 et seq. [other citations omitted]). "Any nonperformance of a duty under a contract when performance is due is a breach." Linden Partners v. Wilshire Linden Associates, 62 Cal.App.4th 508, 531-532 (1998). "Any breach, total or partial, that causes a measurable injury, gives the injured party a right to damages as compensation therefor." 1 Witkin, Summary of California Law, Contracts §852 at 938, citing inter alia, *Borgonovo v. Henderson*, 182 Cal.App.2d 220, 231 (1960) "Implicit in the element of damage is that the defendant's breach caused the plaintiff's damage." (Troyk v. Farmers Group, Inc. (2009) 171 Cal.App.4th 1305, 1352 [90 Cal.Rptr.3d 589], original italics.)

**Element 4: Damages**:  It is not contested by the Defendant that Plaintiff did not receive the ECFMG-certification form NBME/ECFMG, and she is not allowed to be

1  employed as a physician in this country due to NBME/ECFMG's refusal to recognize her

2  pass results. Which has resulted in loss of money and time Plaintiff could have make as

3  a physician, knowledge and experience she could have gained as a physician, in

4  addition to the decrease in her chances to become ever employed as a physician (as

5  per the statistics offered by NBME). And as Mr. Benjamin Franklin once said: "time is

6  money". Moreover, residency program directors consider the time spent for taking the

7  exams and the attempts. These are not only "out-of-pocket" but also"benefit-of-the

8  bargain" and long-term career damages.

9      Defendant NBME does not contest and not contest these damages are suffered by

10  the Plaintiff and are caused by NBME/EFMG and their conduct in regard the

11   Plaintiff's 2 CS-exam results

12      Plaintiff requests the Court to apply the following rules, and contends that Civil Code

13   Sections 3300 and 3384, 3384,3386 providing information about the available remedies

14  for breach of contract, are applicable here. Plaintiff requests that all the above alleged

15  facts and claims be considered and incorporated regarding the application of these

16  sections.

17  ""The detriment that is 'likely to result therefrom' is that which is foreseeable to the

18  breaching party at the time the contract is entered into." (*Wallis v. Farmers Group*, Inc.

19  (1990) 220 Cal.App.3d 718, 737 [269 Cal.Rptr. 299], internal citation omitted.).

20  "The basic object of damages is compensation, and in the law of contracts the theory is

21  that the party injured by a breach should receive as nearly as possible the equivalent of

22  the benefits of performance. The aim is to put the injured party in as good a position as

23  he would have been had performance been rendered as promised. This aim can never

24  be exactly attained yet that is the problem the trial court is required to resolve."

25  (*Brandon & Tibbs v. George Kevorkian Accountancy Corp.* (1990) 226 Cal.App.3d 442,

26  455 [277 Cal.Rptr. 40], internal citations omitted.). 'Where the fact of damages is

27  certain, as here, the amount of damages need not be calculated with absolute certainty.

28  The law requires only that some reasonable basis of computation be used, and the

1  result reached can be a reasonable approximation." (*Acree v. General Motors*
2  *Acceptance Corp.* (2001) 92 Cal.App.4th 385, 398 [112 Cal.Rptr.2d 99], footnotes and
3  internal citations omitted.).  "Under contract principles, the nonbreaching party is entitled
4  to recover only those damages, including lost future profits, which are 'proximately
5  caused' by the specific breach. Or, to put it another way, the breaching party is only
6  liable to place the nonbreaching party in the same position as if the specific breach had
7  not occurred. Or, to phrase it still a third way, the breaching party is only responsible to
8  give the nonbreaching party the benefit of the bargain to the extent the specific breach
9  deprived that party of its bargain." (*Postal Instant Press v. Sealy* (1996) 43 Cal.App.4th
10  1704, 1709 [51 Cal.Rptr.2d 365], internal citations omitted.)

11     Here, the unique nature of the agreement/contract and the purpose for which the
12  Plaintiff entered the contract, makes the special performance a just and reasonable
13  remedy. The breach cannot be adequately compensated for in damages without the
14  special performance due to the above stated issues- requirements of program directors
15  regarding attempts and time, the decrease of chances to enter residency, and thus
16  irreparable damages to Plaintiff's career. Plaintiff contends that based on the above
17  facts alleged and evidence, and based on the following considerations:
18  the making of a specifically enforceable type of contract; sufficiently certain in its terms;
19  adequate consideration; and a just and reasonable contract; Plaintiff's performance,
20  tender, or excuse for nonperformance; Defendant's breach; Inadequacy of the remedy
21  at law; <u>the specific performance is a necessary and is an adequate remedy</u>.

22

23     For the reasons stated above, Plaintiff Yoana Kiprilov, respectfully requests that the
24  Court grants this motion for a partial summary judgement.

25                          July,2.5., 2016
26  Respectfully submitted:------*Yoana   Kiprilov*------
27                          ------*Plaintiff*------
28                                  (in Pro Per)

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT

28