1   Eric A. Herzog (Bar No. 229066)
    eric.herzog@nortonrosefulbright.com
2   **NORTON ROSE FULBRIGHT US LLP**
    555 South Flower Street
3   Forty-First Floor
    Los Angeles, California 90071
4   Telephone:  (213) 892-9200
    Facsimile:   (213) 892-9494
5
    Attorneys for Defendant
6   NATIONAL BOARD OF MEDICAL EXAMINERS

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  YOANA AYANOVA KIPRILOV,              Case No.:  5:16-cv-00952 JGB (SPx)

12              Plaintiff,               **DEFENDANT NATIONAL BOARD
                                         OF MEDICAL EXAMINERS'
13          v.                           MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN OPPOSITION
14  NATIONAL BOARD OF MEDICAL            TO PLAINTIFF'S MOTION FOR
    EXAMINERS, EDUCATIONAL               PARTIAL SUMMARY JUDGMENT**
15  COMMISSION FOR FOREIGN
    MEDICAL GRADUATES,                   Hearing Date:    August 22, 2016
16                                       Hearing Time:   9:00 a.m.
                Defendant.               Courtroom No.: 1
17
                                         Judge Jesus G. Bernal
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    PROCEDURAL HISTORY ........................................................................ 1

II.   INTRODUCTION .................................................................................. 2

III.  STATEMENT OF FACTS ...................................................................... 4

      A.    The USMLE ................................................................................ 4

      B.    The Step 2 Clinical Skills Examination .................................... 5

            1.    Description of the Step 2 CS Exam ............................... 5

            2.    Purpose of the Step 2 CS Exam .................................... 5

            3.    Subcomponents and Scoring of the Step 2 CS Exam ............... 6

      C.    Dr. Kiprilov ................................................................................ 7

IV.   LEGAL STANDARD .............................................................................. 9

V.    DR. KIPRILOV IS NOT ENTITLED TO SUMMARY JUDGMENT ......... 9

      A.    Dr. Kiprilov Is Not Entitled To Summary Judgment On Her
            Contract Claim ............................................................................ 9

            1.    NBME Has Not Breached the USMLE Policy on "Retakes,"
                  and There is No USMLE Rule Regarding "Time Limits" ..... 11

            2.    NBME Has No Obligation to Combine Dr. Kiprilov's
                  Performance on One Administration of Step 2 CS with
                  Her Performance on Another Administration in Order to
                  Produce an "Overall" Passing Result ............................ 13

            3.    NBME Has Not Breached Any Obligation to Issue
                  Dr. Kiprilov an ECFMG Certificate ............................ 15

      B.    Dr. Kiprilov Is Not Entitled To Summary Judgment On Her
            Misrepresentation Claims .......................................................... 15

VI.   CONCLUSION ...................................................................................... 18

DOCUMENT PREPARED
ON RECYCLED PAPER

OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*,
316 Fed. App'x 661 (9th Cir. 2009) ................................................................... 10

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................. 9

*Baji v. Northeast Regional Bd. of Dental Exam'rs*,
3 Fed. Appx. 352 (6th Cir. 2001) ........................................................................ 8

*Barbosa v. Comm. on Accountancy*,
525 N.E.2d 980 (Ill. App. 1988) ......................................................................... 8

*Chaney v. State Bar of Calif.*,
386 F.2d 962 (9th Cir. 1967) ............................................................................... 8

*Common Program Requirements*,
Req. IV.A.5(d) (2015) ......................................................................................... 6

*Dep't of Prof. Regulation, Bd. of Med. Exam'rs v. Durrani*,
455 So. 2d 515 (Fla. App. 1984) ......................................................................... 8

*Gerritsen v. Warner Bros. Entm't*,
116 F. Supp. 3d 1104, 1123 (C.D. Cal. 2015) ................................................... 10

*Giles v. GMAC*,
494 F.3d 865 (9th Cir. 2007) ............................................................................. 16

*Madden v. Independence Bank*,
771 F. Supp. 1510 (C.D. Cal. 1991) ............................................................. 15, 16

*Northrop Grumman Corp. v. Factory Mut. Ins. Co.*,
No. 05-08444, 2011 WL 4501945 (C.D. Cal. Sept. 29, 2011) .......................... 15

*Orr v. Bank of America*,
285 F.3d 764 (9th Cir. 2002) ............................................................................... 9

*San Mateo High Sch. Dist. v. Educational Testing Serv.*,
2013 WL 4711611 (N.D. Cal. 2013) ................................................................. 10

*Sims v. Taylor,*
   270 Fed. App'x 940 (11th Cir. 2008) .................................................. 10

*Tinner v. D.C. Dep't of Cons. & Reg. Affairs,*
   703 A.2d 833 (D.C. App. 1999) ............................................................ 8

*UMG Recordings, Inc. v. Global Eagle Entm't, Inc.,*
   117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) .................................... 16

*Vargas v. State Med. Bd. of Ohio,*
   972 N.E.2d 1076 (Ohio App. 2012) ....................................................... 8

**Rules and Statutes**

Fed. R. Civ. P. 56 ....................................................................................... 1

Fed. R. Civ. P. 56(a) .................................................................................. 9

Fed. R. Civ. P. 56(c)(1) .............................................................................. 9

**Other Authorities**

Accreditation Council for Graduate Medical Education, *Common
   Program Requirements*, Req. IV.A.5(d) (2015) .................................... 6

Liaison Comm. on Medical Education, *Standards for Accreditation of
   Medical Education Programs Leading to the MD Degree,* Standard
   7.8 (March 2016). ................................................................................... 6

Restatement (Second) of Torts § 552b (1977) .......................................... 16

W. Levinson *et al.*, *Developing Physician Communication Skills for
   Patient-Centered Care*, 29 Health Affairs 1310 (July 2010) ................. 5

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant National Board of Medical Examiners ("NBME") hereby responds to the motion for partial summary judgment filed by plaintiff Yoana Ayanova Kiprilov ("Dr. Kiprilov").   *See* Notice of Motion and Motion for Summary Judgement Pursuant to Fed. R. Civ. P. 56 ("Pl. SJ Mot.") (Docket #13); *and* Plaintiff's Declaration in Support of Partial Motion for Summary Judgment (Docket #14) ("Pl. Decl.").[1]  NBME also relies upon the following documents that are filed herewith:  the Declaration of Gerard F. Dillon ("Dillon Decl."); NBME'S Statement of Genuine Disputes of Material Fact; and NBME'S Objections to Plaintiff's Evidence Proffered in Support of Summary Judgment.

Dr. Kiprilov's motion should be denied.   As shown below, it is both premature and meritless.

## I.   PROCEDURAL HISTORY

Dr. Kiprilov filed this action on May 10, 2016, asking the Court to require defendant to award her a passing result on a licensing examination that NBME administers even though she has not yet achieved a passing result.  *See* Complaint at 3 (Docket #1).  The exam in question is the Step 2 Clinical Skills examination, which is part of the United States Medical Licensing Examination ("USMLE").[2] Medical licensing authorities in jurisdictions across the United States rely upon the USMLE as part of their processes for ensuring that prospective physicians meet the qualifications for initial licensure.

---

[1]  Dr. Kiprilov has used both typewritten and handwritten page numbers on her summary judgment papers and, where both are found on a given page, the numbers are different.  NBME's references to Dr. Kiprilov's summary judgment papers are to the handwritten page numbers.

[2]  The USMLE consists of three "Steps," taken at different points in an individual's medical education process:  Step 1, Step 2 and Step 3.  There are two components to the Step 2 exam:  Step 2 Clinical Knowledge ("Step 2 CK"), and Step 2 Clinical Skills ("Step 2 CS").  As noted, this case involves Step 2 CS.

DOCUMENT PREPARED
ON RECYCLED PAPER

1    On June 7, 2016, NBME moved to dismiss Dr. Kiprilov's complaint. *See*

2    Docket #6. The motion noted that Dr. Kiprilov's complaint was premised upon a

3    statute that has no application in the present context (Title VII of the federal Civil

4    Rights Act) and therefore failed to state a claim.

5    Dr. Kiprilov did not respond to NBME's motion. Instead, on June 28, 2016,

6    Dr. Kiprilov filed an Amended Complaint which asserts eight Causes of Action.

7    Docket #9 at ¶¶ 18-35. None of the causes of action states a viable claim for relief.

8    Accordingly, on July 15, 2016, NBME moved to dismiss Dr. Kiprilov's Amended

9    Complaint. *See* Docket #12.[3]

10   In response, Dr. Kiprilov has filed a motion for partial summary judgment,

11   scheduled for argument on the same date as NBME's motion to dismiss. *See* Pl. SJ

12   Mot. (Docket #13). The motion seeks summary judgment on the breach-of-contract

13   and misrepresentation claims that Dr. Kiprilov asserted for the first time in her

14   Amended Complaint.

15   Because the Court has not yet ruled on NBME's motion to dismiss, Dr.

16   Kiprilov's motion is premature. If the Court grants NBME's motion, it will not

17   reach Dr. Kiprilov's summary judgment motion. But if the Court does reach her

18   motion, it should clearly be denied.

19   **II.   INTRODUCTION**

20   Dr. Kiprilov has taken the Step 2 CS exam twice but has not yet passed.

21   Nevertheless, she wants the Court to require NBME to recognize her "overall exam

22   performance" on the Step 2 CS exam as a "pass result" by combining the passing

23   results that she achieved on different subcomponents of the exam on the two

24   occasions that she took the test. Complaint at 3 (Docket #1); *see also* Pl. SJ Mot. at

25   17. There is no factual or legal basis for that outcome.

26

---

27   [3] The other entity sued by Dr. Kiprilov – the Educational Commission for Foreign

28   Medical Graduates, or "ECFMG" – has also moved to dismiss Dr. Kiprilov's
     Amended Complaint. *See* Docket #16.

1   There are three subcomponents to the Step 2 CS exam:  Communication and
2   Interpersonal Skills (CIS), Spoken English Proficiency (SEP), and Integrated
3   Clinical Encounter (ICE).  The USMLE scoring policies expressly state that "[e]ach
4   of the three subcomponents must be passed *in a single administration* in order to
5   achieve a passing performance on Step 2 CS."  *See* Dillon Decl. at Ex. 5, p. 1, and
6   Ex. 6, p. 10 (emphasis added).  It is undisputed that Dr. Kiprilov has not passed all
7   three subcomponents of Step 2 CS in the same test administration.

8   Indeed, if summary judgment were entered for anyone at this point, it should
9   be entered in NBME's favor.  Written examination policies govern all individuals
10  who take the USMLE Step examinations.  The policies are made available to
11  examinees before they test.  As noted above, the policies applicable to Step 2 CS
12  state that examinees must pass all three subcomponents of the exam during the
13  same administration in order to receive a passing result.  Dr. Kiprilov did not do so.
14  On the basis of these undisputed facts, summary judgment is warranted in favor of
15  NBME on Dr. Kiprilov's misrepresentation and breach-of-contract claims.

16  Rather than accept the application of the "single test administration"
17  requirement to her exam performances, Dr. Kiprilov has made a series of
18  convoluted arguments that are grounded in NBME's use of the terms "components"
19  and "subcomponents" when referring, in different contexts, to the three parts that
20  make up the Step 2 CS exam.   *See* Pl. SJ Mot. 4 ("[T]wo words/terms:
21  'components' v. 'subcomponents' are the very 'core' of the dispute.").   The
22  arguments are frivolous.  It is irrelevant whether the three subcomponents have
23  been referred to in other contexts as "components" of Step 2 CS rather than
24  "subcomponents," because any such references in no way change the requirement
25  that all three must be passed during one administration in order to achieve a passing
26  result on Step 2 CS.  Dr. Kiprilov may not like that scoring policy, but it applies to
27  all examinees, and she was informed of the policy in advance of testing.

28

1    NBME has not breached any contractual obligation to Dr. Kiprilov.  Nor has

2    it made any false or misleading statements in describing the scoring policies for

3    Step 2 CS.  Her contrary arguments are based on semantic irrelevancies, with no

4    substance whatsoever.

5    **III.   STATEMENT OF FACTS**

6        **A.    The USMLE**

7        The USMLE is used by state medical licensing authorities to help ensure that

8    only competent and qualified individuals are licensed to practice medicine.  *See*

9    Dillon Decl. ¶ 5.  The Step exams that make up the USMLE are designed to assess

10   whether an individual has the knowledge and skills deemed necessary for safe and

11   effective patient care.  *See id.* ¶ 4.  Results of the USMLE are reported to the

12   licensing authorities, providing them with a common evaluation system for all

13   applicants.  *Id.*  Maintaining the integrity of the testing process is thus an essential

14   part of protecting the public safety and welfare.

15       Step 1 of the USMLE assesses whether the candidate understands and can

16   apply important concepts of the sciences that are basic to the practice of medicine,

17   with special emphasis on principles and mechanisms underlying health, disease,

18   and modes of therapy. *See id.* ¶ 6.  Step 2 assesses the ability of examinees to apply

19   medical knowledge, skills, and understanding of clinical science essential for the

20   provision of patient care under supervision, with attention to the basic patient-

21   centered skills that provide the foundation for the safe and competent practice of

22   medicine.  *See id.* ¶ 7.  Step 3 assesses whether the applicant can apply medical

23   knowledge and understanding of biomedical and clinical science essential for the

24   unsupervised practice of medicine. *See id.* ¶ 8.

25       Step 2 has two parts:   a Clinical Knowledge ("CK") multiple-choice

26   examination, and a Clinical Skills ("CS") examination which simulates doctor-

27   patient encounters).   *See id.* ¶ 7.   Dr. Kiprilov's complaint relates to her

28   performance on the Step 2 CS examination.

**B.**     **The Step 2 Clinical Skills Examination**

      **1.**     **Description of the Step 2 CS Exam**

Step 2 CS uses standardized patients – individuals trained to portray a patient scenario – to evaluate medical students and graduates on their ability to gather information from patients, perform physical examinations, and communicate their findings to patients and colleagues. *See* Dillon Decl. ¶ 9.

The exam includes twelve patient encounters, each of which lasts 15 minutes under standard testing time. *See id.* ¶ 10. The testing area consists of a series of examination rooms equipped with examination tables, commonly used diagnostic instruments, gloves, sinks and paper towels. *Id.* When examinees enter the room, they encounter a standardized patient who enacts a clinical problem. *Id.* Examinees then conduct an examination and diagnostic interview, following which they write a patient note on a computer located in a cubicle outside of the examination room. *Id.*

      **2.**     **Purpose of the Step 2 CS Exam**

The purpose of the Step 2 CS exam is to assess whether physicians seeking an initial license to practice medicine in the United States can communicate effectively with patients. *See* Dillon Decl. ¶¶ 9, 11.

Research has shown that improving the communication and interpersonal skills of doctors leads to more accurate diagnoses, better patient compliance with physician advice, more referrals for needed treatments, better patient outcomes, lower staff turnover, and fewer malpractice lawsuits.[4] Consistent with this research, communication skills are a required part of the curriculum in every U.S.

---

[4] *See, e.g.*, W. Levinson *et al.*, *Developing Physician Communication Skills for Patient-Centered Care*, 29 Health Affairs 1310 (July 2010).

Document Prepared on Recycled Paper

medical school,[5] and a core competency that must be included in the curriculum of all accredited residency programs.[6]

### 3.     Subcomponents and Scoring of the Step 2 CS Exam

Step 2 CS is a pass/fail examination on which examinees are scored on three separate subcomponents:  Communication and Interpersonal Skills (CIS), Spoken English Proficiency (SEP), and Integrated Clinical Encounter (ICE).  *See* Dillon Decl. ¶ 12 and Ex. 2.  Examinees are told in advance of testing that "[e]ach of the three subcomponents must be passed *in a single administration* in order to achieve a passing performance on Step 2 CS."  *See id.* ¶ 16 and Ex. 5, p.1; *and id*. ¶ 17 and Ex. 6., p. 10 (emphasis added).

"The **CIS subcomponent** includes assessment of the patient-centered communication skills of fostering the relationship, gathering information, providing information, helping the patient make decisions, and supporting emotions.  CIS performance is assessed by the standardized patients, who record these skills using a checklist based on observable behaviors."  *Id.* ¶ 13.

"The **SEP subcomponent** includes assessment of clarity of spoken English communication within the context of the doctor-patient encounter (for example, pronunciation, word choice, and minimizing the need to repeat questions or statements).  SEP performance is assessed by the standardized patients using a global rating scale, where the rating is based upon the frequency of pronunciation or word choice errors that affect comprehension and the amount of listener effort required to understand the examinee's questions and responses."  *Id.* ¶ 14.

---

[5]   Liaison Comm. on Medical Education, *Standards for Accreditation of Medical Education Programs Leading to the MD Degree,* Standard 7.8 ("Communication Skills") (March 2016).

[6]   Accreditation Council for Graduate Medical Education, *Common Program Requirements*, Req. IV.A.5(d)("Interpersonal & Communication Skills") (2015).

DOCUMENT PREPARED
ON RECYCLED PAPER

"The **ICE subcomponent** includes assessments of both data gathering and data interpretation skills.  Scoring for this subcomponent consists of a checklist completed by the standardized patients for the physical examination portion of the encounter, and global ratings provided by trained physician raters.  The patient note raters provide ratings on the documented summary of the findings of the patient encounter (history and physical examination), diagnostic impressions, justification of the potential diagnoses, and initial patient diagnostic studies." *Id*. ¶ 15.

## C.    Dr. Kiprilov

Dr. Kiprilov is a graduate of an international medical school.  Pl. Decl. ¶ 4. To continue her graduate medical training as a resident and ultimately become a licensed physician in the United States, Dr. Kiprilov must obtain passing scores on the USMLE Step examinations.  *Id.*  She has achieved passing scores on Step 1 and Step 2 CK.  *Id*. at ¶ 6.  She has not passed Step 2 CS.  *Id.* at ¶ 7.

As noted above, under NBME's published scoring rules, an examinee must achieve a passing result on all three subcomponents of Step 2 CS during the same test administration in order to pass the exam.  On each of the two occasions that she took Step 2 CS, Dr. Kiprilov received passing scores on two of the three subcomponents and thus did not obtain an overall passing result.  Complaint at ¶ 3. In May 2015, she passed the Communication and Interpersonal Skills (CIS) and Spoken English Proficiency (SEP) subcomponents, but failed the Integrated Clinical Encounter (ICE) subcomponent.  *See* Dillon Decl. at Ex. 8 (Dr. Kiprilov's May score report).   In September 2015, she passed the ICE and SEP subcomponents but failed the CIS subcomponent.  *See id.* at Ex. 9 (Dr. Kiprilov's September score reports).  Her results reflected "a borderline level of performance for each subcomponent (ICE, CIS, SEP); borderline performance is comparable to a HIGH FAIL/LOW PASS on the subcomponent."  *See* Pl. Decl. at p. 47 (Docket #14).

Dr. Kiprilov believes she should be allowed to combine the passing subcomponent outcomes from her two separate test administrations, to create a hybrid passing Step 2 CS result. *See* Complaint at ¶ 4 ("My 'overall' performance on the exam (USMLE Step 2 CS) could be reasonably, logically and safely considered as a pass result."); Am. Comp. at 2, ¶ C (asking the Court to award "specific performance as an injunctive relief – recognition of my overall passing outcome on Step 2 CS"). That result, however, would be contrary to the USMLE program's published scoring rules for the Step 2 CS exam, which apply to all examinees. Her claims are meritless and should be rejected.[7]

---

[7]  *Compare Baji v. Northeast Regional Bd. of Dental Exam'rs,* 3 Fed. Appx. 352, 358 (6th Cir. 2001) (noting that courts are reluctant to "substitute [their] judgment for that of a professional licensing board as to grades received by an applicant for admission to the practice of a profession," and that, "[e]ven where assessment of performance on an examination is somewhat subjective, the result cannot usually be attacked unless the lack of criteria constitutes 'lack of professional judgment' by examiners"); *Chaney v. State Bar of Calif.,* 386 F.2d 962, 963 (9th Cir. 1967) (rejecting the claims of a law school graduate who "took the [California bar] examination … and twice failed to pass," and who "was eligible to take the examination a third time but chose not to do so"); *Tinner v. D.C. Dep't of Cons. & Reg. Affairs,* 703 A.2d 833, 838 (D.C. App. 1999) ("In sum, although the Board's single sitting requirement may result in an unwelcome outcome for applicants situated similarly to Dr. Tinner, 'it is the Board's duty to protect the general public from unqualified physicians, and this requirement rationally serves that purpose.'") (citation omitted); *Vargas v. State Med. Bd. of Ohio,* 972 N.E.2d 1076, 1086 (Ohio App. 2012) ("[i]t was neither unreasonable nor arbitrary for the Board to require Dr. Vargas and other similarly situated out-of-state physicians to demonstrate that they passed the [Federation Licensing Examination] in a single sitting with a weighted average score of 75 or above"); *Barbosa v. Comm. on Accountancy,* 525 N.E.2d 980, 982-83 (Ill. App. 1988) (upholding requirement that individuals seeking to become a licensed accountant "must have taken all four portions of the [licensing] examination in one sitting"); *Dep't of Prof. Regulation, Bd. of Med. Exam'rs v. Durrani,* 455 So. 2d 515, 518 (Fla. App. 1984). (holding that the Board's requirement of a "75% minimum score" and its "requirement that all test section scores calculated into this overall score be attained at a *single* sitting of [the Federation Licensing Examination]" was not arbitrary or capricious) (original emphasis).

27411455.1

- 8 -

DOCUMENT PREPARED ON RECYCLED PAPER

## IV.   LEGAL STANDARD

Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250. Only if the moving party meets its initial burden must the non-moving party produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1).

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

## V.   DR. KIPRILOV IS NOT ENTITLED TO SUMMARY JUDGMENT

Dr. Kiprilov moves for partial summary judgment on her claims for breach of contract and misrepresentation. *See* Pl. SJ Mot. at 5. As explained in NBME's pending motion to dismiss, however, Dr. Kiprilov has failed to state any viable claims in her Amended Complaint. *See* Docket #12. All claims asserted in the Amended Complaint should therefore be dismissed, including her contract and misrepresentation claims.

Moreover, even if Dr. Kiprilov's contract and misrepresentation claims had been properly pled, summary judgment on those claims in *her* favor would not be warranted. Her motion for summary judgment should be denied.

### A.   Dr. Kiprilov Is Not Entitled To Summary Judgment On Her Contract Claim

"A claim for breach of contract under California law consists of the following elements:   (1) the existence of a contract; (2) performance by the

1   plaintiff; (3) breach by the defendant; and (4) damage resulting from the breach."

2   *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316 Fed. App'x 661, 662

3   (9th Cir. 2009); *see also Gerritsen v. Warner Bros. Entm't*, 116 F. Supp. 3d 1104,

4   1123 (C.D. Cal. 2015).

5        Dr. Kiprilov argues that she has an implied contract with NBME, the terms

6   of which "are specifically stated on the USMLE-website and ECFMG-websites."

7   Pl. SJ Mot. at 23.  She contends that the terms of the contract include: "the price of

8   the exam," "the time period," "the way the exam is administered," "the scoring,"

9   "the Rules that apply to that exam," and "the issuance of ECFMG-certification after

10  passing the exam." *Id.* at 23-24.  To the extent Dr. Kiprilov is referring to NBME's

11  testing policies (as opposed to policies of the ECFMG), NBME agrees that its

12  relationship with Dr. Kiprilov is contractual in nature, and that the terms of the

13  contract are found in the policies that NBME made available to her on its website

14  prior to testing.[8]

15       According to Dr. Kiprilov, NBME breached the parties' contract by: (1) "not

16  applying their own policy rules ('Retakes' and 'time-limit');" (2) "not recognizing

17  her 'overall' passing score on Step 2 CS based on these rules and her pass results on

18  CIS, ICE, SEP-component"; and (3) "not issu[ing] the ECFMG-certificate to [her]."

19  Pl. SJ Mot. at 25-26.  She is wrong.  Her arguments regarding NBME's alleged

20  breaches are based on a USMLE testing policy that is not even relevant to her

21  current situation (the policy on "retakes"), a purported USMLE policy that does not

22  exist (the so-called "time limits" policy), and other factual premises that are equally

23  faulty.

24

25  _____

26  [8]  Courts have likewise recognized that the relationship between a testing entity and
    an examinee is contractual, and that the terms of the contract include the published
27  testing policies for the exam. *See, e.g., Sims v. Taylor*, 270 Fed. App'x 940, 944-45
    (11th Cir. 2008); *San Mateo High Sch. Dist. v. Educational Testing Serv.,* 2013 WL
28  4711611, *7-8 (N.D. Cal. 2013).

DOCUMENT PREPARED
ON RECYCLED PAPER

27411455.1

- 10 -

1    **1.      NBME Has Not Breached the USMLE Policy on "Retakes,"**
     **And There Is No USMLE Rule Regarding "Time Limits"**

2

3          The USMLE program has a policy that addresses the number of times a

4    USMLE Step exam may be retaken.  The policy provides as follows:

5          You may take the same [USMLE] examination no more than three
           times within a 12-month period.  Your fourth and subsequent attempts
6          must be at least 12 months after your first attempt at that examination
7          and at least six months after your most recent attempt at that
           examination.
8

9          If you have passed an examination, you are not permitted to retake a
           Step or Step Component, except to comply with certain requirements
10         approved by the USMLE governance.

11   *See* Dillon Decl. ¶ 18, Ex. 7 at 4.  This policy has not come into play for Dr.

12   Kiprilov, much less been violated by NBME.

13         Dr. Kiprilov has taken the Step 2 CS exam twice.  She took the exam on May

14   20, 2015, and again on September 30, 2015.  *See* Dillon Decl.¶¶ 19, 20.  Under the

15   USMLE retake policy, she could have taken the exam a third time at any point

16   between October 1, 2015, and May 19, 2016 (which is the 12-month period

17   following her initial testing date), but she chose not to do so.  She remains eligible

18   to retake the exam and can do so additional times if necessary to achieve a passing

19   result.  The retake policy thus has nothing to do with the fact that Dr. Kiprilov has

20   not achieved a passing result on the Step 2 CS exam.  It is completely irrelevant to

21   Dr. Kiprilov's current situation.

22         Although it is not entirely clear, Dr. Kiprilov appears to be arguing as

23   follows:  (1) in other contexts, NBME has occasionally referred to the Step 2 CS

24   subcomponents as "components;" (2) therefore, when the retake policy refers to

25   Step "components," it is also referring to the Step 2 CS subcomponents; (3) the

26   retake policy therefore prohibits her from retaking any subcomponent of the Step 2

27   CS exam on which she achieved a passing result; and, (4) by requiring her to retake

28   subcomponents on which she achieved a passing result, if she wants to achieve a

passing result on the entire exam, NBME is violating the retake policy.  *See* Pl. SJ Mot. at 5.  In support of her argument, Dr. Kiprilov cites research articles, third-party websites, a third-party YouTube video, and other materials that refer to the CIS, SEP, and ICE subcomponents of Step 2 CS as "components" of the Step 2 CS exam.  *See id.* at 21, 24; Pl. Decl. ¶¶ 9, 11.

Dr. Kiprilov's arguments are frivolous.  The language of the retake rule is unambiguous.  It applies to retaking a USMLE "examination," not to retaking a part of an examination.  Its reference to "retak[ing] a Step or Step Component" is clearly a reference to the Steps and Step Components identified immediately above the rule:  "STEPS 1, 2 CK, and 2 CS," and STEP 3."  *See* Dillon Decl. ¶ 18, Ex. 7 at 4.  While Steps 1 and 3 are single-examination Steps, Step 2 comprises two distinct examinations, Step 2 CK and Step 2 CS, which are frequently designated as Step Components.  The retake rule thus imposes limits on the number of times an individual can take Step 1, Step 2 CK, Step 2 CS, and Step 3.  The rule cannot reasonably be interpreted as being applicable to retaking subcomponents of the Step 2 CS examination.

Dr. Kiprilov's convoluted contrary arguments[9] cannot overcome the plain meaning of the retake rule.[10]  The retake rule is entirely consistent with the Step 2 CS scoring policy that Dr. Kiprilov simply refuses to accept.  The retake rule is not relevant to Dr. Kiprilov's current situation and has not been "breached" by NBME.

Dr. Kiprilov's discussion of a so-called "time limits" rule is even more misguided.  There is no such USMLE rule.  Instead, there is a discussion in the

---

[9]   *See, e.g.*, Pl. SJ Mot. at 16 ("The publications/statements about CIS/ICE/SEP subcomponents, constitute the evidence of the contrary/opposite to the ones with 'components.'  And vice versa – presence of publications/evidence that the parts are 'components' should have prevented NBME/ECFMG to claim that the parts are 'subcomponents' or 'components' respectively….").

[10]   Indeed, Dr. Kiprilov acknowledges in her Declaration that the "official" statement of the "Retakes'" rule applies "only to 'components.'"  *See* Pl. Decl. ¶ 7.

DOCUMENT PREPARED
ON RECYCLED PAPER

USMLE *Bulletin* and related materials of time limits that state medical licensing authorities impose for completion of the Step exams. The Bulletin states, in relevant part, as follows:

> **Time limits** to complete the USMLE, for purposes of licensure, **are established by state medical boards** and many require completion of all Steps or Step Components within seven years from the date the first Step is passed.

*See* Dillon Decl. ¶ 18, Ex. 7 at 4 (original emphasis). Because there is no USMLE rule regarding "time limits," NBME could not have breached its contract with Dr. Kiprilov by "not applying [its] own policy rule" regarding "time limits." *See* Pl. SJ Mot. at 25-16.[11]

### 2. NBME Has No Obligation to Combine Dr. Kiprilov's Performance on One Administration of Step 2 CS with Her Performance on Another Administration in Order to Produce an "Overall" Passing Result

As her second purported contract breach, Dr. Kiprilov argues that NBME breached the parties' contract by "not recognizing her 'overall' passing score on Step 2 CS" based on the "pass results" she achieved on various of the subcomponents of the Step 2 CS exam on the two occasions she tested. Pl. SJ Mot. at 25-26. However, NBME has no obligation to recognize an examinee's purported "overall" passing result by cobbling together partial passing results from separate test administrations. Doing so would be directly contrary to NBME's scoring

---

[11] "Time limits" are irrelevant to Dr. Kiprilov's current situation in any event. She has made only two attempts at passing the Step 2 CS exam and she may retake the exam up to four additional times, if necessary to achieve a passing result. She must do so within the time limits established by the state medical board in the state in which she would like to be licensed. As noted in the USMLE *Bulletin*, many state medical boards impose a seven-year time limit that runs from the date on which a candidate passed Step 1 of the USMLE. Dr. Kiprilov passed Step 1 in 2012. *See* Dillon Decl. ¶ 21. Therefore, Dr. Kiprilov is not subject to any immediate time constraints within which she must achieve a passing result on Step 2 CS. She has ample time to retake the Step 2 CS exam (until at least 2019, according to her Declaration, *see* Pl. Decl. ¶ 13).

DOCUMENT PREPARED ON RECYCLED PAPER

policies for Step 2 CS:

> Examinees are scored on three separate subcomponents: Communication and Interpersonal Skills (CIS), Spoken English Proficiency (SEP), and Integrated Clinical Encounter (ICE). **Each of the three subcomponents must be passed in a single administration in order to achieve a passing performance on Step 2 CS**.

(Emphasis added).  This clear and unambiguous policy is available to all examinees on the USMLE website.  It is found in the USMLE scoring policies for the Step 2 CS exam, Dillon Decl. at Ex. 5, p. 1, and it is found in USMLE program's description of the content of and scoring process for Step 2 CS, *id*. at Ex. 6, p. 10.

Although this scoring policy is at the heart of Dr. Kiprilov's complaint, she does not attach it as one of her numerous exhibits or discuss it in her arguments.  Instead, as noted above, she discusses policies regarding retakes and attempt limits that have no relevance to her current situation.  She is clearly aware of the scoring policy, however, as her supporting Declaration cites the web page where the policy is posted.  *See* Pl. Decl. ¶ 21 (citing http://www.usmle.org/step-2-cs/#scoring).  Moreover, she *acknowledges* in her Declaration that "[a] first time taker is 'told' by reading the official USMLE-website … that in order to achieve an 'overall' passing score on the 2 CS exam, he/she has to pass all the three parts – CIS, ICE, SEP in a single administration."  Pl. Decl. ¶ 16.

It is undisputed that Dr. Kiprilov has not yet passed all three subcomponents of Step 2 CS in a single administration of the examination.  NBME therefore has no obligation to award Dr. Kiprilov a "passing" score on Step 2 CS.

In arguing otherwise, Dr. Kiprilov points out that her score reports for Step 2 CS state that "'[i]t is necessary to pass all three subcomponents in order to obtain an overall passing outcome on the Step 2 CS,'" but do not reference "the 'single administration' requirement."  Pl. SJ Mot. at 9, 24, 25.  The quoted language from the score reports, however, is not inconsistent with the USMLE program's scoring policies for the Step 2 CS exam.  Moreover, even if language in the score report

somehow contradicted the official scoring policy (and it does not), it would not follow that NBME has somehow breached an obligation to Dr. Kiprilov.  Score reports do not set forth the policies that apply when an individual takes an exam. Those policies are provided on the USMLE website, as Dr. Kiprilov herself acknowledges.  *See* Pl. SJ Mot. at 23; Pl. Decl. ¶ 8 ("All the official available information regarding the Step 2 CS is provided on USMLE.org….").

### 3. NBME Has Not Breached Any Obligation to Issue Dr. Kiprilov An ECFMG Certificate

NBME does not issue ECFMG certificates.  *See* Dillon Decl. ¶ 22. Therefore, even if Dr. Kiprilov had satisfied all the requirements for having such a certificate issued to her (and she has not), NBME could not breach a contract with Dr. Kiprilov by not providing her with an "ECFMG certificate."  *See* Pl. SJ Mot. at 26.

## B. Dr. Kiprilov Is Not Entitled To Summary Judgment On Her Misrepresentation Claims

Dr. Kiprilov contends that NBME has misrepresented information regarding the CIS, ICE, and SEP subcomponents of the Step 2 CS examination, and that she was deceived and misled about the three subcomponents in taking the Step 2 CS examination a second time.  *See* Pl. SJ Mot. at 11-22.  More specifically, she argues that the USMLE program's use of the term "components" in various publications when referring to the CIS, ICE and SEP subcomponents of Step 2 CS, and a similar use of the word "components" by other examinees or test preparation companies, somehow constitutes negligent misrepresentation, intentional misrepresentation, or fraud on the part of NBME.  *See id.* at 5, 11-13.  This argument is also frivolous.

"A cause of action for fraud in California requires a showing of the following elements:  (1) representation; (2) falsity; (3) knowledge of falsity; (4) intent to deceive; (5) justifiable reliance; (6) resulting damage."  *Madden v. Independence Bank*, 771 F. Supp. 1510, 1513 (C.D. Cal. 1991) (citation omitted); *see also Northrop Grumman Corp. v. Factory Mut. Ins. Co.*, No. 05-08444, 2011 WL

4501945, *4 (C.D. Cal. Sept. 29, 2011) (reciting the elements of a claim for "the fraud of intentional misrepresentation").  A claim for negligent misrepresentation has almost the same elements, except that it "only requires that the statement or omission was made without a reasonable basis for believing its truthfulness rather than actual knowledge of its falsity." *Madden*, 771 F. Supp. at 1513.

Dr. Kiprilov's misrepresentation claims fail for numerous reasons.  <u>First</u>, the claims fail as a matter of law by virtue of the economic loss rule, which generally "bars tort claims based on contract breaches, 'thereby limiting contracting parties to contract damages.'"  *UMG Recordings, Inc. v. Global Eagle Entm't, Inc.*, 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (citation omitted).  "Broadly speaking, the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort."  *Giles v. GMAC*, 494 F.3d 865, 873 (9th Cir. 2007).  Courts have applied "the economic loss rule to bar negligent misrepresentation claims where the purported negligent conduct is conceptually indistinct from a contract breach."  *UMG Recordings,* 117 F. Supp. 3d at 1105.  Here, the parties agree that their relationship is contractual in nature.  *See* discussion *supra* at p.10.  Therefore, the economic loss rule  -- which Dr. Kiprilov curiously references in her brief, without discussion[12] -- bars all of her tort claims, including her misrepresentation claims.

<u>Second</u>, she has not provided evidence of any false representation by NBME with respect to the scoring policies for Step 2 CS.  Indeed, none of the purportedly contradictory USMLE publication excerpts referenced by Dr. Kiprilov in support of her motion even relate to the scoring policies for the Step 2 CS exam.

<u>Third</u>, Dr. Kiprilov has not provided any evidence that NBME was aware of any false or misleading statement on its part, or that it made any such statement in

---

[12]  *See* Pl. SJ Mot. at 22 ("Under the economic loss rule, a plaintiff may not bring a claim for negligent misrepresentation unless he can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract.") (citing Restatement (2d) of Torts § 552b).

DOCUMENT PREPARED
ON RECYCLED PAPER

order to induce Dr. Kiprilov to take the Step 2 CS exam.

Fourth, Dr. Kiprilov has not shown that she "justifiably relied" on any alleged misrepresentation by NBME.  She asserts that she relied on NBME's "official publications in official medical journals, posted on the official USMLE-website, in the NBME's official annual reports," in which the parts of the Step 2 CS examination were described as "components," as a "'substantial' factor to make [her] take the exam for a second time ...."  Pl. SJ Mot. at 20.  However, this is facially implausible.  She did not decide to take the Step 2 CS a second time because of things she saw in an NBME annual report or in NBME research articles (indeed, she likely read those materials *after* she had tested for the second time, in connection with her decision to sue NBME).  She decided to retake the Step 2 CS because she did not pass the first time.  And, even if her purported reliance on the statements in those publications is credited, that reliance would not be adequate for purposes of stating a misrepresentation claim.  The reliance must be "justifiable."  Any reliance by an examinee on statements in NBME research articles or annual reports would not be justifiable if the statements contradicted published, unambiguous and directly applicable statements of USMLE policy as posted on the USMLE website for USMLE examinees.

Dr. Kiprilov has pointed to statements made in irrelevant contexts and irrelevant publications in an effort to show misrepresentations on the part of NBME.  She also points to statements by third-parties.[13]  What she has not done, however, is identify a single false or misleading statement by NBME regarding the

---

[13]  For example, Dr. Kiprilov points to various web postings where "other medical graduates/physicians discuss and refer to the same parts (ICE, CIS, and SEP) as 'components' on USMLE-forums" as somehow showing justifiable reliance on her part.  In addition to being subject to a hearsay objection, however, the statements made by these anonymous postings provide no support for her arguments.  None of the posters appears to have been misled or confused in the manner alleged by Dr. Kiprilov.  To the contrary, one of the website pages states:  "Students appearing for Step 2 CS test have to pass all the components in one sitting."  Pl. Decl. at p. 41.

Document Prepared
on Recycled Paper

scoring policies for the Step 2 CS exam.

## VI.   <u>CONCLUSION</u>

Understandably, Dr. Kiprilov is not happy about having to retake the Step 2 CS exam.  Her disappointment at having to retest, however, does not entitle her to a deviation from scoring policies that apply to all examinees.

Under the USMLE program's published policies, all three subcomponents of the Step 2 CS exam must be passed in the same administration.  Dr. Kiprilov has identified no plausible breach of contract or misrepresentation by NBME relating to that policy or any other policy, much less demonstrated the absence of material factual disputes on her claims.  Her motion for partial summary judgment therefore should be denied.

Dated:  August 1, 2016                    Respectfully submitted,

                                            **NORTON ROSE FULBRIGHT US LLP**

                                            By*:   /s/ Eric A. Herzog*
                                                Eric A. Herzog

                                            Attorneys for Defendant
                                          NATIONAL BOARD OF MEDICAL
                                          EXAMINERS