Yoana Kiprilov
1053 E. 6TH Street, Ap.26
Ontario, CA
707-570-5155
yoana_ayanova@yahoo.com

**UNDITED STATES DISTRICT COURT**

2016 AUG -1  PM 2:16

FILED

YOANA A. KIPIRLOV

      PLAINTIFF,

vs.

NATIONAL BOARD OF MEDICAL EXAMINERS, and

EDUCATION COMMISSION FOR FOREIGN
MEDICAL GRADAUTES (ECFMG)

      Defendants

Case No.: 5:16-CV-00952
Assigned to Hon. Jesus G. Bernal

JGB (SPx)

**PLAINTIFF'S OPPOSITION TO MOTION TO
DISMISS COMPLAINT -**

Hearing date: August 22, 2016
Hearing time: 9:00 am
Courtroom   : 1

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**PLAINTIFFS' RESPONSE AND OBJECTIONS TO**

**MOTION TO DISMISS FILED BY NBME DEFENDANT**

    Plaintiffs respectfully submits her Opposition to the Motion to Dismiss for failure to state claims filed by the Defendant.

    Plaintiff contends that, regardless of however inartfully plead, her First Amended Complaint in fact does state plausible claims and meets the standards governing the form of a complaint contemplated by Federal Rule of Civil Procedure 8(a), Rule 9 (b), Rule 12 (b) (6), does allege sufficient facts to causes of action and entitlement to relief. Plaintiff's statements of her claims for relief as alleged in its First Amended Complaint ("FAC") are legally sufficient.

    Plaintiff respectfully requests that the Court denies the Defendants' Motion to Dismiss the First Amended Compliant. Whatever Defendants may contend, Plaintiffs has described with specificity and in details: what the violations are, the nature of violations, and the violators, when and how they happened, and also has provided a lot

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT - 1

of evidence (with date on it) in support of the claims. Plaintiff's First Am. Complaint has very specific factual allegations supported by a lot of evidence provided in the EXHIBITS and website-references. Thus, Rule 8 (a), with the plain statements, but also Rule 9 (b) are satisfied, since the questions "who, what, how, when, where" are every specifically thoroughly answered.

Plaintiff would like to note that she is an M.D., not a J.D., which similarly one of the main arguments in this casus ("component" v. "subcomponent"), subsequently turns out to be a 'substantial' difference. Due to this "material" fact, the "short plain statement"-s and the "heightened pleading"- statements, may not be that well-constructed in the First Am. Complaint. They appear to be more spread throughout the paragraphs, but these statements are there and are not missing, which makes Rule 8(a) and Rule 9(b) satisfied.

Defendants cited and referred to documents on page 4 of the Motion to dismiss, that are not "referenced extensively in the compliant or form the basis of the plaintiff's claim", since Plaintiff used other documents and papers, not the ones cited by the Defendant. Defendants should have discussed the ones cited by her. Instead, Defendants present their own additional evidence from another website as well (documents[6,7,8], page 4 of the motion to dismiss). Based on this, the Plaintiff requests for a conversion it into a motion for summary judgement. Since "if: (1) those documents are referenced extensively in the complaint or form the basis of the plaintiff's claim; **and** (2) if no party questions their authenticity. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003), (Black et al. v. CorVel Enterprise Inc, EDCV 14-2588-JGB). Here, (1) is not satisfied, since Defendants present their own additional evidence regarding what research has shown. Plaintiff's research has shown something else.

Even though the Defendants are trying to escape admitting the truth, we are all intelligent people here, and the Compliant (and the Motion to dismiss) make the case very clear about who did it, what, how, when, and even…why (financial benefit to NBME/ECFMG, more specifically $1,535). At least one commentator has said that

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT - 2

lawyers spend more time avoiding truth than seeking it, which is why instead the Defendant' motion to dismiss was filed.

Defendants' (NBME/ECFMG) motion to dismiss is a premature attempt to avoid judicial inquiry into their unjust unlawful activity and practice in providing publicly misleading information regarding their product (exam), violating their own rules and agreements with their clients, and this way causing career and financial damages to their clients. But also, Defendants use a subjective unreliable product (exam), obscure scoring and discriminatory results.

Plaintiff seeks only: to protect her right to receive a clear information about a product affecting her career, protection against a Defendant who did not perform their part of the mutual agreement, protection against further career damages (as a result of Defendants' violations), protection against the use of unreliable, subjective and discriminatory tests, and the right to have her pass results recognized in reality, not only on a paper. Because these activities are prohibited by law and/or unethical, it would be extremely detrimental to Justice if this Compliant is dismissed, especially when it answered all the "heightened pleading standard" questions in the

Plaintiff has provided direct evidence and statements, not circumstantial, (as required by *Twombly*-pleading standard) about how the violations happened, as well.

Further, "a plaintiff's briefing may always be used to clarify allegations in [its] complaint whose meaning is unclear." Pegram v. Herdich, 530 U.S. 211, 230 (2000), which Plaintiff will do here.

## I. STATEMENT OF FACTS:

**1**. Plaintiff has filed this lawsuit due to: Defendants' negligent /intentional misrepresentation and false description of the characteristics of their product (the three parts of the Step 2 CS -exam), which in 2015 adversely affected her scores and her medical career prospects. The misrepresentation is done by using publicly/officially two descriptive words - "component" and "subcomponent" to characterize each part of Step 2 CS – ICE, CIS and SEP. The second reason for the lawsuit is that Defendants'

1    violated their own officially announced policy rules by not applying them to the three

2    "components" of the 2 CS-exam that Plaintiff passed– the 'Retakes' and "time-limit"

3    (agreed upon by the two parties in this case, at the time of the purchase in 2015). Due

4    to unknown reasons, the three parts, even though described as "components" (and

5    "subcomponents" used as a synonym), were not considered to have the characteristics

6    of "components" in regard to the "Retakes" and "time-limit" rules. As a result, the

7    Plaintiff's 'pass results on each of these three components have not been recognized

8    as an "overall" passing result on the 2 CS-exam; and, there are significant and

9    irreparable career and financial damages suffered by the Plaintiff.  Plaintiff has to take

10   the exam for a third time and achieve a second/third pass on the parts she already

11   passed. Plaintiff is allowed to take it again and pay more money, and why not when it

12   benefits only NBME/ECFMG.

13       The purpose of the exam is to "assess whether an individual has the minimum

14   knowledge and skills deemed necessary for safe and effective patient care" and,

15   "examinees are tested on three separate subcomponents" (see Motion to dismiss,

16   page and page 5, line 3). Then, it is unclear why the Plaintiff's pass results achieved in

17   each "subcomponents/components" are not recognized, but she has to achieve a

18   second/third pass result.

19       The ICE-part is rated by physicians, and SP- standardized patients rate SEP and

20   CIS. *Id.* First is the patient encounter (CIS), after that is the ICE- part, (Id. page 4, line

21   3-9), i.e. the parts not only test different skills, but are separate in time and space.

22   CIS-part is tested in another exam (2 C**K**-exam) the Plaintiff has passed. It is unclear

23   why it is tested in Step 2 CS again. Nevertheless, the Plaintiff has passed CIS (as part

24   of 2 C**K**-exam in 2014), and at her first attempt in May 2015 (as part of 2 CS-exam). It

25   is unclear why she was tested by different people for a third time in September 2015

26   (on the same part she passed 4 months earlier), when other graduates who have

27   passed the same part are not tested again. It is also unclear how a future pass results

28   on the same components would differ from her previous ones.

**2**. Step 2 CS is an employment-related test, used solely for employment decisions – whether the examinee is allowed to be employed as a (resident) physician or not. All medical graduates take the test because they need the ECFMG-certification in order to be employed as resident physicians working under supervision (meaning continuing their education). It is worth to point out here, that the licensing exam after residency (for working without supervision) is allowed to be taken in parts, and the Medical Board of California does not play with the words components-subcomponents, but uses the word "parts" of the licensing exam. Even if the purpose of the Step 2 CS is reasonable, the exam itself does not appear to be well-created with its subjectivity, "contrast" and "sequence effects", reliability issues. American Medical Students content that "Step 2 CS exam should be eliminated for US medical students and propose an <u>alternative consistent with the mission and purpose of the exam</u> that imposes less of a burden on medical students." ("The USMLE Step 2 CS: Time for a change" by Matthew D. Alvin, published March 2016).

**3**. Facts and research studies about this specific exam, show that Defendants use unreliable, subjective and defective discriminatory exam, which also affected and contributed to the damages suffered by the Plaintiff. Plaintiff has "passed each component/part of the exam'). If NBME/ECFMG reveal to and inform the residency program directors about all these problems with the exam, they would probably not consider it for employment decisions, and consider only the other exams with the more objective results (multiple choice questions exams).

**4. Defendant NBME (in their Motion to dismiss), and ECFMG in their correspondence with the Plaintiff, <u>contest only</u> the Plaintiff's "overall" score, and claim that Plaintiff has not "achieved an "overall" passing score" on the 2CS- exam.**

**5. Defendants do not contest that the three parts (CIS, ICE and SEP) are "components". Defendant NBME also did not contest this fact in a previous lawsuit, in 2010, before another Federal Court in Pennsylvania.  Defendant**

described the three parts as "components" in that case, and making it a ground for the application of the judicial estoppel (to prevent the Defendant form arguing further in our case that the parts are not "components").

6. **Defendants do not contest that**: they provided publicly the misleading information, that they violated the officially announced policy rules (applicable) in Plaintiff's case, they do not argue that the Plaintiff does not have the necessary skills based on pass results on each part of Step 2 CS, that they caused the damages claimed by the Plaintiff, and that they use a defective, unreliable, discriminatory exam.

7. Plaintiff is registered with ECFMG as an International Medical Graduate. She has purchased before, taken and passed two other exams - Step 1 and Step 2CK. This shows that there has been an established commercial "buyer-seller" relationship, with the rules and terms described publicly on the USMLE-website. In their own motion to dismiss (page 5, lines 2-5), Defendants themselves refer to and cite statements from their website "usmle.org" to show the terms and conditions of the agreement/contract between them and each examinee. This is how the "examinees are told in advance" (by reading the usmle.org website) what the conditions of the purchase and the exams are (incl. the "Retakes" and "time-limit" policy rules). If the Defendants refer to and cite their own website statements as the only source of information about the exam and the terms of the purchase, then their other statements posted on the same website should be considered when purchasing and taking the exam – namely CIS-, ICE-, SEP- parts described as "components", "Retakes" and "time-limit" rules applicable to components.

## II. THE STATED CLAIMS SATISFY Rules 8 (a) and 9 (b):

1. "I am registered with ECFMG (they administer the exam)" (buyer-seller relationship). "The only information provided is that NBME sponsors ECFMG", "ECFMG and NBME act together administering the test" (see First Am. Complaint at 18). "The ambiguous misleading/deceptive information has been posted on NBME/ECFMG's official USMLE-related website" (see Am. Complaint at 10). "The ECFMG representative, Mr. Roman Mizak,…He attempted to resolve the problem…".

"Involving NBME turned out to be the right decision", "NBME took responsibility (they create the exam) and continued the illogical explanations and the misconduct...- Ms. I. Rozinsky, Ms. Coleen Ward, Ms. Paolini." (See First Am. Complaint at 18).

Based on that, Plaintiff contents in her First Am. Complaint that "NBME and ECFMG jointly and severally", because "ECFMG and NBME act together administering the test". They both...should be held liable for the violations of the law and pay damages caused to me" (See First Am. Complaint at 18).

**Thus, the question - "WHO" (did it), is directly answered in great details**.

If the case survives, further evidence and discovery will show that "ECFMG partners with... (NBME) in administering the Step 2 Clinical Skills (CS)... Through this collaboration, ECFMG uses its experience in assessment to ensure that all physicians... can demonstrate...clinical skills essential to providing...patient care <u>under supervision</u>." (See http://www.ecfmg.org/about/index.html ).

Plaintiff requested to talk to one of the NBME/ECFMG- physicians about her problem with Step 2 CS, and her results. Her request was denied and she was not allowed to communicate with any physicians or other NBME/ECFMG representatives. Her emails, sent to the President and CEO of NBME (who is an MD) and the other three CS-exam Executive Committee members-physicians, were never answered, but were transferred back to the above mentioned representatives (who are not physicians and do not know the exam in details). Plaintiff cannot provide information about who took the decisions on her case (the names were not revealed to her), and Mr. Mizak, Ms. Ward, Ms. Rozinsky and Ms. Paolini probably mediated the communication.

**2. "**The ambiguous misleading/deceptive information has been posted on NBME/ECFMG's official USMLE-related website, so that the examinee/consumer/buyer can read about the ICE, CIS, SEP parts described as "components" of Step 2 CS... and subcomponents. Reading all the available information presented by NBME/ECFMG, a person accepts: component=subcomponent=part**"** (see First Am. Complaint at 10).

1    "NBME/ECFMG and their staff members…have published many articles between

2    2009-2015, in which SEP, ICE and SEP are called and described as COMPONENTS."

3    (see Am. Compl. at 2).

4    "This has resulted in a public interpretation and recognition of the same parts as

5    components (and a synonym of subcomponents…)" (Id. at 10), since "in many internet

6    forums graduates talk about these same parts are as "components. It is not only me

7    who calls these same parts are as "components." (Id. at 20).

8    "On my two exam reports…", presented as an EXHIBIT V, dated May and

9    September 2015, "it is stated "'It is necessary to pass all three subcomponents in order

10   to obtain an overall passing outcome on Step 2 CS."" "No "single administration" is seen

11   on either of my reports". (Id. at 9)

12   However, "Even though I clearly explained the problem", "NBME/ECFMG started

13   arguing that these are "subcomponents" not components and that their policy rule is not

14   applicable" (Id. at 17). "I am talking about the "Retakes" and "time-limit"- rules…, just

15   applying the companies' official policy rules as promised in our implied contract

16   /agreement". ('RETAKES")…which states that once a component is passed, it is not

17   allowed to be retaken." (Id. at 23). These terms of the agreement/contract are found in

18   a written statement published online: "As noted above, under NBME's published scoring

19   rules" (Motion to dismiss, page 6, line 9). If these policy rules had been indeed applied

20   in this case, as officially announced/published, i.e. if the Defendants had not breached

21   the contract, Plaintiff's overall result on 2 CS-exam would have been considered as a

22   passing outcome.

23   Although "... I have passed each part/component of the exam' (Id. at 1), due to

24   '[Defendants'] "their refusal to recognize my pass results (achieved in each part of the

25   exam" (Id. at 1), "the damages of my career are significant".

26   "Since recognizing my passing results would have resulted in obtaining an ECFMG-

27   certification and obtaining a residency position, NBME/ECFMG's "intentional

28   misconduct and breach of our agreement have resulted in unemployment, and I have

1  lost money, that I could have been making…and each year my chances to get into a
2  residency position get smaller" (Id. at page 29, lines 4-11).

3      **The above mentioned statement are the direct and clear answers to the**
4  **questions "WHAT, HOW and WHERE"** the violations happened (in the Complaint). To
5  put it shortly, the Complaint gives the following information and statements:
6  -**what**:" ICE, CIS, SEP parts described as "components" of Step 2 CS… and
7  subcomponents.", "NBME/ECFMG started arguing that these are "subcomponents" not
8  components and that their policy rule is not applicable" (Id. at 17)"
9  -**where**: on the "NBME/ECFMG's official USMLE-related website", and in "published
10  many articles between 2009-2015, in which SEP, ICE and SEP are called and
11  described as COMPONENTS", and in "NBME/ECFMG… annual reports", Plaintiff's
12  result reports (see also below at 3);
13  - **how**: misrepresentation by publications (2009-2015), publicly posted information.
14  - **how**: "by arguing that these are subcomponents, not components and that their policy
15  rule is not applicable", by not applying and continuously refusing (>6mo) to apply their
16  (NBME/ECFMG's) own policy rules – "Retakes" and "time-limit" (the breach), applicable
17  to the misrepresented fact/described product and based on that is the Defendants'
18  "refusal to recognize my pass results."
19  - **how**: by "arguing" that the Plaintiff should take the exam again to achieve a
20  second/third pass on each component of 2CS, "intentionally" avoiding to apply their
21  published rules, and knowing what damages this will cause to the Plaintiff's career in
22  addition to financial difficulties.
23      These elements also satisfy negligent/intentional misrepresentation and breach of
24  contract.
25      "It would appear that the pleadings as to those elements of negligent
26  misrepresentation would be sufficient to give notice to defendants of the actions for
27  which they were to be held liable." (B.L.M., Plaintiff and Appellant, v. SABO DEITSCH)
28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT - 9

**3.** "The fraud/deceit/false descriptions, (intentional or negligent) misrepresentation used when we entered the agreement /contract when I purchased the exam in March 2015". (Id. at 2). And, "on my two exam reports…", presented as an EXHIBIT V, dated May and September 2015, "it is stated "'It is necessary to pass all three subcomponents in order to obtain an overall passing outcome on Step 2 CS.'"" "No "single administration" is seen on either of my reports". (Id. at 9). And, this problems "this has been going on for more than 6 months. (Id. at 7). Actually, it has been 8 months already.

**These are the answers to the question "WHEN" (did it happen)** - Plaintiff's problems started in March 2015, when she purchased this specific exam.  In May 2015, and September 2015, she took the exam with NBME/ECMFG. Preponderance of evidence (publications) show that the misleading information has been published at least since 2009.

The above "statements" and "citations" taken from the Plaintiff's First Am. Complaint show that the answers to the heightened pleading questions are clearly and directly answered, so that Rule 8 (a) and Rule 9 (b) are very well satisfied.

**The CLAIMS are supported by a lot of evidence (EXHIBITS** in the First Am. Complaint). The evidence is not contested by the Defendants, and they do not contest its sufficiency.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should not be dismissed if "it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). Indeed, "Rule 12(b)(6) motions are viewed with disfavor and are properly granted" only "under extraordinary circumstances." (Yordy v. Astrue, No.1:09-cv-03028-NJV, 2010 U.S. Dist. LEXIS 14966, *4 (N.D. Cal. Feb. 22, 2010), (Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009)),

### III. LEGAL ARGUMENT:

Motions to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "are viewed with disfavor and are rarely granted." Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short plain statement of the claim showing that the pleader is entitled to relief." Thus, it is not necessary that the pleader make detailed factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-55 (2007). A complaint need only allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. And, the Plaintiff's First Am. Complaint is a "**complaint with enough factual matter (taken as true) to suggest that an agreement was made**". (Bell Atl. Corp. v. Twombly, 550 U.S. (2007). Her two report results sent by NBME/ECFMG specifically addressing the exam performance show the reciprocal activity- the payment had been made, Plaintiff took the exam, NBME/ECFMG did the administration and scoring.

Here, in order to speed the process of litigation and limit further damages to her career, Plaintiff provided all the available detailed information to the Court, regarding who, what, how, when and where did the violations of the law. Plaintiff was hoping that Defendants will try to resolve it (not avoid it), but they chose again to try escaping justice and hide the story.

Using a standard similar to the previous Conley-standard, the Supreme Court's per curiam decision just two weeks later, reversed the granting of a motion to dismiss for failure to state a claim in a pro se plaintiff case, in *Erickson v. Pardus*. Namely, The Hon. Justice (in Erickson v. Pardus) held that: "The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed pro se is "to be liberally construed," Estelle, 429 U. S., at 106, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. (internal quotation marks omitted). …Whether petitioner's complaint is sufficient in all respects is a matter yet to be determined, for respondents raised multiple arguments in their motion to

dismiss. In particular, the proper application of the controlling legal principles to the facts is yet to be determined. The case cannot, however, be dismissed on the ground that petitioner's allegations of harm were too conclusory to put these matters in issue…the judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion." (*Erickson v. Pardus 551 U.S. 89 (2007).*

A complaint should not be dismissed for failure to state a claim unless it is clear that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Bell Atl. Corp. v. Twombly, 550 U.S. (2007) (internal citations omitted). Further, in considering a 12(b)(6) motion, the court must accept as true all factual allegations set out in plaintiff's Complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

The Complaint must be construed liberally and in the light most favorable to the plaintiff. Rescuecom Corp. v. Google Inc., 562 F.3d 123, 127 (2nd Cir. 2009); Al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009), cert. granted in part on other issues, 131 S. Ct. 415 (2010).

The question of plaintiff's ability to prove its allegations or possible difficulties in making such proof is generally of no concern in ruling on a rule 12(b)(6) motion: "In considering a 12(b)(6) motion, we do not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support of their claims." Nami v. Fauver, 82 F. 3d 63, 65 (3rd Cir.1996). Further, a plaintiff's briefing may always be used "to clarify allegations in [its] complaint whose meaning is unclear." Pegram v. Herdich, 530 U.S. 211, 230 (2000).

The Court reads the complaint "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Moreover, "Twombly and Iqbal do not require that the complaint include all facts necessary to carry the plaintiff's burden." Al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009), rev'd on other grounds, 131 S. Ct.

2074 (2011). "Asking for plausible grounds to infer the existence of a claim for relief does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to prove that claim." *Id*.

"If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). In our case, the there are few sets of "two alternative explanations, not only one: 1) Plaintiffs arguments that that the parts are "component" or at least there is no difference between "component and subcomponent", and Defendants presenting the parts as "subcomponents" only of 2 CS before this Court, and outside the Courtroom arguing that the parts are "subcomponents" only – misrepresentation /false description. 2) Plaintiff's overall passing score- Plaintiff's position and Defendant's position are two alternative explanations of her "overall" 2 CS EXAM result, based on the pass results on the three components/subcomponents. The decision regarding the issue depends on whether there is a violation of the NBME/ECFMG's own policy rules and breach of the agreement/contract by not applying the "Retakes" and "time-limit rules (as officially announced), and is related to the misrepresentation.

Defendants has failed to establish the "extraordinary circumstances" that warrant dismissal pursuant to Rule 12(b)(6). See United States v. City Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

### IV. CLAIMS and ELEMENTS:

**A.** Negligent/intentional misrepresentation.

Defendants (in the Motion to Dismiss) do not argue that Plaintiff has failed to satify Rule 8 (a) for her negligent misrepresentation claim (F. Am. Complaint at 2, also pages 36 line26-27). Rule 9(b) is expressly limited to allegations of "fraud or mistake." Fed. R. Civ. P. 9(b). Because the California tort of "negligent misrepresentation" has a critically different element from the tort of "fraud," analyzing negligent misrepresentation under

Rule 9(b) is contrary to both the express language and policy of the statute. (Petersen v. Allstate Indem. Co.•Case No. SACV 11-1987 DOC (RNBx), 6 (C.D. Cal. Mar 12, 2012). Thus, Defendants recognized the Plaintiff's claim of negligent misrepresentation as legally sufficient.

"Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." (See Fox v. Pollack (1986) 181 Cal.App.3d 954, 962 [226 Cal.Rptr. 532], internal citation omitted.)

The tort of deceit or fraud requires: "'(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (See Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 974 [64 Cal.Rptr.2d 843, 938 P.2d 903], internal quotation marks omitted; see also Molko v. Holy Spirit Ass'n (1988) 46 Cal.3d 1092, 1108 [252 Cal.Rptr. 122, 762 P.2d 46].).

Sometimes this tort is stated with four elements instead of five: "(1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." (See Service by Medallion, Inc. v. Clorox Co. (1996) 44 Cal.App.4th 1807, 1816 [52 Cal.Rptr.2d 650].)

**1.** Here, Plaintiff contends that she has been deceived and misled by the NBME/ECFMG 's use of "component" and "subcomponent" (simultaneous) description of CIS, SEP and ICE parts. Subsequently, it turns out that these two words describe different characteristics of the parts of the exam, and the "Retakes" rule (which applies only to "components') is not applied by NBME/ECFMG for "subcomponents". Thus, it turns out that the three parts are presented as having characteristics that they do not have.

As an evidence, Plaintiff has presented in her Amended Compliant multiple publications by NBME-Defendant's' staff members, NBME's annual report where the parts are described as "components". The evidence presented also shows that the his interchangeably to describe the three parts of 2 CS-exam. The Evidence is available online. (Pl's. F. Am. Complaint at 1-11)

Although unofficially considering the parts as "subcomponents" only, Defendants officially on the usmle-website and before another court/case (Hartman v. NBME) presented the parts as component=subcomponent.

**In this case, NBME/ECFMG do not contest that the parts are "components", and the question is: then why the Plaintiff's overall exam result is not recognized as a "passing score".**

**If** Defendants contest the "component description" here, then this will be a misleadingness before this Court.

California Evid. Code, Sections 622 and 623, the fact that the publications and policy rules (Retakes)-statements fulfill the criteria that "The written paper or instrument need not represent an agreement". (See Generes v. Justice Court (1980) 106 Cal. App. 3d 678, 684 [165 Cal. Rptr. 222].), the judicial estoppel grounds and the Erie doctrine (discussed in the Pl.'s pending Motion for a partial Summary Judgment) should be enough to prevent Defendants form arguing that the parts are not "components".

Plaintiff request that her arguments in the Motion for a Partial Summary Judgement, for the Section 622, 623 (Evid. Code), the judicial estoppel, and Erie, be considered here as well (so that she would avoid rewriting them). This means that parts are "components" and the Plaintiff's "overall" result is a "passing outcome". Then, she should have been issued the "ECFMG"-certification.

Under Erie doctrine (Erie R.R. v. Tompkins 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), some federal courts have applied state evidentiary rules when they are deemed substantive, "...a substantive rule is concerned with the channeling of behavior outside the courtroom." Barron, 965 F.2d at 199.

Here, these Evid. Code sections govern the misrepresentations and the agreement between Plaintiff and Defendants outside the Courtroom. These sections have been violated, as obvious from the facts described so far, and this is why the lawsuit was filed.

2. Element "without reasonable grounds" and "knowledge of falsity":

"Thus, while negligent misrepresentation shares four elements with fraud, it differs regarding the fifth element: mental state." Petersen v. Allstate Indem. Co.•Case No. SACV 11-1987 DOC (RNBx),  6  (C.D. Cal. Mar 12, 2012.

It NBME/ECFMG contest the "without reasonable grounds statement", the this would mean that Plaintiff also had reasonable grounds  to consider the parts as "components", just like the NBME -staff memebers.

""To be actionable deceit, the representation need not be made with knowledge of actual falsity, but need only be an 'assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' [citations] and made 'with intent to induce [the recipient] to alter his position to his injury or his risk. '[Citations.]" (Gagne v. Bertran (1954) 43 Cal.2d 481, 487-488, 275 P.2d 15.)".

"In order to satisfy the requirement of scienter, it may be established either that defendant had actual knowledge of the untruth of his statements, **or** that he lacked an honest belief in their truth**, or** that the statements were carelessly and recklessly made, in a manner not warranted by the information available to defendant." (Yellow Creek Logging Corp. v. Dare, 1963) 216 Cal.App.2d 50, 57 [30 Cal.Rptr. 629). Here, the information available is the publications 2009-2015, USMLE-WEBSITE, exam result report, NBME's annual reports). Which satisfies the "scienter" here.

"Promissory fraud" is a subspecies of the action for fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. (Union Flower Market, Ltd. v. Southern California Flower Market, Inc. (1938) 10 Cal. 2d 671, 676 [76 P.2d 503]; see Civ. Code, § 1710, subd. (4); 5 Witkin,

Summary of Cal. Law, supra, § 685, pp. 786-787.). Here, NBME/ECFMG with "component"-"subcomponent" description and the policy rules, made statemenst and promises that they obviously did not intent to perform – considering the three 2 CS-parts "Components" and applying the Retakes and time-limit rules.

Also, the fact that NBME-staff member shad the "considerable knowledge and experience" that the Plaintiff did not have, means that must have known what exactly the parts are -components or subcomponents. Actually they are the one who has this information.

3.The element of "intent to induce reliance" and "justifiable reliance" is satisfied: Plaintiff presented publications and website-statements, since this is the act of offering something for the general public to inspect or scrutinize. It is meant to convey knowledge or give notice to the public. Plaintiff has presented the published documents. Defendants themselves admit that "under NBME's published scoring rules…" (Motion to dismiss, page 6) are the ones to be considered as the terms of the agreement/contract. Plaintiff presented her reasonable arguments in her F.AM. Complaint at 20. Presented is also evidence that other medical graduates/physicians consider and call the parts "components" with similar to the Plaintiff's education and experience (Id. at 11 and 20). ""Whether reliance is justified is a question of fact for the determination of the trial court; the issue is whether the person who claims reliance was justified in believing the representation in the light of his own knowledge and experience." (Gray v. Don Miller & Associates, Inc. (1984) 35 Cal.3d 498, 503 [198 Cal.Rptr. 551, 674 P.2d 253], internal citations omitted.)."

Plaintiff relies on the information provided online by NBME/ECFMG, and based on that, she made reasonable arguments (Pl's. Am. Complaiint at 20). Plaintiff does not claim to have "considerable knowledge and experience" regarding the exam, compared to the NBME/ECFMG STAFF members (Id. at 12, Exhibits X and T6).    [Plaintiff] "He may not justifiably rely upon mere statements of opinion, including legal conclusions drawn from a true state of facts (Rest. Torts, sec. 545; see cases cited in 12 Cal.Jur.

730-733, unless the person expressing the opinion purports to have expert knowledge concerning the matter or occupies a position of confidence and trust. (Rest. Torts, sec. 542; see cases cited in 12 Cal.Jur. 725 et seq.)" (see Seeger v. Odell, 18 Cal.2d 409). NBME/ECFMG- staff members claim to have "considerable knowledge and experience" in STEP 2 CS. This is undisputed by NBME.

"The defendant's intent to induce the plaintiff to alter his position can be inferred from the fact that defendant knew the plaintiff would act in reliance upon the representation. (Gagne v. Bertran (1954) 43 Cal. 2d 481, 488 [275 P.2d 15].)

""Under certain circumstances, expressions of professional opinion are treated as representations of fact…Moreover, when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact." (See Bily, supra, 3 Cal.4th at p. 408, internal citations omitted.)

What Plaintiff did in relying on the information provided online, was to pass all the three 2 CS-components. Now, knowing the truth about the misrepresentation, she refuses to take it again. The other possible option for her was to take the exam for a third time, and then file this lawsuit. However, in order to limit further financial and career damages because of this exam with statistical reliability problems (Pl.'s F. AM. Complaint at 15 and EXHIBIT Z), it appears more reasonable to have the lawsuit filed now, not later. Also, the time- restrictions may prevent her from filing later.

4. Element "damages": It is not contested by the Defendant that Plaintiff did not receive the ECFMG-certification and she is not allowed to be employed as a physician. Which has resulted in loss of money and time in addition to decrease in her chance to become ever employed as a physician (as per the statistics offered by NBME). (Pl.'s F. Am. Complaint, page 28, line 4-11), and purpose of the remedies on the same page).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  Breach of contract, elements:**  Civil Code section 1549 provides: "A contract is an agreement to do or not to do a certain thing."

A complaint for breach of contract must include the following: (1) the existence of a contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damages to plaintiff therefrom. (Acoustics, Inc. v. Trepte Construction Co. (1971) 14 Cal.App.3d 887, 913 [92 Cal.Rptr. 723].) Additionally, if the defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove that the event transpired. (Consolidated World Investments, Inc. v. Lido Preferred Ltd. (1992) 9 Cal.App.4th 373, 380 [11 Cal.Rptr.2d 524].)

Civil Code sections 1619–1621 together provide as follows: "A contract is either express or implied. An express contract is one, the terms of which are stated in words. An implied contract is one, the existence and terms of which are manifested by conduct."

As discussed earlier here (page 6 at 7), the reciprocal activity/conduct (payment by the Plaintiff, administration and scoring by the Defendant) seen form the Plaintiff's exam results (Pl. F.Am. Complaint at 9, 17), shows a specific "buyer-seller" relationship, an implied agreement/contract, with the terms and conditions described on the official USMLE web-site. The fact the Plaintiff took the exam twice, NBME/ECFMG administered the exam, scored her performance twice, and sent her the two exam results based on her performance, but without applying the official policy rules, shows the "facts from which the promise is implied". The promise to apply the NBME/ECFMG's official policy rules, which is what had been agreed upon by the parties before the purchase, administration and scoring the exam.

As seen (Pl's.F. Am. Complaint at 1,9), Plaintiff has passed all the three CIS/CIS/SEP -"components"/subcomponents/part of the exam, as directed further on her exam reports by NBME/ECFMG (Id. at 9).

Defendants did not apply the "Retakes" and "time-limit" rule, and this way did not recognize Plaintiff's overall passing score, which is how they breached the implied

agreement/contract between the two parties here. (Id. at 23 and page 28).  The damages are also described by the Plaintiff. (Pl.'a F. Am. Complaint, page 28, lines 4-11).

### C. False descriptions under 15 U.S.C., Section 1125"

Plaintiff will agree with the Defendant here, if they claim that this section does not apply in this case. Plaintiff erroneously relied on the plain words in the section, without having the detailed knowledge of when this section applies.

### D. California's Unfair Competition Law ("UCL"), Business & Professions Code Sec. 17200 and Business & Professions Code Sec. 17500 (prohibits false advertising), and CLRA, California CIVIL Code Section 1770:

Based on the above statements made in this Response (at **II.**, pages 6-10), Plaintiff contends that the Rules 8 (a) and Rule 9 (b) have been satisfied with respect to the claims under this law.

### E. Violations under 15 U.S.C. Section 45.

Plaintiff will agree with the Defendant here, if they claim that this section does not apply in this case. Plaintiff erroneously relied on the plain words in the section, without having the detailed knowledge of when this section applies.

### F. Discriminatory results under 42 U.S.C. Section 2000e-2 (I).

Plaintiff contends that there a "disparate impact" (Pl.'s F. Am. Complaint, page 31-35). Plaintiff contends that these discriminatory scores and/or discriminatory characteristics of the exam itself, contributed to her problems with the results on the three "components" of Step 2 CS. Moreover, the discriminatory passing scores were changed in 2013 only for two of the three parts (CIS and ICE, not the SEP). The change affected differently the decrease in the passing rates of two different groups (US- graduates v. non -US graduates, and 3% v. 18%, respectively). Plaintiff's

arguments (Pl.'s F.Am. Complaint at pages 32-34) is that 45 U.S.C. section 2000e-2 (l) (added in 1991), does not specifically require employer-employment relationship. The cases cited by the Defendants are either decided much earlier (from 1985 and 1979), or the Plaintiffs in those cases did not rely specifically on this subsection (l), but on others, which require the employment-employer relationship, e.g. Munsif, Robinson. (Motion to dismiss, page 16, 17). And this specific subsection (l) was added in 1991, before the Step CS exam became a requirement for employment (2004-2005), and maybe this is why such type of organizations were not included and mentioned specifically in the definitions of section 2000e-2. Moreover, the discriminatory passing scores were changed in 2013, much later than 1991. However, NBME and ECFMG are companies that work with people from all over the world, use employment-related tests and exam with disparate impact. They also use passing scores (whether different or not) for different groups of people based on US/non-US features on Step 2 CS. Based on that, the Defendants not only fulfill the criteria for "employer", but also fulfill the criteria of subsection (l). This is the only law that affects companies like NBME and ECFMG "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person", which companies also test the skills of people from all over the world and use employment-based tests and passing scores.

If this law does not govern NBME/ECFMG's activity, then this would mean that if NBME/ECFMG indeed use discriminatory scores (and there is a discriminatory practice established), there will be no law to protect their clients again such prohibited activity. Unless the discrimination by an employer is prohibited, but discrimination by test-administering companies (that also issue employment certification, the ECFGM-CERTIFICATON) is not prohibited. There is no official statement by NBME/ECFMG regarding the job/exam – necessity or justification for such use of discrimination (discriminatory results).

1      Very similar in this case is Griggs v. Duke Power Co., 401 U.S. 424 (1971).

2       It is stated by ECFMG ( http://www.ecfmg.org/eras/applicants-index.html ) that
3  "ECFMG serves as the designated Dean's office for all international medical students
4  and graduates (IMGs) who use the Electronic Residency Application Service (ERAS) to
5  apply for first- and second-year (PGY-1 and PGY-2) residency positions in U.S.
6  programs of graduate medical education (GME). As your designated Dean's office,
7  ECFMG is your primary contact for assistance and information throughout the ERAS
8  application process.  In the medical field, the employment-based tests are administered
9  and scored by NBME/ECFMG, and the decision whether the candidate/applicant for
10  employment should be allowed to even apply for a resident position/employment, is
11  taken by these two organizations. (Pl.'s F. Am. Complaint, page 32, line 4-9).

12

13       **V**. **CONCLUSION:** For the foregoing reasons, Plaintiff respectfully requests that
14  the Court deny Defendants' Motion to Dismiss in its entirety, or in the alternative grant
15  leave to amend.

16       **VII**. **IN THE ALTERNATIVE, PLAINTIFF is ENTITLED TO**
17          **LEAVE TO AMEND**

18     Even if the Court grants Defendants' motion, Plaintiff is entitled to leave
19  to amend unless it is clear the problem cannot be cured by pleading additional facts
20  and to "facilitate the decision on the merits rather than on the pleadings or
21  technicalities". Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000); Dumas v. Kipp, 90
22  F.3d 386, 393 (9th Cir. 1996) (amendment should be granted unless it would be
23  "futile"); Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

24       "It then stated that"[d]ismissal of a pro se complaint for failure to state a claim is
25  proper only where it is obvious that the plaintiff cannot prevail on the facts he has
26  alleged and it would be futile to give him an opportunity to amend." Id. (citation omitted)

27     Moreover, in the event Defendants' motion is granted, permitting Plaintiffs to amend
28  their Complaint would not be futile, as Plaintiff is easily capable of amending her

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT - 22

1   Complaint to remedy any deficiencies identified by the Court. Defendants cannot
2   make a showing of futility necessary to defeat Plaintiffs' request for leave to
3   amend.
4      Plaintiff also requests that her Motion for a partial Summary Judgement be
5   adjudicated simultaneously with this Motion to dismiss, as allowed by the Rule 56 (b)
6   (regardless of other motions pending).
7
8   Date: 08/01/2016                    Respectfully submitted: Yoana A. Kipalov
9                                       (Plaintiff
10                                      Pro Per
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28