1  Yoana A. Kiprilov
   1053 E. 6th Street, Apt.26
2  Ontario, CA 91764
   7075705155
3  yoana_ayanova@yahoo.com

4            UNITED STATES DISCTRICT COURT

5        FOR THE CENTRAL DISCTRICT OF CALIFORNIA

6  Yoana A. Kiprilov,                  | Case No.: 5:16-CV-00952
                                       | Assigned to Hon. Jesus G. Bernal
7            Plaintiff,

8  vs.                                 | PLAINTIFF'S REPLY TO DEFENDANTS
                                       | OPPOSITION TO MOTION FOR A PARTIAL
9                                      | SUMMARY JUDGEMENT
   National Board of Medical Examiners, Educational
   Commission for Foreign Medical Graduates,   *Hearing date: August 22, 2016*
10                                     *Hearing time: 9:00 am*
             Defendant                 *Courtroom: 1*
11

12 **TO HONORABLE JUDGE ON THE SAID COURT:**

13

14     Here, Plaintiff files her Reply to Defendants' Opposition to her Motion for a partial

15 summary Judgement. Plaintiff respectfully disagrees with them.

16                        **INTRODUCTION:**

17  A. **Concerning facts about Step 2 CS:**

18 "*A version of the medical licensing exam many decades ago, in fact, included a*

19 "*bedside encounter" to assess clinical skills but it was dropped in the 1960s because of*

20 *questions at the time about its reliability. In 2004, an assessment of clinical skills was*

21 *added to the USMLE because pilot studies showed it was reliable.*", is announced by

22 NBME/ECFMG ( http://www.usmle.org/frequently-asked-questions/#step2cs  ).

23     In 2005, two Harvard medical students wrote a criticizing article about the Step 2

24 CS: "*All this, now combined with the stunningly inadequate feedback, confirms our prior*

   *suspicions about an entirely dubious enterprise.*"

25

26     In 2016, four Harvard medical students created a petition called "End Step 2 CS",

27 claiming that: "*To date, there is no evidence that Step 2 CS improves patient safety…*

   *NBME is feverishly publishing papers in hopes of uncovering stronger evidence to*

28 *support the existence of Step 2 CS*". The American medical students claim that Step 2

CS "lacks efficacy", is of "poor value" and is very expensive. And, *"two recent studies by the NBME found weak correlations between Step 2 CS scores and end-of-year evaluations of internal medicine interns, although clinical skills scores added no additional predictive value beyond the written USMLE exams. [3,4].*

Other research studies showed that other factors, unrelated to the tested skills affect the score ("contrast" and "sequence" effects Pl.'s Motion for a partial SJ, Exhibit "I").

NBME/ECFMG' statement on the official USMLE-website reads: *"It is possible that one or more competencies will not be measurable in a valid manner in the context of the USMLE. During implementation of changes to the USMLE, staff will identify how best to assess examinees' performance in each of the competencies using available methods... This framework identifies six competencies: medical knowledge, patient care, communication and interpersonal skills, professionalism...".*

According to the "Assessment Decision Guide" of US office of personnel management (*"We developed this guide as a resource for agencies designing assessment strategies to fill critical vacancies at all levels."*):

*"Reliability. The term reliability refers to consistency. Assessment reliability is demonstrated by the consistency of scores obtained when the same applicants are reexamined with the same or equivalent form of an assessment (e.g., a test of keyboarding skills)...The decision to hire an applicant might depend more on the reliability of the assessments than his or her actual writing skills... An assessment that fails to produce consistent scores for the same individuals examined under near-identical conditions cannot be expected to make useful predictions of other measures (e.g., job performance). Reliability is critically important because it places a limit on validity. Validity refers to the relationship between performance on an assessment and performance on the job. Validity is the most important issue to consider when deciding whether to use a particular assessment tool because an assessment that does not provide useful information about how an individual will perform on the job is of no value to the organization."*

Similarly, in another case - *Griggs v. Duke Power Co., 401 U.S. 424 (1971),* many (or majority) of the NBME/ECFMG-medical examiners and practicing physicians have never taken and will never take this exam (to protect the public). Still, they are successful, knowledgeable and competent physicians (and probably with no malpractice claims), and also medical examiners. Just because reading, practice, good teachers, and the years of experience contributed to their success. "*History is filled with examples of men and women who rendered highly effective performance without the conventional badges of accomplishment in terms of certificates, diplomas, or degrees. Diplomas and tests are useful servants, but Congress has mandated the common sense proposition that they are not to become masters of reality.*"

"*On the record before us, neither the high school completion requirement nor the general intelligence test is shown to bear a demonstrable relationship to successful performance of the jobs for which it was used. Both were adopted, as the Court of Appeals noted, without meaningful study of their relationship to job performance ability. Rather, a vice-president of the Company testified, the requirements were instituted on the Company's judgment that they generally would improve the overall quality of the workforce. ...The promotion record of present employees who would not be able to meet the new criteria thus suggests the possibility that the requirements may not be needed even for the limited purpose of preserving the avowed policy of advancement within the Company. In the context of this case, it is unnecessary to reach the question whether testing requirements that take into account capability for the next succeeding position or related future promotion might be utilized upon a showing that such long-range requirements fulfill a genuine business need. In the present case, the Company has made no such showing.*"

CS-exam Committee members (MDs) have different ratings on a website, given by their real patients (from 1/5 to 5/5 stars). One patient noted that the physician (NBME-committee member) spent more time talking about his personal success rather than in asking questions about the patient's health issue.

The Defendants cited an article by Mr. W. Levinson to show evidence that Communication and interpersonal skills of doctors lead to more leads to better… outcomes…fewer malpractice lawsuits. The same author also found "No-claims primary primary care physicians spent longer in routine visits than claims primary care physicians (mean, 18.3 vs 15.0 minutes)". The Step 2 CS-exam allows only 15 minutes. And, "*the study did not find communication behaviors to distinguish between claims vs no-claims surgeons.*", meaning that the same behaviour has different effect in different specialties. For example, later the same author found that "*Surgeons' tone of voice in routine visits is associated with malpractice claims history.*" Regarding other specialties: a pathologist looking into the specimen (piece of tissue), should be able to give the right diagnosis based on his medical skills and knowledge, rather than on the communication with patient (since the specimen has been sent to him and is very likely that he has not seen or talked to the patient at all). Or, a surgeon during a surgery, when the patient is unconscious and the outcome of the surgery depends on the surgeon's medical knowledge and skills. Or, a neonatologist (his patients are newborn babies), pediatrician (a communication with children is not tested by the exam).

Mr. Levinson also noted "*These skills…can be effectively taught at all levels of medical education and to practicing physicians.*", which also raises the question whether they should be evaluated after the training (residency) in s specific medical filed (primary care, surgery, pediatrics) is completed, i.e. during the last year of residency and before the resident receives his license to practice without supervision. Currently, the exam is administered before the residency (which is a training process-under supervision), it can have very detrimental effect on the graduates' career at this early level of education, and much less impact on the physician's career if administered after the residency is completed.

Finally, it is concerning that the last change in the minimum passing score of the Step 2 CS-exam, in 2013, affected the passing rate of US and non-US-graduates differently (resulted in a decrease with 3% and 18%, respectively). In fact, this goal was

announced before the implementation of the changes and the results, implying that it was meant to be this way. Changes in the passing score of the other two exams- Step 1 and Step 2 CK (used together with 2 CS-exam for certification and employment decisions) do not give such difference. Couple of years ago, there was a statement by a graduate who also created and posted a petition on the website of the Whitehouse, regarding a discrimination of Step 2 CS (American v. Foreign medical graduates). The petition did not get enough signatures, and was removed from the website. The current petition of the American graduates however, has been signed by more than 16,000 people. Plaintiff, as a non-US graduate, has not signed it.

We can put aside the fact that US and non-US graduates pay different prices for the exam ($1,275 and $1,535 respectively). These are just the facts and opinions of other people, not Plaintiff's personal opinion or articles.

### B. **Plaintiff's concerns:**

However, based on this information about reliability problem (since her two opposite results within a four month period are consistent with a reliability problem), subjectivity, other factors affecting the scores, and the difference in the passing rates, Plaintiff is concerned about the detrimental effect that this particular exam has on her career, and that it will not give any new information about her skills on each of the component/subcomponent (since the skills of the "examinees are tested on three separate subcomponents").

Plaintiff's medical knowledge and skills have been tested by Step 1 and Step 2 CK. Plaintiff has passed CIS-section as part of another exam - Step 2 CK, in a single administration (with other parts), administered by NBME/ECFMG. It is unclear why CIS is tested again in Step 2 CS.

Plaintiff has passed the same section in Step 2 CS, not in a single administration (with ICE and SEP components/subcomponents).

Plaintiff is concerned about the price of the exam and that the reliability will be an issue here again, since she was tested by different people on CIS part of Step 2 CS,

and they gave her totally different (opposite) ratings.  Plaintiff has never received an answer about what she specifically did wrong on each component/subcomponent/part of Step 2 CS-exam and what she has to show and study.  NBME/ECFMG do not reveal specifically what characteristics the actors (Standardized patients) evaluate, i.e. the general checklist (even an empty one), so that people will know exactly the skills that have to be demonstrated.  It is will be interesting to see how "support emotions, foster a relationship" skills is rated and tested. She also requested more information about the passing score (in terms of "X's") and she never received it. It is also unclear how a future pass results on each component will differ from the ones already achieved.

Since a "pass result" on an exam/part show that the examinee has the necessary skills. A "single administration" on an exam does not give information specifically about the knowledge and skills of the examinee. Especially when the parts, as NBME/ECFMG claim are "separate" and "different".

## II.    STATEMENT OF FACTS:

Regarding this doomed case- Plaintiff filed a lawsuit due to Defendants' misrepresentation of crucial fact of the exam in the context of the 2 CS-exam (component/subcomponent), which affects differently the final scores of the exam due the policy rules, which Plaintiff here calls "Retakes" and "time-limit" (for the purpose of the dispute). Even though using both words simultaneously at the same time (2009-2015) and on the same (website), Defendants have never announced officially whether there is a difference (if any) between the above mentioned two descriptive words in the context of Step 2 CS. This shows that Defendants did not intent to make a difference between the two words and did not intent to make it clear that the parts of 2 CS are "components" and not "subcomponents" (or "subcomponents" and not "components', whatever they contend the case is).

Defendants moved to dismiss the case based on Rules 12 (6) (b), Rule 8(a) and Rule 9 (b). Plaintiff filed a Motion for summary judgement to save judicial and litigants'

resources, and because the dispute is stemming from a public statements and documents provided by the Defendants themselves, and which documents are readily available and provided to the Court.

"Federal courts have held that Fed. R. Civ. P. 56 "does not require trial courts to allow parties to conduct discovery before entering summary judgment." Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993). 'This matter is a straight forward coverage dispute rooted in the language of the policy agreement, and for the reasons which will be elaborated below, the Court will GRANT… Motion for Summary Judgment . . . ." *First United Mortg. Co., Inc. v. Chaucer Holdings PLC,* Civil No. 2:08-2754, 2010 WL 3283525, *1 (D.N.J. Aug. 17, 2010).

### III.   **DEFENDANTS' POSITION**:

**A.** Defendant try to prevent the Court from interfering by pointing out that **"courts are reluctant to substitute [their] judgement for that of a professional licensing board as to grades,…and the results cannot be usually be attacked <u>unless</u>…".** (*Baji v. Northeast Regional Bd of Dental Examieners 3 Fed. Appx. 352, 358 (6 th Cir.2001).*

However, in our case, after the "unless" there are a lot of reasons and arguments (as discussed in the Introduction) that can be put and deserve a serious consideration. For example, the Plaintiff totally opposite results that are consistent with a reliability problem, which the CS- exam had before (as officially announced by the Defendants usmle-website, 2 CS-exam section.).

Moreover, the case cited is interesting in that, the situation could be reviewed as precedent, although not completely identical to our case. Dr. Baji, the Plaintiff, actually failed two of the four parts of the Dental licensing exam. The Board allowed him to take only the parts he failed, and after he failed the same parts for a second time, then he had to retake the whole exam again. And as we know, dental procedures are invasive and risky. We can see how The Board intelligently tests knowledge and skills, protects the public and is also fair to the examinee (not draining his money).

Regarding the "protect the public" defense, it is addressed at the very beginning, that the majority of NBME/ECFMG have not taken and passed this exam and will not take and passed, as well other arguments (used in the Introduction), and pass results in every exam/part means the public is protected, because the person has the knowledge and skills.

The other five cases cited (Chaney, Tinner, Vargas, Barbosa and Durrani) in fact concern the so called "licensure by endorsement", when a licensed physician moves from a state where the exam is allowed to be taken in parts, to another state where the licensing exam has to be taken in a single administration. California is a state where the exam is allowed to be taken in parts (Pl.'s Am. Complaint at 13, BPC Section 2177).

The California licensing exam is also in writing, as Dr. Cassimatis (an ECFMG - representative and one of the CS-exam executive Committee members), in his 2004 report, stated that "*Concerns have also been raised regarding the scoring of the examination… such as the USMLE Step 2 CS… evaluators may harbor prejudices or stereotypes that can adversely impact the scores. Similar concerns have led states such as California to ban the use of oral examinations for licensure.*"

Actually, the CPA-exam (Barbosa-case), is currently allowed to be taken in parts within an 18-month period. It seems the rule about the "single administration" has been changed.

**B**. The other position that U.S.C. 42 2000e-2 (l) is not applicable in this case is also concerning. This section protects against large companies, called "respondent" (including employment agencies, which are not direct employer), which use discriminatory cut off levels or adjust the test scores (in a discriminatory way) of tests used for employment decisions. And step 2 CS exam is used solely for employment decisions. This amendment was made in 1991, before the administration of Step 2 CS exam which started in 2005. But the same subsection (l) does not require a direct employer – employment relationship. It refers to applicants and candidates for employment in general (it does not specify whether with same employer or not). If this

subsection is not applicable, this means that if organizations like the Defendants (testing the skills of people from the all over the world) discriminate and use different cut off levels, then there is not law that catches up with them. There can be no justice regarding the issue. This means that only employer is not allowed to discriminate, but other organizations can discriminate.

**C.** NBME/ECFMG with the "Retakes"-rule, which is also inappropriately cited by the Defendants says "If you pass a Step or Step Component" you are not allowed to retake it, except…" (Defendant's Opposition to Motion for a partial SJ, page 11, line 9-10). On the website, FAQ (frequently asked question), Retakes, the very sentence is the one above, not the one stated by the Defendant "if you pass an examination…. you are not permitted to retake a Step or Step Component, except to …".  The policy does not allow an examinee who has passed (for example Step 1) to retake it in order to achieve a higher score, since if the examinee fails the second time, it will be a total chaos regarding his real exam result. But this is the situation that Plaintiff was put in by NBME/ECFMG and by not applying the rule. Thus, the Retakes rule prevents situations like this one here (that gives rise to our dispute). Since the Retakes is obviously a useful tool regarding the evaluation and in preventing confusing situations with different exam results, it somehow has not been used in the Plaintiff's case, despite the NBME/ECFMG's statements that the three parts CIE, ICE and SEP are "components". Of course, NBME/ECFGM insist to be paid again $1,535 and administer the exam again without a clear explanation of what additional knowledge and skills Plaintiff has to show in these "separate" and "different" parts, that she has not shown in her previous attempts. People are always allowed to freely give away money.   It appears that there is a deviation from the main purpose of the exam, from a skill-testing strategy to a money-making strategy, that financially ($millions) benefits only NBME/ECFMG, but is detrimental to their client's career.

More confusion here is added by the Plaintiff's exam results reports, which do not have the "single administration" words, since they were prepared by NBME/ECFMG and

had information about the Plaintiff's performance (specifically). After she took the exam for a first time, she received a report with her name and her performance profile stating that she has to pass all three subcomponents in order to achieve an overall passing outcome. Since <u>it addresses specifically the examinee's performance, it should be taken as a reliable source of scoring information provided by the NBME/ECFMG themselves, even if it contradicts the other information.</u>

**It is should not be Plaintiff's fault and problem if NBME/ECFMG provide contradicting information regarding the description and the scoring of the exam. Now, Defendants blame the Plaintiff, that she believed the information provided by them, because even though they wrote A and B, Plaintiff should have considered only B.**

Nobody argues that it is NBME/ECFMG's right to require that if an examinee wants to receive a pass result on the first attempt, he has to pass all the three parts (single administration). This gives him an advantage when applying for a residency position, compared who a person who passed on the second/third attempt. It also ensures that the examinee has demonstrated knowledge and skill on all three components of Step 2 CS. Other than that, it is unclear what additional information will the "single administration" give with a "second/third pass results on each component/subcomponent. Whether in a single administration or not, the "pass" results show knowledge and skills in parts tested, especially if they are so "separate" and "different".

Plaintiff has already shown that she has knowledge and skills on each component/subcomponent and her results also show how different people can give different ratings. NBME/ECFMG do not have guidelines about what should be done in a situation like this one (when all parts are passed), and the Plaintiff is treated is a person who has never studied, taken and passed these parts and the exam as whole, or a

person who has failed the same parts twice. But such conclusions do not correspond with the facts.

   **D**. Defendants refer to their own publications and statements as "statements made in irrelevant contexts and irrelevant publications", which discredit NBME/ECFMG's own expertise. These publications contain a very detailed information about the Step 2 CS-exam. For example: "Swygert KA, Balog KP, Jobe A. The impact of repeat information on examinee performance for a large-scale standardized-patient examination. Academic Medicine, 2010;85(9):1506-10., which discusses the performance of a second time test-takers like the Plaintiff, and states that for example sometimes "overconfidence" may lead to a lower score on the second attempt especially for Foreign Medical Graduates. Defendants also claim that these publications were not addressed specifically to the Plaintiff. They are in fact addressed specifically to people who take the exam (medical graduates like the Plaintiff), not pilots, engineers or other people.

   The truth is that, NBME/ECFMG did use substantially different "descriptive words" to describe the same parts of the STEP 2 CS, which in the context of the exam and the exam policy have a different impact on the overall exam results, and are misleading.

   As seen in EXHIBIT T3 (Pl.'s F. Am. Complaint) all of the authors are NBME-staff members. In EXHIBIT T4 (Id)., only one of the six authors is not a NBME-staff member. EXHIBIT T5- only of the four members is not a NBME- staff member. EXHIBIT T6- four authors are NBME-staff members.

   Defendant position that the statements are also irrelevant or hearsay contradicts Rule 401 (F.R.E.), since this evidence can "make a fact more or less probable than it would be without the evidence; and fact is of consequence in determining the action. Here, it is the Plaintiff's claim that the parts are described and considered as "components", and the statements are the necessary evidence that prove her claims. According to the F.R.E. 801 (d) (2), and California Evid. Code Sections 622 and 623

PLAINTIFF'S REPLY TO DEFENDANTS OPPOSITION TO MOTION FOR A PARTIAL SUMMARY JUDGEMENT - 11

1  ("The written paper or instrument need not represent an agreement" See Generes v.

2  Justice Court (1980) 106 Cal. App. 3d 678, 684 [165 Cal. Rptr. 222].)

3  Defendants should not be allowed to contradict their statements. The doctrine of judicial

4  estoppel also prevents such shifts in the statements, and do not consider factual

5  statements before another Court as a hearsay or irrelevant.

6      **E.** The Pl.'s Am. Complaint does state plausible claims form a legal standpoint, since

7  the questions "who, when, how and where" are very specifically answered and in a

8  direct way.

9      **F.** The economic loss rule was initially used in the context of a commercial

10  construction projects and its definition includes "property damage" and "personal injury".

11      Back in 1965, Hon.Justice Roger J. Traynor wrote the foundation for the Economic

12  Loss Rule in Seely v. White Motor Co., (1965) 63 Cal. 2d 9. The rationale behind the

13  case held the law of contracts or warranty should cover economic losses for contractual

14  parties.  Courts have held that a consumer should not have to face alone the risk of

15  personal injury or damage to property when he purchases a product. East River

16  S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986). Therefore, a

17  manufacturer has a duty to manufacture a product which will not cause injury to persons

18  or property.

19      Usually the court first determines what the product at issue is; only then does the

20  court find out whether the injury is to the product itself, for which recovery is barred by

21  the ELD, or to property other than the defective product, for which plaintiffs may recover

22  in tort. *KB Home v. Superior Court*, 112 Cal.App.4th 1076 (Cal. App. 2003).

23  Nevertheless, in construction defect cases where property damage is alleged - e.g., a

24  defect that causes harm to other portions of the property, as a result of a contractor's

25  negligence - the plaintiff has alleged a duty independent of any contract.

26  *Robinson Helicopter,* 102 P.3d 268 (Cal. 2004) (citing Jimenez v. Superior Court, 58

27  P.3d 450 (Cal. 2002)). Thus, to the extent that plaintiffs are asserting property damage

28  resulting from the negligence of the defendant, they can state a claim for negligence.

"The term 'economic loss' refers to damages that are solely monetary, as opposed to damages involving physical harm to person or property. The economic loss doctrine provides that certain economic losses are properly remediable only in contract." Giles v. General Motors Acceptance Corp., 494 F.3d 865, 873 (9th Cir.2007).

In the context of this case, the equivalent relationship (portions-property) would be exam-career damage (as an equivalent of property), and career damage which is much more than just plain monetary loss.

## IV.   NBME's OBJECTIONS:

Fact 1 and 2: F.R.E. 401; F.R.E. 801 (d) (2) (exceptions to hearsay) - An Opposing Party's Statement; Rule 803 (17).

Defendants argue that their own statements are irrelevant as an evidence. The But since this evidence provides detailed information about that specific (Step 2 CS) and some of it also is posted in the section "Frequently Asked questions"- [about] Step 2 CS, it is provided to the people purchasing Step 2 CS, and is supposed to answer their questions. This it makes the claims more believable (than without the statements) and it concerns an argument that is "the core of the claims" and the dispute. The evidence is not irrelevant. It is NBME's own statement/evidence which makes the evidence itself even more believable and relevant.

Defendant's NBME own testimony before another court, not a hearsay as per F.R.E. 801 (d) (2) as to Hartman v NBME.

Fact 3,4: Exhibit T3 (PL.F. Am. Complaint) -all authors are NBME-MEMBERS. Documents published on the official USMLE-website containing detailed information about the exam (product) in question that the Defendants sell for $1535, including information about the disputed characteristics. Plaintiff is a buyer of the product. Plaintiff has personally seen and read the NBME-publications and described the content in her pleadings (Rule 1002 and Rule 1002).

As a person accustomed to reading and obtaining information from research articles, and participated in writing a paper herself, Plaintiff has the personal knowledge and perception by reading the article (with authors' emails for contact- author's name@nbme.org) similarly to:

"a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." LifeWise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004).

Strong v. Valdez Fine Foods (9th Cir. July 18, 2013) (No. 11–55265) (citing Leadbetter v. Glaisyer, 44 F.2d 350 (9th Cir. 1930)  (citing Leadbetter v. Glaisyer, 44 F.2d 350 (9th Cir. 1930) ("Any person of average intelligence, accustomed to observing moving objects, is able to express an opinion of some value as to the rate of speed of an automobile or other moving vehicle.... The opinion might not be so accurate and reliable as that of one who had been accustomed to observe, with time piece in hand, the motion of an object of such size and momentum; but this would only go to the weight of the testimony, and not to its admissibility." (internal quotation marks omitted)); Nelson v. City of Davis, 685 F.3d 867, 874, 881, 882 (9th Cir. 2012) (estimating distance) "

"Fed.R.Evid. Rule 701 states that a witness not testifying as an expert may offer opinion testimony so long as the testimony is "rationally based on the perception of the witness." Fed.R.Evid. 701(a). 'Personal knowledge or perceptions based on experience' is sufficient foundation for lay opinion testimony." (United States v. Faulkner (8th Cir. Feb. 25, 2011) (No. 10-1271).

No lack of foundation as per Rule 901 (b) (4), distinctive characteristics of the publication and the authors emails, Rule 902 (6) medical journals (9) (11) NBME's own annual reports, research, publications (records are kept in the normal course of business, online);

EXHIBIT T6 (Pl.'s F. AM. Complaint) the authors presented themselves as people with "are NBME employees...we bring considerable knowledge and experience to tasks of review" and left their emails for contact (...@nbme.org). (Rule 1001 and 1002)

Fact 5: As a person accustomed to reading and obtaining information from research articles, and participated in writing a paper herself, Plaintiff has the personal knowledge and perception by reading the article similarly to:

As person accustomed to research articles and participated in writing a paper herself, Plaintiff has the personal knowledge and perception, similarly to:

"a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." LifeWise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004).

Fed.R.Evid. 701(a). 'Personal knowledge or perceptions based on experience' is sufficient foundation for lay opinion testimony." (United States v. Faulkner (8th Cir. Feb. 25, 2011) (No. 10-1271).

Strong v. Valdez Fine Foods (9th Cir. July 18, 2013) (No. 11–55265) (citing Leadbetter v. Glaisyer, 44 F.2d 350 (9th Cir. 1930) ("Any person of average intelligence, accustomed to observing moving objects, is able to express an opinion of some value as to the rate of speed of an automobile or other moving vehicle.... The opinion might not be so accurate and reliable as that of one who had been accustomed to observe, with time piece in hand, the motion of an object of such size and momentum; but this would only go to the weight of the testimony, and not to its admissibility." (internal quotation marks omitted)); Nelson v. City of Davis, 685 F.3d 867, 874, 881, 882 (9th Cir. 2012) (estimating distance) "

Lay witness opinion is admissible so long as it would be helpful to the factfinder and is rationally based on personal perception. This rule recognizes that a lay witness' opinion can be more helpful at times than the raw data on which the opinion is based.

Rule 902 (6) medical journals annual report (9) available for purchase (11) (records are kept in the normal course of business, online).


Fact 6:  It is not a hearsay under Rule 807 (a) (b), 701, 803 (1) (2) (3) most of the People (graduates) are still under the

emotion of passing or failing the exam (Rule 1001-1002), seeking for a support or advice.

Not irrelevant as per Rule 410, since it supports the Plaintiff's claim about components of Step 2CS, thus making it more probable that the parts are considered as components, than it would be without this evidence, and the fact is of consequence in determining the action.


Fact 7: Not irrelevant, since it does show that the Defendants' did not intent to distinguish between the two descriptive words and make it clear that each part of STEP 2 CS is a "component" only (and not a "subcomponent") or vice versa.

The evidence will support the Plaintiff's position that there should be no difference between the characteristics of the parts, when described with the two words  (used interchangeably by NBME/ECFMG) and without a clearly stated difference.


Fact 8: "**Rule 403 is inapplicable to bench trials**." United States v. Preston, 706 F.3d 1106 (9th Cir. Feb. 5, 2013) (No. 11-10511).  Also,

*EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 898 (9th Cir. 1994) ("in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial")

*Schultz v. Butcher, 24 F.3d 626, 632* (4th Cir. 1994) ("Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences.").


PLAINTIFF'S REPLY TO DEFENDANTS OPPOSITION TO MOTION FOR A PARTIAL SUMMARY JUDGEMENT - 16

As per Rule1001-1002, the content is accurate as provided by the EXHIBITS, and 901 (b) (4) there no lack of foundation, due its distinctive characteristics and content, concerning the claims and the causes of action of the case. The documents (copies of the website with the rules "EXHIBIT D and E") are called this way (Retakes and time-limit), in this lawsuit, only for simplicity and convenience. **Defendants in their Opposition to the Motion for a partial SJ, have misstated the rule by adding as a first sentence "If you have passed an examination." (Def.'s Opposition to the Motion for a partial SJ, page 11, lines 8-10). That is why, Plaintiff contends that the evidence should be admitted because of the Defendants' unlawful attempt for misleading and providing wrong information to the Court. Without this evidence the Court would be misled.**

The evidence should not be excluded since:

1)  it relates to a piece of admissible substantive proof and is part of it;

(2) fairly and accurately reflects that substantive proof; and (3) is it sufficiently explanatory or illustrative to assist the jury- it sufficiently describes the rules for retakes. **This evidence is also part of the contract and has been part of the terms of the contract (since the time the Plaintiff started taking exams with NBME/ECFMG in 2012) governing the parties' conduct during their activity.**

Fact 9: Fed.R.Evid. 701(a). 'Personal knowledge or perceptions based on experience' is sufficient foundation for lay opinion testimony." (United States v. Faulkner (8th Cir. Feb. 25, 2011) (No. 10-1271).

"a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004).

Strong v. Valdez Fine Foods (9th Cir. July 18, 2013) (No. 11–55265) (citing Leadbetter v. Glaisyer, 44 F.2d 350 (9th Cir. 1930) ("Any person of average intelligence…) see above (fact 3,4).

No lack of foundation as per 901 (b) (4) - Plaintiffs' exam result report ( and Rule 1001 and 1002).

Fact 10: Rule 1001-1002 Plaintiff has provided the documents.

Fed.R.Evid. 701(a). 'Personal knowledge or perceptions based on experience' is sufficient foundation for lay opinion testimony." (United States v. Faulkner (8th Cir. Feb. 25, 2011) (No. 10-1271).

AND, "a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004), based on the fact that **every publication cites other (previous) publications** (as References). For example: EXHIBIT T5 (Pl. F. AM. Complaint):

"The Relationship Between USMLE Step 2 CS Communication and Interpersonal Skills (CIS) Ratings and the Time Spent by Examinees Interacting With Standardized Patients"

Authors: Kimberly Swygert, Eric S. Muller, David B. Swanson, and Colette L. Scott

REFERENCE 6 READS:  Step 2 Clinical Skills Content Description and General Information. Available at: (http://download.usmle.org/2009/2009 CSinformationmanual.pdf). Accessed January 27, 2009.

The Authors and used the USMLE STEP 2 CONTENT and description to publish that :

"Two components that SPs rate for each encounter are Spoken English Proficiency (SEP), … and Communication and Interpersonal Skills (CIS)"; i.e. These parts are "components".

Another example is:  EXHIBIT T2 (Id): " Longitudinal Effects of Medical Students' Communication Skills on Future Performance" has reference 12- USMLE step 2 CS WEBSITE.

"Fed.R.Evid. 701(a). 'Personal knowledge or perceptions based on experience' is sufficient foundation for lay opinion testimony." United States v. Faulkner (8th Cir. Feb. 25, 2011) (No. 10-1271).

 NO lack of foundation as per Rule 901 (b) (4)- has the References.

 Relevant since it shows that NBME/ECMFG have the knowledge of the problem (MISREPRESENTATION), as the Plaintiff claims. This evidence will make Plaintiff's claims more probable, than they would be without it.

Fact 12:

**"Rule 403 is inapplicable to bench trials.**" United States v. Preston, 706 F.3d 1106 (9th Cir. Feb. 5, 2013) (No. 11-10511).

EEOC v. Farmer Bros. Co., 31 F.3d 891, 898 (9th Cir. 1994) ("in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial")

Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir. 1994) ("Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences.");

Fed.R.Evid. 701(a). 'Personal knowledge or perceptions based on experience' is sufficient foundation for lay opinion testimony." (United States v. Faulkner (8th Cir. Feb. 25, 2011) (No. 10-1271). And,

"a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." LifeWise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004),

"Any person of average intelligence…" Strong v. Valdez Fine Foods, (9th Cir. July 18, 2013) (No. 11–55265

Fact:14: Fed.R.Evid. 701(a). 'Personal knowledge or perceptions based on experience' is sufficient foundation for lay opinion testimony." (United States v. Faulkner (8th Cir. Feb. 25, 2011) (No. 10-1271). And,

"a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." LifeWise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004),

"Any person of average intelligence…accustomed to observing moving objects, is able to express an opinion of some value as to the rate of speed of an automobile or other moving vehicle.... The opinion might not be so accurate and reliable as that of one who had been accustomed to observe, with time piece in hand, the motion of an object of such size and momentum; but this would only go to the weight of the testimony, and not to its admissibility."" Strong v. Valdez Fine Foods, (9th Cir. July 18, 2013) (No. 11–55265).


Fact 15: "*Rule 403 is inapplicable to bench trials*." United States v. Preston, 706 F.3d 1106 (9th Cir. Feb. 5, 2013) (No. 11-10511).

EEOC v. Farmer Bros. Co., 31 F.3d 891, 898 (9th Cir. 1994) ("in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial")

Schultz v. Butcher, 24 F.3d 626, 632 (4th Cir. 1994) ("Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences.")

Relevant to show inconsistency with statements, as well as the main purpose of the exam- test knowledge and skills on the three subcomponents.


Fact 16:

No lack of foundation as per Rule 901 (b) (4), not a hearsay as per 801 (d) (2), 803 (6) and (17), and rule 1001-1002.

Plaintiff has read and presented the evidence to the Court, and Regarding Lack of personal knowledge, improper opinion:

Fed.R.Evid. 701(a). 'Personal knowledge or perceptions based on experience' is sufficient foundation for lay opinion testimony." (United States v. Faulkner (8th Cir. Feb. 25, 2011) (No. 10-1271). And,

"a person may testify as a lay witness only if his opinions or inferences do not require any specialized knowledge and could be reached by any ordinary person." LifeWise Master Funding v. Telebank, 374 F.3d 917, 929 (10th Cir. 2004),

"Any person of average intelligence…accustomed to observing moving objects, is able to express an opinion of some value as to the rate of speed of an automobile or other moving vehicle…. The opinion might not be so accurate and reliable as that of one who had been accustomed to observe, with time piece in hand, the motion of an object of such size and momentum; but this would only go to the weight of the testimony, and not to its admissibility."" Strong v. Valdez Fine Foods, (9th Cir. July 18, 2013) (No. 11–55265).

Relevant as to show problems with the exam (product) itself.


**Regarding the Disputed facts**:

 Plaintiff would like to point out that Defendant NBME disputed fact 3 and 4, but in **Exhibit T3 (PL.F. Am. Complaint) -all authors are NBME-MEMBERS**.

Fact 7 – no evidence available to show a statement describing the difference between the component-subcomponent. (No such statement in the official Announcements) See Announcement Exhibit 1). Fact 16- Pl. Motion for a partial SJ Declaration and EXHIBIT I), statement made by NBME on their website, FAQ, "If assessment of clinical skills is so important, why was it absent from the USMLE until 2004?"

NBME/ECFMG STATEMENT: "A version of the medical licensing exam many decades ago, in fact, included a "bedside encounter" to assess clinical skills but it was dropped in the 1960s because of questions at the time about its reliability. In 2004, an assessment of clinical skills was added to the USMLE because pilot studies showed it was reliable. Advances in testing science and in computerization made this possible." ( http://www.usmle.org/frequently-asked-questions/#step2cs )

ECFMG-Defendant:" *ECFMG partners with the National Board of Medical Examiners (NBME) in administering the Step 2 Clinical Skills (CS) component of USMLE, a requirement for IMGs and for graduates of U.S. and Canadian medical schools who wish to be licensed in the United States or Canada. Through this collaboration, ECFMG uses its experience in assessment to ensure that all physicians entering U.S. GME can demonstrate the fundamental clinical skills essential to providing safe and effective patient care under supervision.*" ( See http://www.ecfmg.org/about/index.html ). "*ECFMG has served as the designated Dean's office for students and graduates of international medical schools, including Fifth Pathway participants, assisting these individuals with the ERAS application process for first- and second-year (PGY-1 and PGY-2) residency positions.*" (http://www.ecfmg.org/eras/ )

Defendant ECFMG was served electronically (at info@ecfmg.org) on July 25, 2016, with all documents regarding the Motion for a partial Summary Judgement, since at that time there was no information about the attorney of record for ECFMG- Defendant on pacer.com.

Based on the all the facts and arguments discussed above and, Plaintiff respectfully requests that the Motion for a partial Summary Judgement be granted.

Date: 0 8 /0 5 /20 / 6          Respectfully submitted: _____ Noella   Plaintiff
                                                    Yvonne A. Kiprilov
                                                       in Pro per

PLAINTIFF'S REPLY TO DEFENDANTS OPPOSITION TO MOTION FOR A PARTIAL SUMMARY JUDGEMENT - 22

Home    Bulletin    FAQs    Applications & Fees    Security    Step Examinations    Practice Materials    Test Accommodations    Scores & Transcripts    Data & Research

# Announcements

« Previous 9

Page: 6 of
Next »

## Announcements 🔊

### Step 3 – Change in number of items and score delay
**Posted: November 18, 2015**

Beginning the week of **January 18, 2016**, the number of items on the Step 3 examination will decrease. There will be a delay in reporting scores for exams administered between January 18 and April 30, 2016. The target date for reporting Step 3 scores for most examinees testing during this time period is **May 25, 2016.**

Although this change will occur quickly at many test centers, there may be some locations where the transition takes longer to complete. The overall transition period should last approximately six weeks. Please note that:

- The length of the testing days will not change.
- Day 1 (Foundations of Independent Practice [FIP]) will continue to be an approximately 7-hour testing session, including time for breaks and tutorials.
- Day 2 (Advanced Clinical Medicine [ACM]) will continue to be a 9-hour testing session, including time for breaks and tutorials.
- **Day 1 (FIP)** will continue to be divided into six 60-minute blocks.
- Each FIP block will have 38 to 40 multiple-choice questions (MCQs).
- The total number of MCQs on the FIP portion of the examination will be 233.
- **Day 2 (ACM)** will continue to be divided into six 45-minute blocks of MCQs, and 13 computer-based case simulations (CCS).
- Each ACM MCQ block will have 30 items.
- The total number of MCQ items on the ACM portion of the examination will be 180.
- Scores on examination forms taken before and after the change – as well as scores on forms with different numbers of items – will be comparable; the possible variation in the number of items per form will be accounted for in scoring the examination.

Score reports for Step 3 are usually available within four weeks of testing. However, because of the change described above, as well as routine modifications to the test item pool, score reporting for most Step 3 examinations administered from January 18, 2016 through April 30, 2016 will take longer. As noted above, the target date for reporting Step 3 scores for most examinees testing during this time period is **May 25, 2016.**

---

### Review of USMLE Step 3 minimum passing performance
**Posted: September 09, 2015**

The USMLE program recommends a minimum passing level for each Step examination. The USMLE Management Committee is responsible for establishing and monitoring these standards, and is asked to complete an in-depth review of standards for each examination every three to four years.

For the 2015 Step 3 review, information from multiple sources will be considered, including:

- Results of content-based standard setting exercises conducted with three independent groups of physicians in 2015;
- Results of surveys of various groups (e.g., state licensing representatives, medical school faculty, samples of examinees) concerning the appropriateness of current pass/fail standards for Step examinations;
- Trends in examinee performance;
- Score precision and its effect on the pass/fail outcome.

The USMLE Management Committee is scheduled to review the minimum passing score for the USMLE Step 3 examination at its meeting on December 9-10, 2015.

If the Committee determines that a change to the minimum passing score is appropriate, the new recommended minimum passing score will become effective for all examinees who take a Step 3 examination on or after **January 1, 2016**. The decision of the Committee will be posted at the USMLE website.

USMLE Score Interpretation Guidelines
**Posted: October 30, 2014**

<u>USMLE Score Interpretation Guidelines</u> (SIG) have been posted to the USMLE website. Topics include:

- Description of Examinations
- Understanding Your Score
- Recent Means and Standard Deviations (SDs)
  - Norm Table
  - Passing Scores
- Precision of Scores
- Guidelines for Use of USMLE Step Scores for Selection Decisions

The means and SDs and the norm table will be updated annually. Because percentile ranks depend on the cohort of examinees, you should always use the most recent norm table available on the USMLE website to obtain percentile ranks.

« Previous
9

Page: 6 of
Next »

24

Home   Bulletin   FAQs   Applications & Fees   Security   Step Examinations   Practice Materials   Test Accommodations   Scores & Transcripts   Data & Research

# Announcements

« Previous 9

Page: 7 of Next »

## Announcements 🔊

**USMLE Physician Tasks/Competencies**
**Posted: July 10, 2014**

*USMLE Physician Tasks/Competencies*, a publication that provides a common organization of competencies and tasks assessed in USMLE examinations, is now available.

The outline comprises seven major sections:

- Medical Knowledge/Scientific Concepts
- Patient Care: Diagnosis
- Patient Care: Management
- Communication and Interpersonal Skills
- Professionalism, including Legal and Ethical Issues
- Systems-based Practice, including Patient Safety
- Practice-based Learning

While this outline is common to all USMLE examinations, each Step will continue to have test specifications specific to that Step and will emphasize certain parts of the outline.

*USMLE Physician Tasks/Competencies* is useful for understanding competencies assessed by multiple-choice question (MCQ) formats such as Step 1, Step 2 Clinical Knowledge, and the MCQ portion of Step 3. The outline will be updated as work to identify competencies covered by non-MCQ exam formats progresses.

**Use caution in selecting review courses**
**Posted: June 29, 2011**
**Updated: April 04, 2014**

**Orientation, Practice, and Self-Assessment Materials Available through USMLE, NBME, and Third Parties**

The United States Medical Licensing Examination® (USMLE®) program recognizes the importance of providing all examinees the opportunity to learn about the design and content of its examinations and to have some exposure, before examination day, to samples of testing formats and materials. USMLE provides orientation and practice materials for all USMLE Steps and Step Components. These materials, which are available at no cost on the USMLE website, include:

• Informational materials on the overall USMLE program and content descriptions for each of the USMLE examinations,
• Tutorials that illustrate the USMLE Step 1, Step 2 Clinical Knowledge (CK), Step 3 multiple-choice question software and the Step 3 computer-based case simulation (CCS) Primum® software,
• Sample multiple-choice test questions with answer keys for each Step,
• Sample Step 3 CCS cases with feedback, and
• Orientation materials for Step 2 Clinical Skills (CS).

In addition, the National Board of Medical Examiners® (NBME®) provides, for a fee, self-assessment services to help the examinee evaluate his or her readiness to take USMLE. These services help individuals become familiar with questions like those that have appeared on USMLE and provide performance feedback on the individual's areas of relative strength and weakness. See www.nbme.org to obtain additional information and to purchase self-assessment services.

Beyond these USMLE and NBME services, there are a variety of commercial test preparation materials and courses that claim to prepare examinees for USMLE examinations. Examinees who are considering using such services should fully understand the nature of these services, the sources of any content being used, and the basis for any claims being made. None of these third-party materials or courses are affiliated with or sanctioned by the USMLE program and information on such materials and courses is not available from the Educational Commission for Foreign Medical Graduates (ECFMG), the Federation of State Medical Boards (FSMB), NBME, USMLE Secretariat, or medical licensing authorities.

Please note that it is unlawful for any test preparation program or any individual to use, disclose, distribute, or provide access to questions or answers from actual USMLE exams. An examinee who is involved with any enterprise that disseminates USMLE content should be aware of the consequences, which include the possible cancellation of USMLE registration and/or testing, the withholding or cancellation of scores, and the imposition of additional sanctions.

---

USMLE takes action against individuals found to have engaged in irregular behavior
**Posted: February 27, 2014**

The USMLE Committee for Individualized Review (CIR) meets periodically throughout each year to review cases involving allegations of irregular behavior by applicants and/or examinees.

At its recent meetings, the CIR heard multiple cases involving the following:

- falsified information, including the creation of falsified score reports
- soliciting and/or seeking to obtain unauthorized access to examination materials
- communicating about specific test items, cases, and/or answers with another examinee
- applying and/or attempting to take an examination when ineligible
- making notes of any kind on anything other than materials provided
- failure to follow test center instructions, including writing past the 'end patient note' announcement

Actions taken by the CIR at its recent meetings included annotating the individual's USMLE record with a finding of irregular behavior, barring access to USMLE for periods ranging from 0-3 years, and reporting the finding of irregular behavior to the disciplinary data bank of the Federation of State Medical Boards. State medical boards routinely query this data bank as part of their licensing processes.

As evidenced by the sanctions listed above, a finding of irregular behavior carries significant potential impact. USMLE applicants and examinees are reminded to read the *USMLE Bulletin of Information* carefully, follow the rules of conduct during testing, and refrain from any pre- or post-examination conduct that might constitute irregular behavior. Specific examples of conduct deemed to be irregular behavior can be found in the *Bulletin*.

The USMLE is committed to maintaining the integrity of its examination so that state medical boards may continue to rely upon it as an integral part of their decision-making process for licensure. Applicants and examinees are advised to observe all USMLE policies and procedures to avoid the potentially significant implications arising from a finding of irregular behavior.

USMLE encourages you to provide information about cheating and other activity of which you are aware that may compromise the security and integrity of USMLE. Please use our contact form to

report such information.

« Previous           **Page: 7 of**
9           Next »

Home   Bulletin   FAQs   Applications & Fees   Security   Step Examinations   Practice Materials   Test Accommodations   Scores & Transcripts   Data & Research

# Announcements

« Previous 9

Page: 8 of Next »

## Announcements 🔊

### Transition of test content to DSM-5 criteria and terminology
**Posted: November 04, 2013**

*The Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5)* was released at the American Psychiatric Association's Annual Meeting in May 2013. USMLE test content will be impacted by changes in criteria and terminology.

Because USMLE content pools are large, the transition from DSM-IV to DSM-5 criteria and terminology will need to be gradual and will likely take place over several years. The following principles will guide this transition:

1. The highest priority has been given to test content assessing diagnoses that do not appear in DSM-5. This content has already been removed from USMLE examinations.
2. USMLE will begin to transition content to include both DSM-IV and DSM-5 terminology. This process will begin in 2014. Start and end dates for this transition will vary by exam.

### Changes to Biometric Enabled Check-in Program at test centers
**Posted: June 21, 2012**

Beginning July 1, 2012, there will be changes in the retention period for biometric information obtained as part of the standard test day procedures for computer-based Step examinations at many Prometric test centers. The changes will allow such information to be stored across USMLE Step exams.

The Biometric Enabled Check-in Program is designed to improve the security and integrity of the testing process. For more detailed information about the Biometric Enabled Check-in Program, including the Privacy Notice for USMLE Candidates, see Biometric Enabled Check-in Frequently Asked Questions.

### Attempt limit for USMLE examinations
**Posted: June 20, 2012**

Examinees who have made six or more attempts to pass a Step or Step component, including incomplete attempts, should be aware that all applications to register for additional attempts will not be processed unless they are submitted on or before **December 31, 2012**. This limit was first announced in August of 2011.

The effective date for the six-attempt limit depends upon whether an examinee has taken any Step or Step Component (including incomplete attempts) before January 1, 2012.

**• Examinees who had NOT taken any Step or Step Component before January 1, 2012**

If you did **not** take any Step or Step Component before January 1, 2012, the six-attempt limit went into effect for all exam applications that you submitted on or after January 1, 2012.

**Example 1:** On January 15, 2012, Examinee A submits his application for his first attempt at any Step or Step Component. The six-attempt limit is effective at that time for all Steps and Step Components and Examinee A will be allowed to take each Step or Step Component no more than six times, including incomplete attempts.

**• Examinees who have taken any Step or Step Component before January 1, 2012**

If you have taken **any** Step or Step Component (including incomplete attempts) before January 1, 2012, the six-attempt limit is in effect for all exam applications that you submit on or after January 1, 2013.  After that date, all attempts at a Step or Step Component will be counted toward the limit, regardless of when the exams were taken.

**Example 2:** Examinee B's application for a seventh attempt at a particular Step or Step Component is received on December 15, 2012. For this examinee, the six-attempt limit will not prevent the seventh attempt, since the application was submitted before January 1, 2013.  However, if Examinee B fails the exam, he will not be eligible to submit an application after January 1, 2013 to retake that Step or Step Component.

**Example 3:**  Examinee C attempts to submit an application for a seventh attempt at a particular Step or Step Component on or after January 1, 2013. The application will not be processed, since all exam applications submitted on or after January 1, 2013 will be subject to the six-attempt limit.

Please refer to the *Bulletin of Information* for <u>more complete information on time and attempt limits</u>.

« Previous
9

Page: 8 of
Next »

Home   Bulletin   FAQs   Applications & Fees   Security   Step Examinations   Practice Materials   Test Accommodations   Scores & Transcripts   Data & Research

# Announcements

« Previous 9

**Page: 9 of 9**
Next »

## Announcements 🔊

Optima test prep sued

**Posted: March 11, 2009**

The sponsoring organizations of the United States Medical Licensing Examination® (USMLE®) have filed suit in U.S. District Court for the Western District of Tennessee, alleging copyright infringement by Optima University, a provider of USMLE review courses.

More Info »

« Previous 9

**Page: 9 of 9**
Next »

Print & Marketing Services 1342

**Sent:**          Monday, July 25, 2016 4:01 PM
**To:**             info@ecfmg.org
**Attachments:** DOC009.PDF (11 MB)


Staples Copy and Print Center
Store 1342
6296 Magnolia Ave.
Riverside, CA 92506
P. 951-782-2140
F. 951-782-7911