UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 16-0952 JGB (SPx) | Date | August 25, 2016 |
| Title | *Yoana Ayanova Kiprilov v. National Board of Medical Examiners et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):     Attorney(s) Present for Defendant(s):

None Present                None Present

**Proceedings:**   Order: (1) GRANTING Defendant NBME's Motion to Dismiss (Dkt. No. 12); (2) GRANTING Defendant ECFMG's Motion to Dismiss (Dkt. No. 16); (3) DENYING AS MOOT Plaintiff's Motion for Summary Judgment (Dkt. No. 13); and (4) VACATING the August 29, 2016 Hearing (IN CHAMBERS)

Before the Court is a Motion to Dismiss filed by Defendant National Board of Medical Examiners (Dkt. No. 12), a Motion to Dismiss filed by Defendant Educational Commission for Foreign Medical Graduates (Dkt. No. 16), and a Motion for Summary Judgment filed by Plaintiff Yoana Ayanova Kiprilov (Dkt. No. 13). The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of, and in opposition to, the Motions to Dismiss filed by Defendant National Board of Medical Examiners and Defendant Educational Commission for Foreign Medical Graduates, the Court GRANTS both Motions. Accordingly, the Court DENIES Plaintiff's Motion for Summary Judgment as moot. The August 29, 2016 hearing is VACATED.

##   I.   INTRODUCTION

On May 10, 2016, pro se plaintiff Yoana Ayanova Kiprilov ("Plaintiff") initiated this action against the National Board of Medical Examiners ("NBME") and the Educational Commission for Foreign Medical Graduates ("ECFMG") (collectively, "Defendants"). On June 7, 2016, NBME filed a motion to dismiss the Complaint. Dkt. No. 6. In response, Plaintiff filed her First Amended Complaint on June 28, 2016. "FAC," Dkt. No. 9.

NMBE filed a Motion to Dismiss the FAC on July 15, 2016 for failure to state a claim. "NMBE Motion," Dkt. No. 12. ECFMG filed a separate Motion to Dismiss the FAC for failure to state a claim and on the basis the ECFMG is not a proper defendant in this action. "ECFMB Motion," Dkt. No. 16. Plaintiff filed her Opposition on August 1, 2016. "Opp'n," Dkt. No. 21. NMBE filed its Reply on August 8, 2016, which ECFMG joined. "Reply," Dkt. No. 23.

Separately, Plaintiff filed a Motion for Summary Judgment on July 28, 2016. "MSJ," Dkt. No. 13.

## II.    BACKGROUND

The FAC reads as a series of jumbled and incoherent events. This seems partly a function of the fact that Plaintiff's FAC appears to be styled as an opposition to NBME's first Motion to Dismiss, and thus lacks a coherent set of facts. Accordingly, the Court looks to both the original Complaint and the FAC to parse Plaintiff's claims.[1] In brief, to the extent that the Court can discern the allegations, Plaintiff alleges that Defendants have deceived her by refusing to "recognize [her] pass results" on the United States Medical Licensing Examination ("USMLE"). Complaint at 11.

Plaintiff is an international medical school graduate ("IMG") who seeks to be accepted into a residency program in the United States so as to continue her training as a physician. Id. at 2-3. In order to be accepted into a residency program, she must pass the USMLE. Id. at 3. The USMLE has four parts: Step 1, Step 2 CK, Step 2 CS, and Step 3. Id. Plaintiff's complaints center around the Step 2 CS exam, which uses simulated doctor-patient encounters to evaluate a prospective physician's fact-gathering, communication, and interpersonal skills. Id. at 3-4; NMBE Motion at 1. This exam consists of three subcomponents: "ICE," "CIS," and "SEP".[2] Complaint at 6. All three components must be passed in a single administration in order to achieve a passing performance. NMBE Motion at 5.

Plaintiff has taken the Step 2 CS exam twice, first on May 20, 2015, and again on September 30, 2015, but she has not yet achieved a passing score (or at least, as she concedes, she has not yet successfully passed all the parts of the test in one sitting). Id. During her first attempt, she received a "pass" score on "CIS" and "SEP," but failed the "ICE" subcomponent." Id. During her second attempt, she passed the "ICE" subcomponent and the "SEP" subcomponent, but failed the "CIS" subcomponent. Plaintiff argues that the fact that she has separately passed all three subcomponents of the Step 2 CS, but has not received a passing score

---

[1] Of course, the Court recognizes that the FAC is the operative complaint and looks to the original complaint only to fill in gaps in the narrative.

[2] Plaintiff does not explain the meaning of these subcomponents, but NMBE's Motion explains that the CIS subcomponent includes "assessment of patient-centered communication skills," the SEP subcomponent includes "assessment of clarity of spoken English," and the ICE subcomponent "includes assessment of both data gathering and data interpretation skills." NMBE Motion at 5.

(because she has not passed all three components within a single administration of the test) "is pretty unfair and unethical." Id. at 7. She contends, "My 'overall' performance on the exam (USMLE Step 2 CS) could be reasonably, logically, and safely considered as a pass result." Id. at 8.

Plaintiff points out that her exam reports stated, "It is necessary to pass all three subcomponents in order to obtain an overall passing outcome on Step 2 CS." FAC at 7. She argues that by failing to specify that an applicant must pass all three subcomponents *in a single sitting*, Defendants have perpetuated fraud. Id. at 4, 7. She also argues that being required to re-take the Step 2 CS exam to achieve a pass result is a "breach of contract" and violates Defendants' own policy rules (presumably based on the argument that the statement on her exam report bound Defendants to issue her a passing score once she had received a passing score at least once on each of the different subcomponents, if only during different sittings). FAC at 3.

She also points to what she calls Defendants' "retakes" rule. Complaint at 9. This rule provides that "if you pass a Step or Step Component, you are not allowed to retake it." Id. However, the three parts of the Step 2 CS are defined by NMBE as "subcomponents," so the "retakes" rule is inapplicable to them. Id. at 9-10. Plaintiff claims that the use of these terms operates as further deceit: "NMBE/ECFMG seems to unfairly use and interpret the same words and rules differently, depending on the situation." Id. at 10. In support of this point, she cites to a 2010 court case (addressing the use of special accommodations for a disabled plaintiff, and not the scoring of the USMLE) and notes that the court in that case referred to the three parts of the Step 2 CS as "components." Id. (citing to Hartman v. National Board of Medical Examiners, Civil Action No. 09-5028).

Plaintiff further alleges that the Step 2 CS exam is "unsound," and that there is currently a "mass campaign" by American medical graduates contending that there is no evidence that the test is objective, valuable, or efficient. Id. at 4, 9-10. To support her claim that the test is unreliable, Plaintiff points to the fact that she passed and failed different parts of the exam at different times. Id. at 10. She also states that the exam evaluates test-takers on such characteristics as "listening attentively," "showing interest," "developing an understanding of the expectations and priorities of the patient," and that these characteristics are "unmeasurable" and therefore unduly subjective. Complaint at 18.

Finally, Plaintiff alleges that the test is discriminatory in that Defendants "have different cut off levels and passing scores for foreign medical graduates. . . Or, the exam itself due to its defectiveness, gives these discriminatory results, i.e. it is a defective product." FAC at 10. To support her claim that different standards are applied, she states that the passing rates between the two groups are different. Complaint at 22. Her support for this claim is what appears to be a screenshot of an ECFMG webpage that notes that changes were made to the design and content of the ICE and CIS subcomponents in 2012, and that, using historical trends, it was estimated that "the overall passing rate for examinees from U.S. medical schools would be approximately 3% lower and the overall passing rate for examinees from international medical schools would be

approximately 18% lower." Id. at 39. She alleges that this discrimination is in violation of Title VII of the Civil Rights Act. Id. at 22.

In sum, the FAC asserts the following identifiable causes of action:[3]
- Fraudulent deceit;
- False descriptions in violation of 15 U.S.C. § 1125 and California Civil Code § 1770;
- False advertising;
- Unfair competition;
- Breach of contract;
- Unfair and deceptive practices in violation of 15 U.S.C. § 45;
- Discrimination in violation of Title VII.

FAC at 18-35. Plaintiff demands that this Court "compel the specific performance by the Defendants," namely, "recognition of [her] overall passing outcome on Step 2 CS and issuance of "ECFMG-certification." FAC at 2, 27. In the alternative, she demands that the Court order Defendants to write to each residency program to which she might apply to explain that she passed each part of the exam but that "MBME/ECMFG prevented [her] from obtaining a residency position." Id. at 38. She also asks for an order directing Defendants to allow her to review her test evaluations so that she can correct her mistakes in the future. Id. Finally, Plaintiff demands compensatory and punitive damages "for the consequences [Defendants'] misconduct caused to [her] career." Id. at 36. These damages arise from the fact that she has "wasted one year (2015) preparing and taking this exam twice, and will lose one more (2016) year to prepare and take the exam for a third time," as well as an additional year waiting for her results, and thereby foregone three years "during which [she] could have been in a residency program" collecting a salary. Complaint at 15.

The core of Defendant NMBE's Motion is that Plaintiff's Complaint and the FAC are attempts to circumvent the requirements that apply to every prospective physician in the United States. NMBE Motion at 1, 7. NMBE explains that it is a non-profit organization that sponsors the USMLE, which is part of the licensure process for ensuring the qualifications of prospective physicians. Id. at 1. In opposition to Plaintiff's argument that NBME engaged in fraud by failing to inform her that she had to pass all three components of the Step 2 CS in one sitting, Defendant points to the fact that "[e]xaminees are told in advance of testing that '[e]ach of the three subcomponents must be passed in a single administration in order to achieve a passing performance on Step 2 CS.'" Id. at 5 (citing to Ex. B, available at http://www.usmle.org/step-2-cs/#scoring). This policy is also stated in the USMLE booklet titled, "Step 2 Clinical Skills (CS)

---

[3] The Court notes that Plaintiff cites innumerable provisions from California's civil code and United States Code, and that many of these do not in themselves provide a cause of action, but are merely definitional. For example, in the case of Plaintiff's seventh cause of action, captioned "NBME and ECFMG, jointly and severally," she alleges no claims at all, but merely cites to sections of the civil code relating to the joining of multiple parties as defendants. FAC at 30. Accordingly, the Court has reorganized the various causes of action so as to capture the actionable elements of Plaintiff's claims.

Content Description and General Information": "Each of the three subcomponents must be passed in a single administration in order to achieve a passing performance on Step 2 CS." Reply at 9 (citing to Ex. C, available at http://www.usmle.org/pdfs/step-2-cs-info-manual.pdf). (Plaintiff does not dispute that this information was prominently displayed on USMLE's website nor that this policy was stated in USMLE's booklet and manuals.)

NMBE also affirms that USMLE's policy prohibits an applicant from retaking "a Step or Step Component" once he or she has passed an examination. NMBE Reply at 8. It notes that this language appears immediately after a reference to "STEPS 1, 2 CK and 2CS, and STEP 3," and that "a Step or Step Component" thus clearly references these examinations. Id. at 8-9 (citing to USMLE Bulletin, http://www.usmle.org/pdfs/bulletin/2015bulletin.pdf).

Defendant ECFMG also filed its own Motion to Dismiss. While it joins NMBE's Motion as to the arguments regarding Plaintiff's failure to state a claim, ECFMG further argues that it is not a proper defendant in this action. ECFMG Motion at 5. ECFMG is a non-profit organization that, among other things, is responsible for certifying international medical graduates ("IMGs") for entry into graduate medical education in the United States. Id. at 3. ECFMG also registers IMGs to take the USMLE. Id. However, it does not exercise control over the design of the USMLE or decide how the exam is scored. Id.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

Surviving a motion to dismiss requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Finally, although a pro se litigant is entitled to "great leeway" when the court construes the pleadings, the pleadings must nonetheless "meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." Brazil v. United States Dep't of Navy, 66 F.3d 193, 199 (9th Cir.1995).

### IV. DISCUSSION

Defendants ECFMG and NMBE both move to dismiss. The Court addresses each party's Motion in turn.

**1. ECFMG's Motion to Dismiss**

To establish a claim against a defendant, a plaintiff must establish that the defendant in question was involved in the decisions giving rise to her cause of action. See, e.g., Oghogho v. Operating Engineers Local 3 Dist. 80, No. CIV S071570LKKDADPS, 2009 WL 238091, at *3 (E.D. Cal. Jan. 28, 2009) (granting the defendant's motion for summary judgment where the pro se plaintiff provided no evidence that the defendant had any authority over the employment decisions about which the plaintiff complained); see also Sandlin v. Johnson, 643 F.2d 1027, 1029 (4th Cir. 1981) (noting that "school board had no direct involvement in the decisions complained of here and therefore was not a proper defendant"); Dillon v. NBCUniversal Media LLC, No. CV 12-09728 SJO AJWX, 2013 WL 3581938, at *11–12 (C.D. Cal. June 18, 2013) (dismissing claims against defendants NBC and Universal Studios where plaintiff's complaint failed to establish that they had been directly involved in entering into contract that was subject of plaintiff's complaint).

Here, the FAC centrally alleges that the USMLE is "unsound," and that the scoring procedure is "unfair and illogical." Thus, her causes of action, if any, must be directed towards the creators or administrators of the test—that is, to entities with the authority to design the test and issue scores. ECMFG has the authority to do neither. Nor does it have the power to award the relief—a passing score—that Plaintiff seeks. Plaintiff herself somewhat concedes that ECFMG does not have the power to modify the test or change her score: in the FAC, she acknowledges, "I initially addressed my problem with ECFMG, the first level for complaints. . . It was my own decision to involve NBME. . . Involving NBME turned out to be the right decision . . . NBME took responsibility (they create the exam)." FAC at 12. And in fact, in the exhibits that Plaintiff herself submitted with the FAC, she includes a copy of what appears to be

the "2015 NMBE Annual Report," the first line of which states that USMLE is "co-sponsored by the NMBE and the FSMB." Dkt. No. 9-2.

To the extent that Plaintiff argues that ECFMG is the proper defendant, she cites only to her statement in the FAC that "ECFMG and NMBE act together in administering the test." Opp'n at 6. There is no support for this proposition. Under Rule 12(b)(6), the Court need not accept unsupported allegations as true. See, e.g., Falstaff Brewing Co. v. Stroh Brewery Co., 628 F. Supp. 822, 826 (N.D. Cal. 1986) ("Conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted for purposes of a Rule 12(b)(6) motion.")

Neither does Plaintiff present allegations that ECFMG ever acted in such a way to suggest that it had power to administer the test or change her score. Rather, it appears from Plaintiff's allegations that she has simply assumed—contrary to statements in documents that she herself has submitted—that ECFMG has authority over the USMLE. This is not sufficient to find ECFMG liable. Accordingly, the Court finds that the FAC fails to allege that ECFMG had the authority over any of the decisions for which Plaintiff seeks a remedy, and thus her claims fails with respect to it.

In general, the court must give a pro se litigant leave to amend the complaint unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." Adams v. Currie, No. EDCV141838PSGSS, 2015 WL 4607424, at *2 (C.D. Cal. July 6, 2015). Nevertheless, the court may deny leave to amend if amending the pleading would be futile. See Ventress v. Japan Airlines, 603 F.3d 676, 680 (9th Cir.2010). Because it does not appear that Plaintiff can plausibly allege any set of facts that would support liability against ECFMG with regard to the design or scoring of the USMLE and because Plaintiff has already amended her complaint once and failed to include any allegations that would impose liability specifically on ECFMG, the Court finds that any amendment would be futile. See Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1087–88 (9th Cir.2002) (affirming district court's dismissal of complaint without leave to amend "[b]ecause any amendment would be futile"); see also Falstaff Brewing Co. v. Stroh Brewery Co., 628 F. Supp. 822, 830–31 (N.D. Cal. 1986) (dismissing complaint with prejudice where "amended complaint contains little new material, [but only] recites the same conclusory allegations previously rejected by the Court.")

Accordingly, Plaintiff's claims are **DISMISSED WITHOUT LEAVE TO AMEND** as to ECFMG.

2. **NMBE's Motion to Dismiss**

NBME moves to dismiss each of Plaintiff's causes of action. The Court addresses each in turn.

### A. Intentional misrepresentation/fraudulent deceit[4]

Under California common law, the tort of fraudulent deceit requires a misrepresentation, knowledge of falsity, intent to induce reliance, reliance, causation and resulting damage. See, e.g., Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 990 (2004); see also 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 710, p. 125 ("The essential allegations of a cause of action for deceit are: representation, falsity, knowledge of falsity, intent to deceive, and reliance and resulting damage (causation)"). Furthermore, pursuant to Federal Rule of Civil Procedure 9(b), plaintiffs alleging claims for fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The particularity requirement applies to state-law claims and to claims grounded in fraud regardless of whether fraud is an essential element of the claim. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003). "Where a fraudulent omission is at issue, the requirements of Rule 9(b) are relaxed, but not eliminated." UMG Recordings, Inc. v. Glob. Eagle Entm't, Inc., 117 F. Supp. 3d 1092, 1107 (C.D. Cal. 2015) (citing Waldrup v. Countrywide Financial Corp., No. 2:13–cv–08833–CAS (CWx), 2014 WL 3715131, at *5 (C.D. Cal. July 23, 2014)).

Here, Plaintiff's claims regarding any misrepresentation seem to be based on (1) her allegation that NMBE did not specify that a test-taker had to pass all three components of the Step 2 CS *in one sitting* to receive a "Pass" score; and (2) her allegation that Defendants' references to "component" and "subcomponents" were deceptive.

The first allegation depends on her assertion that the exam reports she received stated only, "It is necessary to pass all three subcomponents in order to obtain an overall passing outcome on the Step 2 CS." Complaint at 6. (The Court can identify no other "statement" by Defendants that could plausibly count as a representation regarding this claim.) However, assuming the truth of this statement, Plaintiff does not dispute that the USMLE website and its informational materials clearly state that a test-taker must pass all three components "in a single administration" to receive a passing score. Neither does she allege that this information was somehow hidden or inaccessible to her. And, of course, the statement on the exam report is literally true. This fact would not shield NMBE if the statement were "used to create an impression substantially false." See Sullivan v. Helbing, 66 Cal. App. 478, 483, (Cal. Ct. App. 1924) (noting that misrepresentation may consist of "half-truths calculated to deceive"). But Plaintiff alleges no facts that would support a claim of intentional deception: as noted above, USMLE promulgates publicly available information stating clearly that an applicant must pass all

---

[4] Plaintiff styles this cause of action as "intentional misrepresentation," but the civil code provisions and case law that she cites under this point indicate that her cause of action is based on the broader tort of fraud. Because California's Supreme Court has explained that the tort of "misrepresentation" applies only to interferences with financial or commercial interest (which are not implicated here), see Johnson v. State, 69 Cal. 2d 782, 800 (1968), the Court evaluates Plaintiff's claim as a fraud allegation. This is in keeping with the instruction that a pro se litigant is entitled to "great leeway" in construing her claims. See, e.g., Brazil v. United States Dep't of Navy, 66 F.3d 193, 199 (9th Cir.1995).

three subcomponents within one sitting to receive a passing score. This is inconsistent with an argument that NMBE misrepresented information about the exam.

Finally, *even if* the statement noted on Plaintiff's exam report could be construed as a material misrepresentation, Plaintiff must establish that her reliance on such a statement caused her damages. Plaintiff cannot meet this requirement: under her own version of the facts, she received the exam report containing the objectionable statement only *after* she first took the exam. Thus it is unclear how such a statement could have induced her to incur damages: to the extent that Plaintiff claims damages in the form of lost employment opportunities, these relate to her failure to achieve a passing score, and not to any actions she took or did not take in reliance on Defendant's statement. To the extent that Plaintiff addresses this point in her Opposition, she states only, "What Plaintiff did in relying on the information provided online, was to pass all the three 2 CS-components. Now, knowing the truth about the misrepresentation, she refuses to take it again." Opp'n at 18. Plaintiff thus seems to suggest, if indirectly, that the statement induced her to take the test the second time. This is insufficient to satisfy the elements of fraud: a party's reliance must be *justified*. See, e.g., B.L.M. v. Sabo & Deitsch, 55 Cal. App. 4th 823, 836 (1997) (holding that failure to allege that reliance was justified represented "fundamental deficiency in complaint"). Here, Plaintiff's assumption that the statement on her exam report meant that she would receive a passing score even if she failed sections of the test was an unreasonable interpretation, particularly when publicly available information made clear that a test-taker must pass all three subcomponents in one sitting.

Plaintiff also alleges that NBME's use of the words "subcomponent" and "component" in different contexts is deceptive. Again, the Court finds no plausible misrepresentation. In arguing that NMBE made misrepresentations with regard to how it defines "components" or "subcomponents" of the exam, Plaintiff points to a court case entirely unrelated to any of the USMLE scoring policies where parts of the Step 2 CS exam are described—by a judge unassociated with the NBME—as "components." Whether a court's decision occasionally referred to the three subcomponents of the Step 2 CS exam as "components" has no relevance here: the statement of USMLE's policy regarding examinees' inability to retake "a Step or Step Component" appears immediately after a reference to "STEPS 1, 2 CK and 2CS, and STEP 3," and thus makes clear that the policy applies to these tests, and not to the CIS, ICE, or SEP subcomponents. Plaintiff's claim that she was somehow "misled" by such terms is therefore implausible—or at least, unreasonable. Ultimately, Plaintiff's apparent confusion regarding the use of these terms is insufficient to convert everyday terms into actionable misrepresentations, particularly where it is unclear how such confusion induced her to incur damages.

Accordingly, the Court GRANTS Defendant NBME's Motion to Dismiss as to Plaintiff's claim of intentional misrepresentation and associated fraud claims.[5]

---

[5] Plaintiff also references "negligent misrepresentation" at a different point in her complaint, see FAC at 1, but does not raise this claim under her causes of action. However, regardless of whether she indeed meant to raise this claim, it fails for similar reasons as her fraud

### B. False descriptions (Lanham Act)

Plaintiff alleges violations of the Lanham Act, which prohibits the use in commerce of any false or misleading descriptions in connection with any goods or services. 15 U.S.C. §§ 1125. NMBE correctly points out that the Lanham Act authorizes suit only for commercial injuries. Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1391, 188 L. Ed. 2d 392 (2014). Plaintiff concedes that this statute does not apply in this case. Accordingly, the Court GRANTS Defendant's NBME's Motion to Dismiss as to Plaintiff's Lanham Act claims.

### C. False descriptions (Consumers Legal Remedies Act)

Plaintiff alleges violations of the California Consumers Legal Remedies Act ("CLRA"), which prohibits certain "unfair methods of competition" and "unfair or deceptive acts or practices" taken in connection with a transaction for the sale or lease of goods or services. Cal. Civ. Code § 1770. A threshold requirement is that a plaintiff must have "purchase[d] or lease[d]" goods from the defendant. Claridge v. RockYou, Inc., 785 F. Supp. 2d 855, 864 (N.D. Cal. 2011).

Intangible "goods" do not bring a plaintiff within the coverage of the CLRA. See Consumer Sols. REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1016–17 (N.D. Cal. 2009) (dismissing plaintiff's CLRA claim where she only challenged the validity of mortgage loan because this was "intangible good[]" and noting that allowing intangible goods to be brought under the coverage of CLRA would "defeat the apparent legislative intent in limiting the definition of "goods" to include only "tangible chattels"). As defined in California's Civil Code—and as relevant to the statute—"goods" are defined as "tangible chattels bought or leased for use primarily for personal, family, or household purposes." Cal. Civ. Code § 1761(a). "Services," in turn, are defined as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." Cal. Civ. Code § 1761(b).

The USMLE, a medical licensing test, does not constitute a good or service under the statute. Thus, there was no "transaction for the sale or lease of goods or services" that would allow Plaintiff to bring a claim under the CLRA.

---

claims. A claim for negligent misrepresentation has similar elements to a fraud claim, but "only requires that the statement or omission was made without a reasonable basis for believing its truthfulness rather than actual knowledge of its falsity." Madden v. Independence Bank, 771 F. Supp. 1510, 1513 (C.D. Cal. 1991). Here, Plaintiff has asserted no facts that would indicate that the statement by Defendant on the exam report was made "without a reasonable basis for believing its truthfulness"; it is implausible to suppose that NMBE had any reason to believe that a literally true statement was not truthful. Furthermore, as discussed above, Plaintiff has not made the showing of reliance required to establish this claim.

Accordingly, the Court GRANTS Defendant NBME's Motion to Dismiss as to Plaintiff's CLRA claim.

### D. California Unfair Competition Law

Plaintiff asserts claims under California's Unfair Competition Law ("UCL"), which prohibits "any unlawful, unfair, or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

While the UCL is broad in application, a claim under the statute must rest on a violation of another law. Cornejo v. Ocwen Loan Servicing, LLC, 151 F. Supp. 3d 1102, 1118 (E.D. Cal. 2015). Thus, where a plaintiff's predicate or substantive claim fails, the UCL claim fails as well. Warner v. Tinder Inc., 105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015).

Plaintiff does not specify the predicate violation on which she asserts her UCL claim. However, as demonstrated throughout this Order, Plaintiff's claims *all* fail and thus cannot serve as predicate violations for a UCL claim.

Accordingly, the Court GRANTS Defendant NMBE's Motion to Dismiss as to Plaintiff's UCL claims.

### E. False Advertising Law

Plaintiff asserts claims under California's False Advertising Law ("FAL"), which makes it unlawful to make or disseminate any statement concerning property or services that is "untrue or misleading." Cal. Bus. & Prof. Code § 17500. Claims made under these statutes are governed by the "reasonable consumer" test which focuses on whether "members of the public are likely to be deceived." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir.2008) (citing Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir.1995)). A reasonable consumer is "the ordinary consumer acting reasonably under the circumstances." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1161–62 (9th Cir. 2012). Under this framework, "[a] representation does not become 'false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." Id. at 1162 (internal citation and quotation marks omitted).

Plaintiff again fails to specify the representations that she claims were made in violation of FAL. However, the Court will assume that she finds fault with the same statements discussed under her fraud cause of action: namely, NMBE's statement on her exam report that, "It is necessary to pass all three subcomponents in order to obtain an overall passing outcome on the Step 2 CS," and NMBE's references to the "Components" of the exam in its "retakes" policy. However, the allegations that such "statements" were "false and deceptive" necessarily fail. First, both statements were literally true. Second, a reasonable person acting reasonably under the circumstances—that is, an examinee reviewing USMLE materials in anticipation of the test or following the exam—would not believe that NMBE's statement regarding the necessity of passing all three subcomponents suggested that an examinee could receive a passing score despite failing a section of the test.

Accordingly, the Court GRANTS Defendant NMBE's Motion to Dismiss as to Plaintiff's FAL claims.

### F. Breach of contract

Plaintiff appears to allege that she had an implied contract with NMBE, although she does not explain the nature of this contract. FAC at 27. Reading between the lines, it appears that Plaintiff claims that NMBE breached a contract with her by violating its own "retakes" policy and failing to give her a passing score. Id. at 3 ("I have passed each part/component of the exam and NBME violated their own policy rules (published on their website) that once a component is passed, it is not allowed to be retaken.")

A claim for breach of contract under California law consists of: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by defendant; and (4) damage resulting from the breach. Gerritsen v. Warner Bros. Entm't Inc., 116 F. Supp. 3d 1104, 1124 (C.D. Cal. 2015). While a contract may be implied, a plaintiff must still allege the facts from which the contract is implied. NovelPoster v. Javitch Canfield Grp., No. 13-CV-05186-WHO, 2014 WL 10556991, at *9 (N.D. Cal. Aug. 14, 2014).

Plaintiff has not established facts that would support the existence of a contract between the parties—and certainly not one that contractually bound NMBE to give her a passing score despite her failure to pass every subcomponent of the Step CS 2 in one sitting. Plaintiff's desire to change the policies that *actually* govern the scoring of USMLE does not convert NMBE's refusal to pass her into a breach of a contract. Furthermore, she has not even established that NMBE "violated their own policy rules"; again, her own unreasonable interpretation or confusion surrounding USMLE policies does not change what the policies actually are.

Accordingly, the Court GRANTS Defendant NMBE's Motion to Dismiss as to Plaintiff's breach of contract claims.

### G. Deceptive Acts and Practices (Federal Trade Commission Act)

Plaintiff alleges claims under a provision of the Federal Trade Commission Act ("FTCA") that makes it unlawful to engage in "deceptive acts or practices in or affecting commerce." 15 U.S.C. §§ 45(a)(1). However, as NBME points out, the FTCA does not create a private right of action. O'Donnell v. Bank of Am., Nat. Ass'n, 504 F. App'x 566, 568 (9th Cir. 2013). Plaintiff concedes this point in her Opposition. Opp'n at 20. Accordingly, the Court GRANTS Defendant NBME's Motion to Dismiss as to Plaintiff's claims under the FTC.[6]

---

[6] The FAC also references "California state laws" under this cause of action as well. FAC at 29. However, she only cites to "Civil code Sections 17200, 17205, and 17206," none of which exist. Id. To the extent that Plaintiff may be attempting to reference sections of the California Business and Professions Code (e.g., Cal. Bus. & Prof. Code § 17200), the Court has already addressed these claims earlier in this Order.

### H. Employment Discrimination (Title VII)

Finally, Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII" or "the Act"), which prohibits employment discrimination based on race, color, religion, sex, and national origin. 42 U.S.C. § 2100e-2. Specifically, Title VII bars discriminatory "employment practices" by an "employer," and "employment agency," or a "labor organization." Id. Accordingly, analysis properly begins with the threshold determination of whether NBME can be held liable as an "employer" for purposes of Title VII. In order to be subject to liability under Title VII, a defendant must (1) fall within Title VII's statutory definition of "employer," and (2) have exercised substantial control over significant aspects of the compensation, terms, conditions, or privileges of plaintiff's employment. Magnuson v. Peak Tech. Servs., Inc., 808 F. Supp. 500, 507 (E.D. Va. 1992); see also Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 611 F.Supp. 344 (S.D.N.Y.1984) (holding that most important factor in determining "employer" status under Title VII is the "extent of employer's right to control means and manner of worker's performance).

Under this framework, courts have rejected Title VII claims by plaintiffs that involve claims against defendants who are not their direct employers. For example, where a plaintiff alleged Title VII violations on the basis that his application for admission to the bar was denied, the court dismissed the plaintiff's claim, holding that the Board of Bar Examiners was neither "an employer," an "employment agency," nor a "labor organization" within the meaning of the Act. Woodard v. Virginia Bd. of Bar Examiners, 598 F.2d 1345, 1346 (4th Cir. 1979). Similarly, a Pennsylvania district court rejected the Title VII claims of a foreign medical school graduate against the American Board of Internal Medicine ("ABIM") where he claimed that it discriminated against him in the course of administering his recertification exam; the court noted that "the claims must be dismissed because [the plaintiff] has never had an employment relationship with ABIM." Munsif v. Am. Bd. of Internal Med., No. CIV.A. 11-5949, 2012 WL 3962671, at *2, *14 (E.D. Pa. Sept. 11, 2012)

Such cases are squarely on point with the instant case. Like the Board of Bar Examiners or the American Board of Internal Medicine, the NBME has no employment relationship with the prospective examinees whose tests it scores and reports. NBME is not Plaintiff's employer, nor even her prospective employer. Nor is it an employment agency; under Section 2000e, an employment agency means only those persons regularly undertaking "to procure employees for an employee or to procure for employees opportunities to work for an employer." NBME only administers the licensing exam and reports the scores to residency programs, which does not constitute "procuring employees." It does not have the authority to "control the means and manner" of her performance as a physician, nor does it exercise "substantial control" over the terms or conditions of her employment.

Plaintiff's argument that the USMLE is an "employment-based/employment-related test and business" does not convert the NBME into her employer; whether an entity is in some general way "employment-related" does not suffice to establish an employer relationship. FAC at 31. Neither does her demand that "it *should* be covered by all the employment-related law" convert her frustration with the scoring of the USMLE into an actionable claim. Id. (emphasis

added). And finally, her attempt to save this claim in her Opposition by baldly stating that Title VII "does not specifically require employer-employment relationship" flies in the face of well-established law, and again, fails to render her allegations actionable. Opp'n at 21.[7]

Accordingly, the Court GRANTS Defendant NBME's Motion to Dismiss as to Plaintiff's Title VII claims.

### V.     CONCLUSION

For the reasons stated above, the Court GRANTS Defendant ECMFG's Motion to Dismiss in its entirety and GRANTS Defendant NBME's Motion to Dismiss in its entirety. In the interests of justice and in recognition of the fact that Plaintiff is proceeding pro se, the Court will permit Plaintiff one final opportunity to amend her complaint only as to her claims against NBME, but Plaintiff should note that if her amended complaint fails to state a claim under those portions of the Complaint that have been dismissed here, those claims may be dismissed with prejudice. Plaintiff may file an amended complaint no later than September 9, 2016.

The August 29, 2016 hearing on the Motion is VACATED.

**IT IS SO ORDERED.**

---

[7] The Court acknowledges Plaintiff's complaint that "[i]f [Title VII] does not govern NBME/ECFMG's activity, then this would mean that if NBME/ECFMG indeed use discriminatory scores (and there is a discriminatory practice established), there will be no law to protect their clients again [sic] such prohibited activity." Opp'n at 21. To the extent that Plaintiff may seek to raise claims of discrimination in the certification of physicians on the basis of national origin, the Court notes that such claims might more appropriately brought under the Equal Protection Clause of the Fourteenth Amendment. However, Plaintiff has not raised such claims here.